AO 243 (Rev. 09/17)

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| **United States District Court** | District The District of New Mexico |
|---|---|

| Name *(under which you were convicted)*: Orin Kristich | Docket or Case No.: 1:22-cv-00569-WJ-KRS |
|---|---|

| Place of Confinement: USPT P.O Box 24550 Tucson, AZ  85734 | Prisoner No.: 99811-051 |
|---|---|

| UNITED STATES OF AMERICA  Respondant | V. | Movant *(include name under which convicted)* Orin Kristich |
|---|---|---|

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 0 9 2023

MITCHELL R. ELFERS
CLERK

**MOTION**

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

    United States District Court for the District of New Mexico
    Albrquerque, New Mexico

    (b) Criminal docket or case number (if you know): _____

2.  (a) Date of the judgment of conviction (if you know): 8/2/2021
    (b) Date of sentencing: 8/2/2021

3.  Length of sentence: 120 months, 15-year Supervised Release

4.  Nature of crime (all counts): Coercion and enticement (2422a)

    _____
    _____
    _____
    _____

5.  (a) What was your plea? (Check one)
    (1) Not guilty ☐        (2) Guilty ☒        (3) Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? N/A

    _____
    _____
    _____

6.  If you went to trial, what kind of trial did you have? (Check one)    Jury ☐    Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☒    No ☐

8.  Did you appeal from the judgment of conviction?    Yes ☒    No ☐

9.  If you did appeal, answer the following:
    (a) Name of court: United States Court Of Appeals For The Tenth Circuit
    (b) Docket or case number (if you know): 21-2126
    (c) Result: Appeal was dismissed
    (d) Date of result (if you know): 1-4-2022
    (e) Citation to the case (if you know): 
    (f) Grounds raised: U.S. Const. art. III violation; polygraph examinations can not be delegated to the probation / treatment provider. The government breached the plea agreement by going out-side the admission of facts. ineffective assistance of counsel; Prosecutorial Misconduct; U.S.S.G range. (Late Appeal Was granted that Mr. Kristich filed with out counsel.)

    Appellate Counsel lied to the court " Kristich, through counsel, acknowledged that his appeal waiver is enforceable"

    (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☒    No ☐
       If "Yes," answer the following:
       (1) Docket or case number (if you know): 21-7594
       (2) Result: denied

       (3) Date of result (if you know): May 31, 2022
       (4) Citation to the case (if you know): 
       (5) Grounds raised: ( Please see additional page of:) ( Question(s) Presented) to the Supreme Court.

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes ☒    No ☐

11. If your answer to Question 10 was "Yes," give the following information:
    (a) (1) Name of court: 10th Circuit Court of Appeals
        (2) Docket or case number (if you know): 21-2126
        (3) Date of filing (if you know): 4-13-2022

(4) Nature of the proceeding: Petition for De Novo Review

(5) Grounds raised: U.S. Const. art. III violation; polygraph examinations can not be delegated to the probation officer/treatment provider. The government breached the plea agreement at sentencing hearing, by going out side the admission of facts. ineffective assistance of appellate counsel. Prosecutorial misconduct. U.5.5.6. issues.

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

    Yes ☐    No ☒

(7) Result: Reversal of previous decision

(8) Date of result (if you know): 4 - 13 - 2022

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: n/a No

(2) Docket of case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

    Yes ☐    No ☒

(7) Result: _____

(8) Date of result (if you know): n/a

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:    Yes ☐    No ☒

(2) Second petition:    Yes ☐    No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

Panel rehearing, not usually appealed

_____

_____

AO 243 (Rev. 09/17)

.12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** Violation of the 6th amend. of U.S. Const. Ineffective assistance of Counsel (Trial Counsel Mr Fernandez).

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Mr. Fernandez lied to Mr. Kristich about possible defenses to get him to sign a plea; (fraudulent plea). Failur to make all possible objections and defenses as will be seen on sentencing transcripts. When Counsel said that Mr. Kristich was not aware of everything the government wanted to use; the government rebutted saying, Mr. Kristich should have known. Furthermore, Counsel lied about possible defenses and objections over recorded phone call's for around three years.

Please see memorandum in support of this petition.

(b) **Direct Appeal of Ground One:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?
    Yes ☒        No ☐

(2)  If you did not raise this issue in your direct appeal, explain why: _____

_____

(c) **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?
    Yes ☐    .    No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3)  Did you receive a hearing on your motion, petition, or application?
    Yes ☐        No ☒

AO 243 (Rev. 09/17)

(4) Did you appeal from the denial of your motion, petition, or application?

      Yes ☐     No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

      Yes ☐     No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

**GROUND TWO:** <u>Due process violation, 5th amend. U.S. Const.</u>
<u>Violation; Bill of Rights</u>

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

    The record of the court will show that Mr. Fernandez did not file
one motion in Mr. Kristich's defense for around three years when
he knew pre-trial motions were available in this case. Please see
additional grounds attached to this" petition and Mr. Kristich's
memorandum in support of this petition.

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

      Yes ☐     No ☒

AO 243 (Rev. 09/17)

    (2)  If you did not raise this issue in your direct appeal, explain why: Part of (I.A.C.) Claim

        Because of Rule 52b. Furthermore, appeal counsel, Mr. Acton,

        totally abandoned me and lied to the appeals court(withdrawn opinion

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐      No ☒

    (2)  If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

    _____

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐      No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐      No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐      No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

    _____

    (7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

    _____

    _____

    _____

    _____

    _____

    _____

AO 243 (Rev. 09/17)

**GROUND THREE:** Violation of the Ex post Facto clause of the U.S. Const.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel failed to object to the use of the 2020 U.S.S.G at Mr. Kristich's sentencing

Please see Memorandum in support of this petition

(b) **Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐    No ☒

    (2)  If you did not raise this issue in your direct appeal, explain why:

Violation of the Ex post facto clause maybe raised in 28 U.S.C. 2255

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☒

    (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐    No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

**GROUND FOUR:** Ineffective assistance of appellate counsel Violation of the 5th and 6th amend. U.S. Const.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Appeal counsel, Mr. Acton totally abandoned me and lied to the appeals court.  The 10th Cir. Court never ruled on this claim. However, they reversed their decision because of this claim.

Please see Memorandum in support of this petition.

_____

_____

_____

(b)  **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒      No ☐    De Novo

(2)  If you did not raise this issue in your direct appeal, explain why:

_____

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:

AO 243 (Rev. 09/17)

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3)   Did you receive a hearing on your motion, petition, or application?

  Yes ☐       No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

  Yes ☐       No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

  Yes ☐       No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Yes grounds 5 - 84 Were all discovered through the exercise of Due diligence of Mr. Kristich; pre-filing of this petition.

Moreover, I am not an attorney at law.

AO 243 (Rev. 09/17)

14.  Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the judgment you are challenging?    Yes ☒    No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. This petition 28 U.S.C. 2255 in The United States District Court For The District of New Mexico. (Please see this form and additional grounds.

Case 1:22-CV-00569-WJ-KRS

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At the preliminary hearing:  Unknown.

(b) At the arraignment and plea:  Aljandro Fernandez III Lomas Blvd N.W. Albuquerque New Mexico 87102

(c) At the trial:  N/A

(d) At sentencing:  Aljandro Fernandez III Lomas Blvd N.W. Albuquerque, New Mexico 87102

(e) On appeal:  Mr. Gergory Acton 3811 Atrisco DR. N.W. Suite A Albuquerque New, Mexico 87120

(f) In any post-conviction proceeding:  N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:  N/A

16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ☐    No ☒

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐    No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☒    No ☐

AO 243 (Rev. 09/17)

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

less than a year my 28 U.S.C 2255
was timely.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)  the date on which the judgment of conviction became final;

(2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 09/17)

Therefore, movant asks that the Court grant the following relief: ① Immediate release. ② Speedier release. ③ That this court grant such relief as may be approriate and to despose of these matters as Law and Justice require. or any other relief to which movant may be entitled. ④ That this Court issue a writ of Habeas Corpus to have Mr. Krislich brought before this court; to the end that he may be discharged from his Unconstitutional Conviction, Confinment and Sentence.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on   3 / 6 / 2023 .
(month, date, year)

Executed (signed) on   3-6-2023   (date).

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

_____
_____
_____

United States District Court

For the District of New Mexico

Additional Grounds

Case No: 1:22-cv-00569-WJ-KRS

1    (5) Mr. Fernandez failed to investigate his mental health
2    after Mr. Kristich tested positive for Covid-19; before letting him
3    enter into a plea agreement. (pre-plea). (7-24-2020) Plea changed
4    (10-23-2020)

5    (6) Extreme prejudice by counsel

6    (7) Mr. Fernandez's failure to point out any and all
7    evidentiary discrepancies to Mr. Kristich and this court.

8    (8) Scientific evidence that was presented at Mr. Kristich's
9    sentencing undermines the prosecution's entire case and points to
10   Mr. Kristich's innocence (AIC).

11   (9) Mr. Fernandez did not inform Mr. Kristich that the
12   prosecution's claimed STR DNA evidence contained a very low amount
13   of cells/DNA.

14   (10) The prosecution's claimed STR DNA evidence was a mixture
15   of persons, and the number of persons that make up the mixture is
16   still unknown to Mr. Kristich and this court.

17   (11) Mr. Kristich is challenging the low number count DNA
18   testing; that the low copy number sample in this case is too small
19   and yielded unreliable and non-reproducible results.

20   (12) Mr. Fernandez failed to challenge the STR DNA test and to
21   request a Daubert Hearing under Daubert and the Fed R. of Evid.
22   Rule 702

23   (13) Mr. Fernandez failed to challenge chain-of-custody of the

\

24  STR DNA test from the time it was collected through production in

25  this court, and/or to Mr. Kristich in discovery.

26      (14) Mr. Fernandez failed to challenge the DNA test with

27  regards to documentation of the chain-of-custody and/or reports and

28  logs of the DNA sample and/or test.

29      (15) Mr. Fernandez failed to challenge the chain of custody

30  with regards to the DNA sample during the retrieval process.

31      (16) Mr. Fernandez failed to challenge the foundation for ad-

32  missability of the DNA test under the Fed. R. of. Evid. Rule 901.

33      (17) Mr. Fernandez failed to challenge the DNA sample with re-

34  gards to how it was gathered.

35      (18) Mr. Fernandez failed to challenge the DNA test with regards

36  to how the DNA sample was transported.

37      (19) Mr. Fernandez failed to challenge the DNA test with regards

38  to how the DNA sample was stored.

39      (20) Mr. Fernandez failed to challenge the DNA test with regards

40  to how the DNA sample was analyzed.

41      (21) Mr. Fernandez failed to challenge the DNA test with regards

42  to how the DNA sample was preserved for testing.

43      (22) Mr. Fernandez failed to challenge the DNA test with regards

44  to how the data from the DNA test was preserved for production.

45      (23) Mr. Fernandez failed to investigate the DNA testing data

46  with regards to if the data was manipulated in any way.

47      (24) Mr. Fernandez failed to challenge the methodology used in

48  forensic acquisition of the ESI contained on the storage media.

49  (such as the hard drive of each person's computer that was involved

50  in the DNA testing process.)

2

(25) Mr. Fernandez failed to challenge the chain of custody with regards to each person ESI during and after; the retrieval process; transportation to each person; analyzation proces; production process; and last accessed information.

(26) Mr. Fernandez failed to inform Mr. Kristich that the prosecution's witness was impeachable under Fed.R.Crim.P. Rules 26 and 32: Pursuant to U.S.S.G. 1.B1.3 and 6.A1.3 (As Mr. Kristich found out at sentencing when the prosecution pointed it out).

(27) Mr. Fernandez failed to object to the use of impeachable statements as "facts" to support "relevant conduct" at sentencing under rule 26 and 32: pursuant to U.S.S.G. 1.B1.3, and 6.A1.3.

(28) Mr. Fernandez failed to object to the use of one of the impeachable witness statements; as one of Mr. Kristich's statements: used as an additional "fact" for the use of 2241 "relevant conduct" and a higher U.S.S.G. range at sentencing.

(29) Mr. Fernandez failed to challenge the chain of custody with regards to the digital evidence to prove that it has not been altered or changed from the time the impeachable witness statements were taken/collected through production of e-discovery.

(30) Mr. Fernandez failed to challenge the chain of custody with regards to documentation of all e-discovery.

(31) Mr. Fernandez failed to challenge the methodology used in the forensic acquisition of the ESI contained on all storage media's used in the e-discovery process.

3

78      (32) Mr. Fernandez failed to challenge the foundation for

79  admissibility of the ESI under Fed.R.of Evid.Rule 901.

80      (33) Mr. Fernandez failed to challenge how all the e-

81  discovery data was gathered.

82      (34) Mr. Fernandez failed to challenge how all the e-

83  discovery data was transported/or sent to each ESI: including

84  last accessed information.

85      (35) Mr. Fernandez failed to challenge how all the e-

86  discovery data was analyzed.

87      (36) Mr. Fernandez failed to challenge how all the e-

88  discovery date was preserved for production.

89      (37) Mr. Fernandez failed to investigate if the e-discovery

90  data was manipulated in any way.

91      (38) Mr. Fernandez failed to inform Mr. Kristich that he

92  could file a motion to impeach the government's witness; (Pre-

93  Plea) as Mr. Kristich found out at sentencing.

94      (39) Mr. Fernandez failed to inform Mr. Kristich whether any

95  or all statements the impeachable witness made could or could not

96  be used at sentencing as "relevant conduct" to support 2241 and a

97  higher guideline range. Pursuant to U.S.S.G. 1.B1.3 and 6.A1.3.

98      (40) Conflict's arising from a hostile and uncommunicative

99  relationship.

100      (41) Mr. Fernandez failed to object to the extreme prejudice

101  to the defendant (by Judge Johnson/This Court - as pointed out by

102  Mr. Kristich). The witness statements can not be used as Mr.

103  Kristich's statement.

104      (42) Mr. Fernandez was ineffective assistance of counsel due

4

105    to professional malconduct as shown in Exhibit B; recorded phone
106    calls with counsel talking about objections to be made to PSI.
107    Counsel prejudiced Mr. Kristich by not making all objections that
108    counsel told Mr. Kristich he would make.

109    (43) Counsel failed to inform Mr. Kristich that he could
110    challenge the grand jury on the grounds that he/she was not
111    lawfully drawn summoned...and may challenge an individual juror
112    on the grounds that the juror is not legally qualified
113    Fed.R.Crim.P. 6(b)(1).

114    (44) Mr. Fernandez lied to Mr. Kristich about Fed.R.Crim.P.
115    Rule 6(c). "The foreperson or deputy foreperson may administer
116    oaths'...and will sign all indictments. Due process of law
117    violation of the 5th Amend. U.S. Const. (No true bill in this
118    case). (No signed indictment in Mr. Kristich's case).

119    (45) Mr. Fernandez told Mr. Kristich that Rule
120    6(E)(3)(e)(ii) does not apply to his case.

121    (46) Mr. Fernandez failed to file a motion for an error in
122    the grand jury proceedings or preliminary hearing with regards to
123    false evidence, false statements, the LNC DNA test, No true
124    bill/no signed indictment. Under Fed.R.Crim.P. Rule
125    6(E)(3)(e)(ii).

126    (47) Mr. Fernandez did not file a motion for a bill of
127    particulars under Fed.R.Crim.P. Rule 7(f).

128    (48) Mr. Fernandez did not file any motions in Mr.
129    Kristich's defense for about 3 years; when Mr. Kristich was
130    telling counsel to go to trial on recorded calls.

131    (49) Mr. Fernandez failed to file a motion for lack of

5

132    specificity and/or failure to state an offense (a jurisdictional

133    issue): a structural flaw in the charging papers. Defective

134    indictment and information. Mr. Fernandez knew the charging

135    papers did not state an offense under 30-9-11(G)(1).

136        (50) Mr. Fernandez failed to object to the use of State v.

137    Romero, 2000 NMCA-029,31, 128 N.M. 806, 999 P.2d 1038.

138        (51) Mr. Fernandez lied to Mr. Kristich about mistake-of-

139    fact/mistake of age defense being a reasonable defense permitted

140    by judicial decision if the victim is between 13 and 16 in New

141    Mexico (over recorded phone call).

142        (52) Mr. Fernandez failed to file a motion to supress evidence

143    due to the low number count STR DNA testing and mixture of persons.

144    Mr. Fernandez knew that a motion to supress was an appropiate motion

145    in this case.

146        (53) Fernandez did not tell Mr. Kristich about all the U.S.S.G's

147    pre-plea.  A violation of Mr. Kristich's right to enter into a plea

148    agreement as an informed and voluntary plea.

149        (54) Mr. Kristich used Rule 51(b) to preserve a claim of error

150    by informing this court within 14 days as the record will show.

151        (55) The evidence in this case is insufficient to support Mr.

152    Kristich's conviction for one count of violating 18 U.S.C. 2244(a):

153    "Whoever, knowingly persuades, induces, entices, or coerces an indi-

154    vidual to travel interstae or foreign commerce..."

155        (56) Counsel held Mr. Kristich in-communicado in pre-trial de-

156    tention for around 3 years; telling Mr. Kristich that the courts had

157    rescheduled his trial.  However, the record shows that Mr. Fernan-

158    dez had filed the motions without informing Mr. Kristich (Counsel

6

159    did not file any motions in Mr. Kristich's defense for around 3 years

160    as the record will show.)

161        (57) Mr. Fernandez did not ensure that Mr. Kristich was placed

162    in the most favorable position possible for his defense under the

163    6th ammendment.

164        (58) Mr. Kristich did not committ a sinister act-no "mens rea"

165    as shown in the learned language in the admission of facts.

166        (59) Under Fed. R. Crim. P. Rule 12(b)(3), counsel's failure

167    to file the pre-trial motions.

168        (60) Mr. Fernandez failed to file a motion to challenge this

169    court's "geographical jurisdiction" and/or lack of geographical

170    jurisdiction; (When he knew that there was no evidence in discovery

171    to support geographical jurisdiction.) Mr. Fernandez knew that a

172    motion for lack of jurisdiction was an appropriate motion in this

173    case.

174        (61) Mr. Fernandez failed to file a motion under the U.S. Const.

175    Art. 3, section 2 to challenge justiciability/justiciability doctrine he

176    knew that a motion for justiciability was an appropriate motion in

177    this case.

178        (62) Mr. Fernandez failed to file a motion for speedy trial.

179    (Please see speedy trial act-180 days.) Mr. Fernandez knew that

180    a motion for speedy trial was an appropriate motion in this case.

181        (63) Fed R. Evid. Art. X Rule 1007-Mr. Fernandez failed to

182    file a motion for selective or vindictive prosecution with regards

183    to lack of evidence, false evidence, false statements, and a low

184    number count STR DNA test. Mr. Fernandez knew that a motion for

185    vindictive prosecution was an appropriate motion in this case.

(64) Fed.R.Crim.P. Rule 52(b)-more than one plain error that affected Mr. Kristich's substantial rights.

(65) Violation of Fed.R.Of Evid. 103 with no objection from Mr. Fernandez. (untruthful statements used as "facts" to support the use of 2241 and a higher guideline range at sentencing).

(66) Mr. Fernadez failed to object to the use of false evidence and statements as additional facts to support 2241 and a higher guideline range at sentencing.

(67) Mr. Fernandez failed to appeal for Mr. Kristich when he knew that the U.S. Attorney, and the court breached the plea agreement by going outside the admission of facts.

(68) The admission of facts in the plea clearly says "Who I have learned was 13 years old at the time. This undermines the first element of 18 U.S.C. 2422(a); the defendant "knowingly persuaded...; is this court saying the words "knowingly and learned" have the same meaning?

(69) Violation of basic statutory goal Congress had in mind when it wrote Statute 2422(a) with intent.

(70) Mr. Fernandez advised Mr. Kristich to sign a plea in deprivation of and in violation of his Constitutional rights the 6th, and 5th Amendment in light of all these errors claimed herein. Therefore, Mr. Kristich's plea is invalidated.

(71) Mr. Fernandez failed to object to and/or ask to have conditions under SORNA § 20911 articulated under 18 U.S.C. 3583.

(72) Mr. Fernandez failed to object when Judge Johnson delegated his sentencing authority to Mr. Kristich probation officer and/or the treatment provider under Art. III to a non-Art III

8

213  official when it comes to conditions of supervised release.

214  A. No access to adult porn as determined by probation or the

215  treatment provider.

216  B. Mr. Kristich must submit to polygraph testing as determined by

217  probation/treatment provider.

218  C. All other conditions that we delegated to probation/the treatment

219  provider. "Because it was a sexual offense" (Judge Johnson).

220  (73) Mr. Fernandez did not tell him everything he needed to

221  know and/or raise any and all possible defenses; evidence; laws;

222  rules; and Const. Amendments; U.S.S.G.'s statutes to Mr. Kristich or

223  this court pre-plea. Therefore, Mr. Kristich is "actually innocent"

224  of 2422(a).

225  (74) Mr. Kristich is challenging 18 U.S.C. 2422(a) as

226  Unconstitutionally vague: because of the words "or in any sexual

227  activity for which any person can be charged with a criminal

228  offense." The problem is the word Any - Congress and State

229  Legislatures know how to write laws with "intent". However, 30-9-

230  11(G)(1) holds a mistake-in-fact/age defense meaning it can be

231  committed without "intent".

232  (75) The government could not present sufficient evidence of

233  venue with respect to Mr. Kristich's enticement to engage in

234  unlawful sexual activity in violation of 2422(a).  Mr. Fernandez

235  failed to raise this issue or tell Mr. Kristich about venue issues.

236  (76) Violation of the 4th Amend. of U.S. Const:  Mr.

237  Fernandez failed to challenge the search warrant or tell Mr.

238  Kristich to do so.

239    (77) Under contract law, Mr. Fernandez used fraudulent

240 misrepresentation to get Mr. Kristich to sign the plea agreement; by

241 telling Mr. Kristich that mistake in fact/mistake in age defense is

242 not a defense when the minor is 13-16 years of age, when it is in

243 fact a defense (over recorded phone calls-please see the learned

244 language in the admission of facts.)

245    (78) Mr. Fernandez used "fraud in the factum" and/or

246 "fraud in the inducement" when telling Mr. Kristich to sign the

247 11(c)(1)(c) plea agreement, by not telling Mr. Kristich about all

248 possible defenses, U.S.S.G.'s, Fed R. Crim. P.'s, Constitutional

249 rights and laws that could have been used to defend Mr. Kristich.

250    (79) Mr. Fernandez failed to object to the unarticulated

251 portions of Mr. Kristich's conditions of supervised release under

252 SORNA §20911.

253    (80) Mr. Fernandez failed to object to all other conditions of

254 supervised release that were discretionary in this case:  those that

255 were not reasonably  ፥" related to this case under 3583(d):

256 Specifically:

257    (80A) No access to adult porn; Mr. Kristich's case does not

258 involve porn of any kind.

259    (80B) Polygraph testing.

260    (80C) All other conditions that were delegated to the probation

261 officer and the treatment provider because it was a "sexual

262 offense"; (Judge Johnson) but was not a circumstance of this case.

263    (81) Mr. Fernandez failed to object to the use of sentencing

264 guidelines and policy statements that were not in the plea

10

265  agreement.  Fed R. Crim. P. Rule 11(c)(1)(c) says "that all

266  sentencing guidelines and policy statements must be in the plea

267  agreement."  The prosecution and this court breached the plea with

268  the use of 2A.3 and 2241.

269      (82) Mr. Fernandez failed to object to Brady violations at

270  various stages of the proceedings.

271      (83) Mr. Fernandez failed to object to unwarranted sentencing

272  disparities in this case.

273  (84)  In amending my claims, I request to adopt all my original

274  claims and supplements to these claims.


275      I hereby declare under penalty of perjury that the forgoing is

276  true and correct under 28 U.S.C.; 18 U.S.C. 1001.

_Orin Kristich_
Name

_Orin_ _____
Signature

_3 - 6 - 2023_
Date

\\

United States District Court

for the District of New Mexico

Waiver of Right; Materials or Communications Protected by

Attorney-Client Privilege

| | |
|---|---|
| Orin Kristich, | Case No: 22CV00569-WJ-KRS |
| Petitioner | Waiver of Right Materials or |
| v. | Communications protected by |
| United States of America | Attorney-Client Privilege |
| Respondent | |

1   Now comes, Orin Kristich:   I, Orin Kristich, hereby submit
2   this waiver of right of materials or communications that are
3   protected by my attorney-client privilege under the U.S. Const.
4   When it comes to materials and/or communications in my attorney-
5   client case files that are being held by Mr. Fernandez of the
6   F.P.D.O. (D.N.M.) and/or Mr. Acton of Acton Law Offices; listed as
7   counsel and Appeal counsel at the time as the record will show.
8   Specifically:

9      (1) Any and all letters that were sent to counsel by Mr.
10  Kristich; and/or any and all letters sent from counsel to Mr.
11  Kristich.

12     (2) Any and all recorded phone calls between Mr. Kristich and
13  counsel.

14     (3) Any and all E-mails, letters, and notes in Mr. Kristich's
15  case files that were sent to/from counsel at the time and the
16  United States Attorney's Office.

Declaration:

I hereby declare under penalty of perjury that the foregoing is true and correct under 28 U.S.C. 1746; 18 U.S.C. 1001.

Orin Kristich
Name

Signature

3-6-2023
Date

United States District Court

for the District of New Mexico

Memorandum in Support of 2255; Ineffective Assistance of Counsel

Appellate Counsel/10th Circuit Court of Appeals

| | |
|---|---|
| Orin Kristich,<br><br>   Petitioner<br><br>v.<br><br>United States of America,<br><br>   Respondent | Case No: 22CV00569-WJ-KRS<br><br>Memorandum in Support of 2255;<br>(IAC)<br><br>Appellate Counsel (10th Cir.) |

1      (1) Mr. Acton, court-appointed appellate counsel for Mr.

2    Kristich, was ineffective for the following reasons:

3    Specifically:

4      (1) In United States v. Kristich, 152 U.S. App-Lexis (2022).

5    Mr. Acton told the 10th Cir. Court of Appeals: "In response to the

6    government's motion to enforce, Kristich through counsel

7    acknowledged that his appeal waiver is enforceable under the

8    standards set out in Hahn." However, Mr. Acton never even talked

9    to Mr. Kristich about the government's motion to enforce the

10   appeal waiver. Moreover, Mr. Kristich was in transit at the time,

11   and Mr. Acton had told Mr. Kristich in a letter that he would be

12   asking for an extension of 30 days. Mr. Kristich was stripped of

13   appeals documents in transit. Furthermore, the 10th Cir. Court of

14   appeals later reversed course and forced Mr. Kristich to proceed

15   pro-se (De-Novo) on 4-13-2022 without addressing the actions of

16   Mr. Acton. (A claim Mr. Kristich made to the 10th Cir.) These are

17. two Due process violations under the 6th Amendment of the United

18. States Constitution.  In Roe v. Flores-Ortega, 528 U.S. 470, 120

19. S. Ct. 1029, 145 L. Ed. 985 (2000): "When an attorney's deficient

20. performance costs a defendant an appeal that the defendant would

21. have otherwise pursued, prejudice to the defendant should be

22. presumed" "with no further showing from the defendant of the

23. merits of his underlying claims." Id., at 484, 120 S. Ct. 1029,

24. 145 L. Ed. 2d, 985. (See 203 L. Ed. 2d. L.Ed HR2.) "the

25. presumption of prejudice recognized in Flores-Ortega applies

26. regardless of whether the defendant has signed an appeal waiver."

27. (Also see Strickland v. Washington, 466 U.S. 668, 695 (1984.)

28. "'reasonable probability' that but for counsel's

29. ineffectivness..."

30.      (2) As recognized in Flores-Ortega, an appeal waiver may not

31. always be enforceable, and it is not a free pass for the

32. government, the court, or counsel to violate Mr. kristich's

33. Constitutional rights. (see sentencing transcripts and motion for late

34. appeal that was granted.)   Mr. Acton's prejudicial actions

35. deprived me of appeal proceedings.  Furthermore, the court used,

36. (inconsistent stories, the victim's statements used as the

37. defendant's statement-defendant tells court he never made a

38. statement, and court tells the defendant: "It's in the 911 call.")

39. However, it is not in the 911 call; all used as "facts" to support

40. higher-sentencing guidelines. (see sentencing transcripts).  These

41. are not facts in Mr. Kristich's case.  All these issues should

42. have been raised by Mr. Acton.  Mr. Kristich is asking how stories

43. that could have been used to impeach the victim were used as facts

44    on the record.   Moreover, the prosecution did not disclose the

45    fact that the victim could have been impeached until sentencing.

46   — No disclosure under Brady! (Should have been done Pre-plea.)


Declaration:

I hereby declare under penalty of perjury that the foregoing is

true and correct under 28 U.S.C. 1746; 18 U.S.C. 1001.




Orin Kristich
<u>                   </u>
name

<u>                   </u>
signature
3-6-2023
<u>              </u>
date

United States District Court

For the District of New Mexico

Memorandum in Support of 2255

Orin Kristich,

  Petitioner

        v.

United States of America,

  Respondant

Case No. 1:22-cv-00569-WJ-KRS

Memorandum in Support of 2255

## Ineffective Assistance of Counsel: (I.A.C.)

1    (1) The Sixth Amendment provides that "in all criminal

2  prosecution(s), the accused shall enjoy the right to have

3  assistance of counsel for his defense." Mr. Kristich's

4  counsel was ineffective assistance of counsel in this case.

5  Furthermore, Mr. Kristich's conviction is invalid because of

6  his counsel's failure to raise all the claims herein; in his

7  defense, and such claims are of a Constitutional nature. (See

8  the Strickland Test.) In Hill v. Lockhart, "the Strickland

9  test applied to the plea bargaining context." In light of the

10  above case, it is very unreasonable for counsel to advise Mr.

11  Kristich to sign a plea only a few months after Mr. Kristich

12  tested positive for Covid-19; on (7-24-2020) Mr. Kristich

13  changed his plea on (10-23-2020),

14    A. Mr. Kristich's counsel did not investigate his mental

15  health after he tested positive for Covid; before letting him

16  sign any plea. (Counsel knew that evidence on the record in

-1-

17    1.20-CV-01309).  "Evidence shows that the Covid-19 pathogen

18    can impact 'nearly every major organ system in the body', and

19    can leave even young and otherwise healthy patients

20    "debilitated or dead."  The record in the above case in point:

21    "Blood clots from Covid-19 can cause severe strokes in young

22    and middle-age patients that "obliterate large parts of the

23    brain responsible for movement, speech, and decision

24    making..."  Moreover, on Thanksgiving Day, Mr. Kristich

25    experienced a black-out where he was found passed out on the

26    floor of his cell.  However, did counsel investigate his

27    mental health or look into how many black-outs had happened

28    when Mr. Kristich was in the process of a "plea bargain"?

29    (The answer is NO!)  Furthermore, Mr. Kristich was telling

30    counsel to go to trial for around 31 months before Covid-19.

31    (extreme prejudice by counsel!)

32            B. Mr. Kristich received ineffective assistance of

33    counsel due to a conflict arising from a hostile and

34    uncommunicative relationship, and counsel's failure to

35            point out any and all evidentiary discrepancies to Mr.

36    Kristich, and the court: ("diligently discovered") scientific

37    evidence that was presented at Mr. Kristich's sentencing,

38    which undermines the prosecution's entire case and points to

39    Mr. Kristich's innocence (A.I.C.) (See United States v.

40    Williams,382 F. Supp. 3d 928 (9th Cir 2019))  "Even with the

41    improvements in amplification technology, other factors

42    present challenges to accurately identifying the number of

43    contributors.  The challenge of allele sharing is 'frequently'

44  exacerbated by samples that have degraded or which originally
45  contained only a small amount of DNA." (See Exhibit A (2255)).
46  Moreover, as seen in Williams, 382, under B. Probabilistic
47  Genotyping and Bullet, "SERI did not seek to validate Bullet
48  for use with five-person mixtures." According to Hopper's
49  testimony, one key advancement of Bullet is its ability to
50  consider the possibility that some alleles are not detectable
51  because they have dropped out of the mixture.  Due to un-
52  detectable or simply low quantities of DNA, not all of a
53  contributor's alleles will necessarily be detectable at every
54  locus." (Post-plea)  (Mr. Kristich found out a few weeks
55  before his sentencing)  (See exhibit A-2 (2255))  In Mr.
56  Kristich's case, counsel did not inform him that the
57  prosecution's claimed evidence not only contained a very low
58  amount of DNA, but was also a mixture of persons'.  However,
59  the number of persons that make up the mixture is still
60  unknown to Mr. Kristich.  (Quoting) John M. Butle, of
61  Fundamentals of Forensic DNA typing, 331 (2010) [Gov's Ex 34
62  found in Williams'] "Trying to generate a reliable S.T.R.
63  profile with only a few cells from a biological sample is
64  similar to looking for an object in the mud or trying to
65  decipher the image in a fuzzy photograph." (See Peter Gill,
66  Supra at 229)  "Interpretation of LCN results is not
67  straightforward."  In light of the above, Mr. Kristich is
68  asking was the DNA test in his case admissible under Daubert,
69  and the Fed. R. Evi. Rule 702.  Furthermore, it was very
70  unreasonable that counsel did not request a Daubert hearing or

71  make objection(s) to the above at sentencing; in this case,

72  Mr. Kristich is challenging the (L.C.N.) (DNA testing); that

73  the low copy number testing is not generally reliable even in

74  the forensic science community, because the sample in this

75  case is too small and yielded unreliable and nonproductive

76  results. (The lab who did the testing, Mr. Kritich's counsel,

77  and the government know this is a fact.)

78      C. Mr. Kristich's counsel failed to inform him that the

79  prosecution's witness was impeachable and whether any and all

80  of the witness statements could be used to impeach the

81  witness. As Mr. Kristich found out at sentencing when the

82  prosecution pointed it out. (As found in Mr. Kristich's

83  sentencing transcripts.) Moreover, counsel's failure to

84  challenge and/or object to the use of such statements, as

85  facts to support "relevant conduct" at sentencing pursuant of

86  Fed. R. Crim. P, Rule 32 and U.S.S.G. 1B1.3 (The applicable

87  guideline says: "The court may rely upon 'reliable' hearsay so

88  long as the evidence meets the preponderance of the evidence

89  standard.") However, this court used "unreliable" statements,

90  four fictional stories as "facts" to support the above

91  evidence standard. (A 5th story was not even considered.)

92  (These were not facts in the case!) As pointed out by Mr.

93  Kristich at sentencing, Fed. R. Crim. P. Rule 32 and U.S.S.G

94  6A1.3 can be used when a witness's statements should not be

95  considered. (See Mr. Kristich's sentencing transcripts.)

96  (Counsel's failure to object to extreme prejudice to the

97  defendant" (by Judge Johnson/the court).)

98·     D. Ineffective assistance of counsel due to professional
99 misconduct as shown in Exhibit B (2255), recorded phone calls
100 with counsel talking about objections to be made to the
101 P.S.I., claims that    counsel told Mr. Kristich he would be
102 making at sentencing. However, (Alejandro Fernandez)
103 "counsel" prejudiced Mr. Kristich by not making all
104 objections, after almost a year of recorded phone calls asking
105 counsel to make such "objections".

106     E. Counsel failed to inform Mr. Kristich that he could
107 challenge the grand jury on the grounds that he/she was not
108 lawfully drawn summoned...and may challenge an individual
109 juror on the grounds that the juror is not legally qualified.
110 Fed R. Crim. P. Rule 6(b)(1)

111     F. Counsel lied to Mr. Kristich about Fed. R. Crim. P.
112 Rule 6(c) "The foreperson or deputy foreperson may administer
113 oaths...and will sign all indictments..." (when asked about
114 the above rule, counsel told Mr. Kristich, "it is an
115 electronic signature and can not be seen." However, when all
116 the parties signed the plea on electronic signature pad, it
117 can be seen. In relation to the federal procedural due
118 process of law by way of the 5th Const. amendment, "No person
119 shall be held to answer for a capital or otherwise infamous
120 crime, unless on a presentment or indictment of a grand jury
121 without due process of law"; there was no true bill (no signed
122 indictment in Mr. Kristich's case) Fed R. Crim. P. Rule
123 6(E)(3)(e)(ii) The court may authorize disclosure at a time,
124 in a manner, and subject to any other conditions that it

125  directs of a grand jury matter "at the request of a defendant

126  who shows a ground may exist to dismiss the indictment because

127  of any matter that occurred before the grand jury.  Counsel

128  told Mr. Kristich that this rule does not apply to the

129  (defendant's) case.  Moreover, Fed. R. Crim. P. Rule 7(f)

130  counsel did not file a motion for a bill of particulars; the

131  defendant may move for a bill of particulars before or within

132  14 days after arraingment or at a later time if the court

133  permits.  Furthermore, the record shows that counsel for Mr.

134  Kristich; did not file any motions in his defense; for over

135  three years when Mr. Kristich was telling counsel to go to

136  trial on recorded calls (not even one motion!), Fed. R. Crim

137  P. Rule 12(b)(3)(A)(V): motions that must be made before

138  trial: The following defenses, objections, and requests must

139  be raised by pretrial motion; if the basis for the motion is

140  then reasonably available, (iii) a violation of the Const.

141  right to a speedy trial (180 days) (See the Speedy Trial Act).

142  (iv)  Selective or vindictive prosecution; (v.) an error in

143  the grand jury proceedings or preliminary hearing.  The only

144  motions filed pretrial/preplea by counsel were to postpone Mr.

145  Kristich's trial; nothing else is shown on the record of the

146  court.  (When Mr. Kristich asked counsel about why the court

147  postponed so many times, counsel said it was the judge doing

148  this; however, the record shows counsel made the request.

149  (More lies on recorded phone calls at C.C.A)

150      G.  Counsel failed to object to the use of State v. Romero,

151  2000 NMCA-029, 31, 128 N.M. 806, 999 P.2d, 1038. "causing or

152  encouraging a minor to refuse to obey the reasonable and lawful

153  command or direction of...person who has lawful authority over the

154  minor 'requires proof' that the defendant or by exercise of

155  reasonable care should have known of such command or direction."

156  (However, the defendant Mr. Kristich could not have known.-see

157  plea agreement.)  Furthermore, the state of New Mexico and the

158  Federal courts "have not upheld a constitutional right to present

159  a mistake-of-age defense to a charge of statutory rape when the

160  person is age 12" (or under-see United States v. Juvenile Male,

161  211 F.39 1169, 1171 (9th Cir 2000) "no constitutional right to

162  present mistake-of-age defense to a charge of comitting sex act

163  with a person under twelve." (See Perez v. State, 111 N.M. 260,

164  803 P.2d 249 (N.M. Sup. Ct. 1990) "though strict liability is

165  required to protect (825 F. Supp 498) children under the age of

166  thirteen, reasonable mistake-of-fact defense permitted by judicial

167  decision, if victim is between 13 and 16... (in view of statutory

168  provision providing for mistake-of-fact defense and requiring mens

169  rea for all crimes not deemed strict liability offenses by

170  legislature, government must prove defendant was aware of or was

171  negligent to the age of the victim and affirmative defense of

172  mistake-of-fact must be permitted; State v. Doda, 53 Wash. App

173  178, 765 P.2d 1337 (Wash. Ct. App. 1989)" Moreover, when the

174  minor represented self to be over age to Mr. Kristich, mistake-of-

175  fact or mistake-of-age defense should have been permitted (had

176  counsel not lied to Mr. Kristich about the above defense on more

177  than one recorded phone call-see plea agreement and sentencing

178    transcripts..) The minor in this case told officers and a witness
179    for Mr. Kristich she was over 18 years old. (See Xiulu Ruan v.
180    United States-June 27, 2022.)  Mr. Kristich did not commit a
181    "sinister" act; no "mens rea" as shown in the "learned" language
182    in the admission of facts. (see admission of facts; plea.).

183         H. As stated on the record by counsel (see sentencing
184    transcripts) Mr. Kristich was not aware of the imposed sentencing
185    guidelines and "2241" "preplea"; Mr. Kristich was made aware of
186    the guidelines after signing the plea agreement.  This is a
187    violation of the defendant's right to enter into the plea
188    agreement as an informed and voluntary plea.  This shows that Mr.
189    Kristich was represented by ineffective assistance of counsel;
190    because Mr. Kristich was not aware of everything he needed to
191    know; and other possible defenses  may not have been told to Mr.
192    Kristich, and all objections should have been made by counsel.

193         I. Fed. R. Crim. P. Rule 52(b)-Plain Error, a plain error
194    that affects substantial rights may be considered even though it
195    was not brought to the court's attention.  Under Fed. R. Crim P.
196    Rule 26.2(a)-(g), and Rule 32(i)(2): Introducing Evidence;
197    producing a statement.  The court may permit the parties to
198    introduce evidence on the objections.  "If" a witness testifies at
199    sentencing, Rule 26.2(a)-(d) and (f) applies.  However, "if" a
200    party fails to comply with Rule 26.2, the court must not consider
201    that witness's testimony.  Furthermore, counsel made no objections
202    to the use of such, and let Judge Johnson use the wintess
203    (minor's) statement(s) as Mr. Kristich's statement to support the use
204    of 2241 and guidelines; (see sentencing transcripts) Mr. Kristich

205   told Judge Johnson he never made a statement.  Judge Johnson says
206   the statement was in the "911 call."  However, the 911 call shows
207   no such "fact."  The statement used as Mr. Kristich's statement
208   was in fact one of minor's many statements; they were not facts in
209   this case.  But they were used as additional facts to use "2241"
210   "Offense-involved conduct."

211       J. Preserving Claimed Error: Rule 51(b), a party may preserve
212   a claim of error by informing the court-when the court ruling an
213   order is made or sought-of the action the party wishes the court
214   to take, or the parties' objection on the court's actions, and the
215   ground(s) for that objection:  If a party does not  have an oppor-
216   tunity to object to a ruling or order, the absence of an objection
217   does not later prejudice that party.  A ruling or order that
218   admits or excludes evidence is governed by Fed. R. of Evid. 103.
219   At sentencing, the U.S. attorney said that Mr. Kristich knew that
220   A.W. was underage because she told Mr. Kristich that she was going
221   to her mom's house in Michigan; (This is not a "fact" in the
222   case.)  Moreover, the government claimed this was a "fact" of
223   "prior knowledge" that Mr. Kristich used to control the situation,
224   and was "offense involved conduct" described in 18 U.S.C. 2241.
225   However, there is no evidence to show that this was ever said to
226   Mr. Kristich, and should not be used as a "fact."  This shows
227   counsel's failure to object to the government's use of untruthful
228   statements/testimony after the prosecution told the court that A.W.'s
229   statement(s) were untruthful, and the witness could be impeached.
230   K. As shown in Exhibit C, Mr. Kristich(s) counsel is ineffective
231   assistance of counsel for failure to appeal; when counsel knew that

232    the court, and the U.S. Attorney breached the plea agreement by going

233    outside the admission of fact(s); counsel handed Mr. Kristich a note

234    at sentencing that say(s) "Read admission of fact(s) from plea."

235    (120 mos (ten year(s))). The admission of fact(s) clearly say(s)

236    "Who I have 'learned' was 13 year(s) old at the time." Furthermore,

237    this undermines the first element of 18 U.S.C. § 2422(a) - The defendant

238    "knowingly" persuaded ... is the court saying the word(s) "knowingly"

239    and "learned" have the same meaning?

240    L. The court in Mr. Kristich(s) case imposed no access to adult porn

241    with no objection(s) from counsel. Counsel failed to object to no

242    access to adult porn; and this was improperly imposed by the court,

243    and need(s) to be vacated because it was vague and/or improperly

244    delegated the court(s) authority to determine the defendant(s) sentence

245    to individual(s) who do not work for the court. (The probation officer

246    and the treatment provider). The 1st Amendment, under Article III;

247    the Judge can not let the probation officer and/or treatment provider

248    determine whether a condition should be imposed. (See United States

249    v. Eric D. Wagner ((2017) No. 15-3265); United States v. Tom Lusul

250    Malenya (No. 12-3069); Moreover there was no porn in Mr. Kristich's

251    case "child" or "adult". Under 18 U.S.C. § 3583(d)(2)- "involves no

252    greater deprivation of liberty than is reasonably necessary for the

253    purposes set forth in section 3553 ... However, this does involve a

254    greater deprivation of liberty than is reasonably necessary, and was

255    not part of any "criminal conduct", and has nothing to do with

256    protection of the public from further crime(s) of Mr. Kristich.

257    M. Congress basic statutory goal - "a system that diminishes sentencing

258    disparity ... depend(s) upon judicial effort(s) to determine, and

259    base punishment upon, the real conduct that underlines the crime of
260    conviction." (See Supreme Court in United States v. Booker) that the
261    consideration of real conduct is necesary to effectuate Congress's
262    purpose in enacting the guidelines. (In the heartland of the case(s),
263    most defendants with more than one conviction of 2422(a), and other
264    charges received around 72 mo in the United States. (See United
265    States v. Burns (2009); Marziani v. United States; United States v.
266    Anderson, U.S. Dist. Lexis 4697 (2015.) Mr. Kristich's case was
267    outside the heartland of cases, however, he was still sentenced to
268    120 mo; more than defendants that have worse "criminal conduct", and
269    more than one charge (under 2422(a)). Furthermore, the state charge
270    that is in support of his 2422(a); 30-9-11(G)(1)having a maximum term
271    of imprisonment of 18 mo.

272        N. Counsel's failure to object to the use of the 2020 U.S.S.G:
273    "The ex-post facto clause prevents a court from sentencing an
274    offender under a new law that is more onerous than the law in effect
275    when the offense was committed." (See Miller v. Florida, 482 U.S.
276    423, 96 L. Ed. 2d. 351,107 S. Ct 2446 (1987).) "The purpose of the
277    ex-post-facto clause is to give the citizenry fair notice of the
278    consequence of their actions, and to permit individuals to rely on
279    the meaning of the law explicitly charged (Id at 430), the ex-post-
280    facto clause applies to the federal sentencing guidelines." Counsel
281    should have objected and requested the use of the 2017 U.S.S.G., and
282    they should have been considered. Mr. Kristich is challenging the
283    use of the 2020 U.S.S.G.; any policy statement's official commentary
284    of the sentencing commission: the 2017 set that was in effect when
285    the offense was committed should be used. (See United States v.

286   Morrow, 925 F. 2d. 779 (4th Cir. 1991): "Therefore, if comment 2, as
287   ammended, provides a more severe punishment for the accused than was
288   applicable at the time his offense was committed, then it would be
289   impermissible to consider it in his sentencing."

290        O.   In light of all the above, Mr. Kristich's counsel advised him
291   to sign a plea in deprivation, and violation of Mr. Kristich's
292   Constitutional rights; under the 5th Amend; the 6th Amend; the 14th
293   Amend; the 1st Amend; the 10th Amend; the 11th Amend; et. al.
294   Moreover if it was not for his counsel's extreme errors and lies, the
295   outcome of Mr. Kristich's case would have been different because Mr.
296   Kristich would not have taken a guilty plea and/or would not have
297   received such a severe sentence, if it were not for his counsel's
298   extreme prejudice.  Mr. Kristich would have gone to trial.

299        P.   Counsel's failure to make objections at sentencing to the
300   following conditions under SORNA §20911:

301        (P1) 18 U.S.C. 3583 requires that each condition of supervised
302   release be articulated at sentencing, even though adoption of
303   proposed conditions in a P.S.I., unless the condition is one that is
304   required by law and also gives sentencing courts authority to impose
305   a myriad of other conditions as long as these discretionary
306   conditions are "reasonably related" to a defendant's circumstances
307   and "involve no greater deprivation of liberty that is reasonably
308   necessary..." (§3583(d).)  Requiring articulation of these
309   discretionary restrictions gives the defense an opportunity to
310   object to them.  Mr. Fernandez's failure to object to discretionary
311   conditions that were not "reasonably related" to Mr. Kristich's
312   circumstances; do satisfy Strickland's prejudice prong.  Moreover,
313   Mr. Fernandez's poor performance resulted in stricter conditions of

314     **supervised release and affected the outcome of the proceedings**

315     (because counsel did not present the mitigating facts in this case.)

316     Furthermore, §3583 is the law that lists required conditions of

317     release which must be imposed by law. (See Faulds v. United States,

318     617 F. App'x 581, 584-85 (7th Cir) and Booker v. United States.

319       (P2) Unites States Const., Art. III, Judicial Power, Sec 2, and

320     the Separation of powers doctrine prevent courts from delegation of

321     sentencing authority from Article III judicial officers to non-

322     Article III officials; affecting Mr. Kristich's substantial rights,

323     and the outcome of the proceedings; by allowing the probation

324     officer and/or the treatment provider the final authority to

325     determine Mr. Kristich's conditions of supervised release. (Please

326     see United States v. Albro, 32 F. 3d. 173 (5th Cir 1994) and United

327     States v. Johnson, 806 F. 3d. 48 (4th Cir 1995.)) At sentencing

328     (Judge Johnson) delegated his sentencing authority to Mr. Kristich's

329     probation officer and/or treatment provider.

330   Specifically:

331       (A) The sentencing court imposed a condition: access to adult

332   porn as determined by the probation officer and/or the treatment

333   provider. (Mr. Kristich's case has no porn- See sentencing

334   transcripts.)

335       (B) Mr. Kristich must submit to polygraph testing as

336   determined by the probation officer/treatment provider. (Should

337   Mr. Kristich invoke his right against self-incrimination-per the

338   5th amendment-then he will violate supervision. See sentencing

339   transcripts.)

340   (C) All other conditions that were imposed and delegated to

341   the probation officer/treatment provider were done so because it

342   was a "sexual offense" as said by Judge Johnson, (See sentencing

343   transcripts.) but was not a circumstance of fact in Mr. Kristich's

344   case.

345   (D) At Mr. Kristich's sentencing, the sentencing court said

346   Mr. Kristich must comply with the requirement of the sex offender

347   registration notification act (see 34 U.S.C. 20911.)  However, the

348   court was very vague and did not articulate conditions under SORNA,

349   but which would be imposed as directed by the probation officer.

350   After sentencing, Mr. Kristich asked counsel how long he needed to

351   comply with SORNA.  Mr. Fernandez said "The statute will tell you.

352   However, it should be fifteen years."  However §20911 does not list

353   2422(a) as a required registration offense.  It does list 2422(b)

354   under §20911 (3)(A)(ii) coercion and enticment.  Moreover, the law

355   itself is unconstitutionally vague:  when it comes to 2422(a). This

356   court should have articulated if Mr. Kristich is a tier 2 sex

357   offender, and if so, how long and how often he would need to comply

358   with registration.


359   (Q) The sentencing court used a statement that Mr. Kristich

360   never made,and other fictional stories, not "facts" as

361   "additional facts" to use U.S.S.G. 2A3.1, and 2241; offense-

362   involved conduct, with no objections made by Mr. Fernandez, even

363   after Mr. Kristich told the court he never made that statement:

364   The statement was one of A.W.'s many fictional stories.

365   (A) Mr. Kristich is challenging the use of 2A3.1 and §2241:

-14-

366  2G1.1 was imposed as seen in the sentencing transcripts.
367  However, 2A3.1 and §2241 was used for the base level and
368  guideline range (see sentencing transcripts). Mr. Kristich is
369  claiming that U.S.S.G. 2A3.2 should have been used with a base
370  offense level of 18 points or 2G1.1 that was imposed but not
371  used with a base offense level of 14 points. (See United States
372  of America v. Leotha Williams U.S. Dist. Lexis 124956 (2020);
373  entered as Exhibit J. Quoting Leotha Williams (D.N.M.) "On
374  September 11, 2019 a federal Grand Jury issued a twenty-count
375  superseding indictment that charged Baker, Williams, and Inkosi
376  Grandberry with violating 18 U.S.C. 1591(a)(1) and (d), 2422(a),
377  and 2423(a) and (e)...The plea agreement reflects the United
378  States and Williams' agreement that a sentence of thirty-six to
379  sixty months is appropriate." (Please see section §3553(a)(2):
380  "to the extent that they are applicable in light of the
381  circumstances of the case. 18 U.S.C. §3551.  To achieve these
382  purposes, §3553(a) directs sentencing courts to consider (i) the
383  guidelines; (ii) the nature of the offenses, and the defendant's
384  character; (iii) the available sentences; (iv) the policy
385  favoring uniformity in sentences for defendants who commit
386  similar crimes..." (quoting) United States v. Terrell, 445 F.3d.
387  1261, 1265 (10th Cir 2006)."  A reasonable sentence is one that
388  also "avoid(s)" unwarranted sentence disparities among      de-
389  fendants with similar records who have been found guilty of sim-
390  ilar conduct." (See United States v. Booker, 543 U.S. at 261-62.)
391      In light of Rita v. United States, 551 U.S. at 351. "Instead

392  the trial court must undertake the §3553(a) balancing of factors
393  without any presumption in favor of advisory guidelines
394  sentence." (Also see Gall v. United States, 552 U.S. at 46-47;
395  Kimbrough v. United States 522 U.S. at 90-91.)

396       (R) Pre-trial motions that should have been made by counsel
397  (Mr. Fernandez) under Fed. R. Crim. P. Rule 12(b)(3). Consel's
398  failure to file the below pre-trial motions does satisfy
399  Strickland's prejudice prong; Mr. Fernandez's poor performance
400  effected the outcome of the proceedings by using trickery to
401  help the government secure a guilty plea. Counsel held Mr.
402  Kristich incommunicado in pre-trial detention for around 3
403  years: telling Mr. Kristich that the court had rescheduled his
404  trial. However, the court record shows that Mr. Fernandez had
405  filed motions to reschedule Mr. Kristich's trial without telling
406  him.

407       (A) Mr. Fernandez did not ensure that Mr. Kristich was
408  placed in the most favorable position possible for his defense
409  under the law. Mr. Fernandez failed to file a motion to
410  suppress evidence; the (L.N.C.) DNA evidence test and other
411  evidence, when Mr. Fernandez knew that motion to suppress
412  evidence was an appropriate pre-trial motion; defense and/or
413  objection in Mr. Kristich's case.

414       (B) Mr. Fernandez failed to file a motion to challenge this
415  court's "geographical jurisdiction" and/or lack of geographical
416  jurisdiction in this case when he knew that there was no
417  evidence in discovery; in Mr. Kristich's case, giving this
418  court's geographical jurisdiction. Mr. Fernandez knew that a

419  motion for lack of geographical jurisdiction was an appropriate

420  pretrial motion; defense and/or objection in Mr. Kristich's

421  case.

422       (C) Lack of specificity and/or failure to state an offense,

423  a jurisdictional issue in this case:  A "structural flaw" in the

424  charging papers; defective indictment and/or defective

425  information. (Please see United States v. Clark, 189 F. 3d 259

426  at 1999 U.S. App. Lexis 27941 (10th Cir. 1999).  Mr. Fernandez

427  failed to file a motion for a defective indictment and/or

428  defective information (the charging papers did not state an

429  offense under 30-9-11(G)(1). Mr. Fernandez knew that the above

430  pre-trial motion was an appropriate defense and/or objection in

431  Mr. Kristich's case.

432       (D) Mr. Fernandez failed to file a motion for defects in

433  the institution of the prosecution, for selective and vindictive

434  prosecution, including errors in the grand jury proceedings,

435  lack of evidence, false evidence, false statements, breach of

436  plea, with no defense and/or objection by counsel for Mr.

437  Kristich.

438       (E) The above defenses, objections, and requests that must

439  be raised pre-trial by Mr. Fernandez in order to ensure that Mr.

440  Kristich be placed in the most favorable position possible, and

441  would constitute everything a defense attorney would need to

442  have access to in order to intelligently represent his client.

443  Making the appropriate pre-trial motions or requests for

444  information is critical.  However, Mr. Fernandez failed to do so

445  and/or inform Mr. Kristich of his rights to do so pre-plea. (Due

446    process violations-see Santobello v. New York, 404 U.S. 257, and

447    Bitzer v. Superintendent, 820 Fed. Appx. 116 (3rd Cir. 2020).

448    "prosecution breached its obligation in violation of Santobello

449    v. New York, 404 U.S. 257 (1971)."  By making representations at

450    sentencing that were "inconsistent with what Bitzer 'reasonably

451    understood' to be terms of his plea agreement." (Please see Mr.

452    Kristich's sentencing transcripts.)  In Massaro v. United

453    States, 538 U.S. 500, 509, 123 S. Ct 1690, 155 L. Ed. 2d 714

454    (2003)  "The government contends that the claim of ineffective

455    assistance of appellate counsel for failure to raise the issue

456    of the waiver of consent to the indictment by trial counsel is

457    procedurally defaulted since it should have been raised on

458    direct appeal." (United States v. Ratigan, 351 F. 3d 957, 962

459    (9th Cir. 2003).  However, in "Massaro", the Supreme Court has

460    held: "failure to raise an ineffective assistance of counsel

461    claim on direct appeal does not bar the claim from being brought

462    in a later, appropriate proceeding under §2255."  Id at 506.

463    "Defendant's ineffective assistance of counsel claims are not

464    procedurally defaulted."

465        (S) Fed. R. Crim. P. Rule 11(c)(1)(c) says that all sentencing guidelines and policy

466    statements must be in the plea agreement.  The prosecution and this court breached the binding

467    plea agreement without objection by counsel for Mr. Kristich. (Due process violation.-please see

468    Santobello v. New York, 404 U.S. 257 and Bitzer v. Superintendent, 820 Fed. Appx. 116 (3rd Cir.

469    2020.)  "Prosecution breached its obligation in violation of Santobello v. New york, 404:  "By

470    making representation at sentencing that were inconsistent with what Bitzer 'reasonably

471    understood' to be the terms of his plea agreement." (Please see sentencing transcripts in this

472    case.)  Counsel for Mr. Kristich failed to appeal in light of the Sixth Amendment as shown in

Headnote(s) 1-6 held by the Supreme Court.

(T) The statute 2224(a) is ambiguous, and Mr. Kristich is claiming that the word "any" used throughout the statute is the ambiguous portion.

(U.) In light of House V. Bell, 547: all claims herein, Mr. Kristich is claiming "Actual Innocence" because counsel did not tell him or raise any and all possible defenses, evidence, laws, rules, const. amend's U.S.S.G's, statutes, et al.

## In Conclusion:

Wherefore, Mr. Kristich's federal procedural due process and equal protection of law privileges and immunities are guaranteed by the Constitutional Doctrine. The ineffective assistance of counsel has so prejudiced the defendant up to this timetable of the Fed. R. Crim. P's, possible defenses, evidence, laws, rules, Constitutional Amendments, U.S.S.G's statutes, et al that Mr. Kristich is concerned that the federal due process of law herein will be inconsistent (as has been) beyond a reasonable doubt that the due process of law violations herein will continue to morph if this court does not grant relief at this time.

_Orin Kristich_
name

_Orin _____
signature

_3-6-2023_
date

-19-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Orin Kristich                    )
    Petitioner,                  )   Case No. 22CV00569-WJ-KRS
                  )
      v.                         )
                  )
United States of America,        )   Declaration/F Form
    Respondent,                  )

1        COMES NOW, Orin Kristich, Petitioner, and hereby declares

2    under penalty of perjury under 28 U.S.C. § 1746 that the

3    corresponding document(s) are accurate and true, and that on this

4    _6_ day of _March_____, 2023, he has placed this document

5    and corresponding documents with United States Penitentiary

6    Tucson Mail Room staff his legal and signed documents, as per the

7    mailbox rule, thus making the documents filed with this Court.

8

Respectfully submitted this day _6_ of _March_____, 2023,

_____
Orin Kristich

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

SEP 26 2022

MITCHELL R. ELFERS
CLERK

22CV569-WJ

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

(1) The Due Process Clause of the United States Constitution under the Fifth Amendment.

(2) The Fifth Amendment of the United States Constitution: because the government's actions are not rationally related to a legitimate governmental objective or it is excessive in relation to that purpose.

(3) The Ex Post facto Clause of the United States.

(4) The First Amendment of the United States; under article 3.

(5) The Fourteenth Amendment of the United States Constitution.

(6) The Fourth Amendment of the United States Constitution.

(7) The Sixth Amendment of the United States Constitution.

(8) The Stkickland Test.

(9) The Jencks Act.

(10) 18 U.S.C. 3583 (d)(2).

(11) 18 U.S.C. 3583 (b)(2).

(12) 18 U.S.C. 3583 (a).

(13) 18 U.S.C. 3583 (d).

(14) 18 U.S.C. 3583 (d)(1).

(15) 18 U.S.C. 3553 (c).

(16) 18 U.S.C. 3553 (a)(6).

(17) 18 U.S.C. 3553 (b)(1).

(18) 18 U.S.C. 3553 (a)(1).

(19) 18 U.S.C. 3553 (a)(2)(A).

(20) 18 U.S.C. 3553 (a)(4)(A).

(21) 18 U.S.C. 2422 (a).

(22) 18 U.S.C. 3742



(23) Fed. R. Crim. P. 11 (c)(1)(C).

(24) Fed. R. Crim. P. 32.

## TABLE OF AUTHORITIES CITED

CASES:

1. Brady v. United States, 397 U.S. 742 (1970)

2. Henderson v. United States, 133 S. Ct. 1121 (2013)

3. Hill v. Lockhart, 474 U.S. at 59

4. Hughes v. United States, 138 S. Ct. 1765 (2018)

5. Kernan v. Cuero, 138 S. Ct. 724, 199 L. Ed. 2d 590 (2018)

6. Freeman v. United States, 131 S. Ct. 2685 (2011)

7. Lafler v. Cooper, 132 S. Ct. 1376 (2012)

8. Puckett v. United States, 556 U.S. 129, 137, 129 S. Ct. 1423

9. Santobello v. New York, 404 U.S. 257, 92 S. Ct. 469, 30 L. Ed 427 (1971)

10. Strickland v. Washington, 446 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)

11. United States v. Booker

12. United States v. Brunetti, 376 F.3d 93, 95 (2d Cir. 2004)

13. United States v. Doe, 810 F.3d 132, 160 (3d Cir. 2015)

14. United States v. Kissick, 69 F.3d 1048, 1054 (10th Cir. 1995)

15. United States v. McQueen, 108 F.3d 64, 66 (4th Cir. 1997)

STATUTES AND RULES:

1. 18 U.S.C. § 3583(a)
2. 18 U.S.C. § 3583(b)(2)
3. 18 U.S.C. § 3583(d)(2)
4. 18 U.S.C. § 3583(d)(1)
5. 18 U.S.C. § 3553(a)(1)
6. 18 U.S.C. § 3553 (a)(2)(A)
7. 18 U.S.C. § 3553(a)(4)(A)
8. 18 U.S.C. § 3553(a)(6)
9. 18 U.S.C. § 3553(b)(1)
10. 18 U.S.C. § 3553(c)
11. 18 U.S.C. § 2422(a)
12. Fed. R. Crim. P. 11(c)(1)(C)

P 1 of 2

13. Fed. R. Crim. P. Rule 32

OTHER:

1. The Declaration of Independence

REASONS FOR GRANTING THE PETITION

COUNSEL -- DEFICIENT PERFORMANCE -- PREJUDICIAL  Case No. 1:22-CV-00569-WJ-KRS
Headnote: 1
When an attorney's deficient performance costs a defendant an
appeal that the defendant would have otherwise pursued, prejudice
to the defendant should be presumed with no further showing from
the defendant of the merits of his underlying claims.
(Sotomayor, J., joined by Roberts, Ch. J., and Ginsburg, Breyer,
Kagan, and Kavanaugh, JJ.)

ASSISTANCE OF COUNSEL -- APPEAL WAIVER -- PREJUDICE
Headnote: 2
The presumption of prejudice recognized in Roe v. Flores-Ortega,
528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), applies
regardless of whether the defendant has signed an appeal waiver.
(Sotomayor, J., joined by Roberts, Ch. J., and Ginsburg, Breyer,
Kagan, and Kavanaugh, JJ.)

COUNSEL -- EFFECTIVE ASSISTANCE
Headnote: 3
The Sixth Amendment guarantees criminal defendants the right to
have the assistance of counsel for their defence.  The right to
counsel includes the right to the effective assistance of counsel.
(Sotomayor, J., joined by Roberts, Ch. J., and Ginsburg, Breyer,
Kagan, and Kavanaugh, JJ.)

COUNSEL -- INEFFECTIVE ASSISTANCE -- PREJUDICE -- APPEAL WAIVER
Headnote: 5
In certain Sixth Amendment contexts, prejudice to the defense is
presumed for purposes of the Strickland test.  For example, no
showing of prejudice is necessary if the accused is denied
counsel at a critical stage of his trial or left entirely without
the assistance of counsel on appeal.  Similarly, prejudice is
presumed if counsel entirely fails to subject the prosecution's
case to meaninful adversarial testing.  And prejudice is presumed
when counsel's constitutionally deficient performance deprives a
defendant of an appeal that he otherwise would have taken.  This
final presumption applies even when the defendant has signed an
appeal waiver.  (Sotomayor, J., joined by Roberts, Ch. J., and
Ginsburg, Breyer, Kagan, and Kavanaugh, JJ.)

COUNSEL -- INEFFECTIVE ASSISTANCE
Headnote: 4
Under the Strickland test, a defendant who claims ineffective
assistance of counsel must prove (1) that counsel's
representation fell below an objective standard of reasonableness,
and (2) that any such deficiency was prejudicial to the defense.
(Sotomayor, J., joined by Roberts, Ch. J., and Ginsburg, Breyer,
Kagan, and Kavanaugh, JJ.)

WAIVER OF RIGHT -- PLEA BARGAIN
Headnote: 6
As courts widely agree, a valid and enforceable appeal waiver
only precludes challenges that fall within its scope.  That an
appeal waiver does not bar claims outside its scope follows from



the fact that, although the analogy may not hold in all respects, plea bargains are essentially contracts. (Sotomayor, J., joined by Roberts, Ch. J., and Ginsburg, Breyer, Kagan, and Kavanaugh, JJ.)

WAIVER OF RIGHT
Headnote: 7
As with any type of contract, the language of appeal waivers can vary widely, with some waiver clauses leaving many types of claims unwaived. Additionally, even a waived appellate claim can still go forward if the prosecution forfeits or waives the waiver. Accordingly, a defendant who has signed an appeal waiver does not, in directing counsel to file a notice of appeal, necessarily undertake a quixotic or frivolous quest. (Sotomayor, J., joined by Roberts, Ch. J., and Ginsburg, Breyer, Kagan, and Kavanaugh, JJ.)

WAIVER OF RIGHT
Headnote: 8
All jurisdictions appear to treat at least some claims as unwaiveable. Most fundamentally, courts agree that defendants retain the right to challenge whether the waiver itself is valid and enforceable, for example, on the grounds that it was unknowing or involuntary. Consequently, while signing an appeal waiver means giving up some, many, or even most appellate claims, some claims nevertheless remain. (Sotomayor, J., joined by Roberts, Ch. J., and Ginsburg, Breyer, Kagan, and Kavanaugh, JJ.)

COUNSEL -- DISREGARD OF ACCUSED'S INSTRUCTIONS
Headnote: 9
A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. (Sotomayor, J., joined by Roberts, Ch. J., and Ginsburg, Breyer, Kagan, and Kavanaugh, JJ.)

PLEA BARGAIN -- NOTICE OF APPEAL -- PERFORMANCE OF COUNSEL
Headnote: 10
Simply filing a notice of appeal does not necessarily breach a plea agreement, given the possibility that the defendant will end up raising claims beyond the waiver's scope. And in any event, the bare decision whether to appeal is ultimately the defendant's, not counsel's, to make. Where a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions. (Sotomayor, J., joined by Roberts, Ch. J., and Ginsburg, Breyer, Kagan, and Kavanaugh, JJ.)

LACK OF MERIT -- APPOINTED COUNSEL -- WITHDRAWAL
Headnote: 11
After an appeal has been preserved and counsel has reviewed the case, counsel may always, in keeping with longstanding precedent,

advise the Court and request permission to withdraw, while filing
a brief referring to anything in the record that might arguably
support the appeal. The existence of this procedure reinforces that
a defendant appellate rights should not hinge on appointed counsel's
bare assertion that he or she is of the opinion that there is no
merit to the appeal.

COUNSEL- INEFFECTIVE ASSISTANCE- APPEAL
Headnote: 12
To succeed in an ineffective assistance claim in the appeal context,
a defendant need make only one showing; that, but for counsel's
deficient failure to consult with him about an appeal, he would
have timely appealed. So long as a defendant can show that counsel's
constitutionally deficient performance deprived him of an appeal
that he othwise would have taken, Court's are to presume prejudice
with no further showing from the defendanr of the merits of his
underlying claim. (Sotomayor, J., joined by Roberts, Ch. J., and
Ginsberg, Breyer, Kagan, and Kavanaugh, JJ.)

COUNSEL- DEFICIENT PERFORMANCE- PREJUDICE
Headnote: 13
Given that past precedences call for a presumption of prejudice
whenever the accused is denied counsel at a critical stage, it makes
even greater sense to presume prejudice when counsel's deficiency
forfeits an appellate preceeding altogether. After all, there is
no disciplined way to accord any presumption of reliability to
judicial proceedings that never took place. (Sotomator, J., joined
by Roberts, Ch. J., and Ginsberg, Breyer, Kagan, and Kavanaugh, JJ.)

COUNSEL- INEFFECTIVE ASSISTANCE- APPEAL
Headnote: 14
When counsel's contitutionally deficient performance deprives a
defendant of an appeal that he otherwise would have taken, the
defendant has made out a successful ineffective assistance of counsel
claim entitling him to an appeal, with no need for a further showing
of his claims' merit, regardless of whether the defendant has signed
an appeal waiver. (Sotomayor, J., joined by Roberts, Ch. J., and
Ginsberg, Breyer, Kagan, and Kavanaugh, JJ.)

COUNSEL- DEFICIENT PERFORMANCE- APPEAL
Headnote: 15
When counsel's deficient performance forfeits an appeal that a
defendant otherwise would have taken, the defendant gets a new
opportunity to appeal. (Sotomayer, J., joined by Roberts, Ch. J.,
and Ginsberg, Breyer, Kagan, and Kavanaugh, JJ.)

Case No. 1:22-CV-00569-WJ-KRS

Appendix

## QUESTION(S) PRESENTED

1.  Whether the Appellant's Appeal Counsel, Mr. Acton, can tell the court that the Appellant agrees to dismiss the Appeal without ever talking to the Appellant about the government's motion to enforce the plea waiver?

2.  Whether the Clerk of the Court for the (10th Circuit) Court of Appeals can refuse to file Mr. Kristich's misconduct complaint about Judge Johnson?

3.  Whether the (10th Circuit) Court of Appeals can refuse to answer Mr. Kristich's request for De Novo Review?

4.  Whether the plea waiver should be enforced when defense counsel lied to Mr. Kristich in order to get him to sign the plea agreement?

5.  Whether the plea waiver should be enforced when defense counsel did not tell Mr. Kristich everything the government was saying about the plea agreement?

6.  Whether the plea waiver should be enforced when the Court went outside the admission of facts?

7.  Whether the plea waiver should be enforced when the Court did not reach the correct guideline range at sentencing?

8.  Whether the government can add guidelines, sentencing factors, policy statements, or laws to the plea agreement at sentencing after the plea was accepted by the Court?  (When the plea was an 11(C)(1)(c) plea agreement).

9.  Whether the Judge can impose guidelines based on a statement the defendant/appellant never made?

10  Whether the district court can let the treatment provider or probation officer determine the defendant's sentence as part of supervised release?

11. Whether the Supreme Court should grant Mr. Kristich a new trial?

---

**UNITED STATES OF AMERICA, Plaintiff - Appellee, v. ORIN KRISTICH, Defendant - Appellant.**
**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**
**2022 U.S. App. LEXIS 152**
**No. 21-2126**
**January 4, 2022, Filed**

---

**Notice:**

**PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.**

**Editorial Information: Subsequent History**

Opinion withdrawn by, On rehearing at United States v. Kristich, 2022 U.S. App. LEXIS 9921, 2022 WL 1100411 (10th Cir., Apr. 13, 2022)Substituted opinion at, On rehearing at United States v. Kristich, 2022 U.S. App. LEXIS 9920 (10th Cir. N.M., Apr. 13, 2022)US Supreme Court certiorari denied by Kristich, Orin v. United States, 2022 U.S. LEXIS 2570 (U.S., May 31, 2022)

**Editorial Information: Prior History**

{2022 U.S. App. LEXIS 1}(D.C. No. 1:18-CR-02635-WJ-1). (D. N.M.).

**Counsel**          For UNITED STATES OF AMERICA, Plaintiff - Appellee: Tiffany L. Walters, Office of the United States Attorney District of New Mexico, Albuquerque, NM.
          For ORIN KRISTICH, Defendant - Appellant: Gregory Acton, Acton Law Office, Albuquerque, NM.
          ORIN KRISTICH, Defendant - Appellant, Pro se, Chaparral, NM.
**Judges:** Before TYMKOVICH, Chief Judge, EID and CARSON, Circuit Judges.

**Opinion**

**ORDER AND JUDGMENT***

This matter is before the court on the government's motion to enforce the appeal waiver in Orin Kristich's plea agreement pursuant to *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam). Exercising jurisdiction under 28 U.S.C. § 1291, we grant the motion and dismiss the appeal.

Kristich pleaded guilty to coercion and enticement, in violation of 18 U.S.C. § 2422(a). Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties stipulated that a sentence between five to twelve years' imprisonment would be appropriate. As part of the plea agreement, Kristich waived his right to appeal his conviction and any sentence within the stipulated range. Both by signing the written plea agreement and in his responses to the court's questions at the change of plea hearing, Kristich acknowledged that he was entering his plea knowingly and voluntarily and that he understood its consequences,{2022 U.S. App. LEXIS 2} including the possible sentences and appeal waiver. The court accepted the plea, including the parties' sentencing agreement, and sentenced Kristich to 120 months in prison. Despite receiving a sentence within the stipulated range, he filed a notice of appeal.

10CASES                                    1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

In ruling on a motion to enforce, we consider whether the appeal falls within the scope of the waiver, whether the waiver was knowing and voluntary, and whether enforcing it would result in a miscarriage of justice. *Hahn*, 359 F.3d at 1325.

In response to the government's motion to enforce, **Kristich**, through counsel, acknowledged that his appeal waiver is enforceable under the standards set out in *Hahn*. Accordingly, we grant the government's motion to enforce the appeal waiver and dismiss the appeal. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005) (noting that court need not address uncontested *Hahn* factor).

Entered for the Court

Per Curiam

### Footnotes

*

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

10CASES                                    2

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

UNITED STATES OF AMERICA, Plaintiff - Appellee, v. ORIN KRISTICH, Defendant - Appellant.
UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
2022 U.S. App. LEXIS 9920
No. 21-2126
April 13, 2022, Filed

Notice:

**PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.**

**Editorial Information: Prior History**

{2022 U.S. App. LEXIS 1}(D.C. No. 1:18-CR-02635-WJ-1). (D. N.M.).United States v. Kristich, 2022 U.S. App. LEXIS 152, 2022 WL 30174 (10th Cir. N.M., Jan. 4, 2022)

**Counsel**                          For UNITED STATES OF AMERICA, Plaintiff - Appellee: Tiffany L. Walters, Office of the United States Attorney, Albuquerque, NM.
                          For ORIN KRISTICH, Defendant - Appellant: Gregory Acton, Acton Law Office, Albuquerque, NM.
                          ORIN KRISTICH, Defendant - Appellant, Pro se, Chaparral, NM.
**Judges:** Before TYMKOVICH, Chief Judge, EID and CARSON, Circuit Judges.

**CASE SUMMARY**In a case where parties entered into a plea agreement, defendant's contention that his appeal waiver was unenforceable was rejected as he did not raise argument in district court. Government's motion to enforce the appellate waiver in plea agreement was granted because defendant could not meet first requirement of the plain error test.

**OVERVIEW:** HOLDINGS: [1]-In a case where parties entered into a plea agreement, and defendant acknowledged that he was entering his guilty plea, to coercion and enticement, knowingly and voluntarily and that he understood its consequences, defendant's contention that his appeal waiver was unenforceable was rejected as he did not raise the argument in the district court. Accordingly, the Government's motion to enforce the appellate waiver in the plea agreement was granted because defendant could not meet the first requirement of the plain error test. Based on review of the written plea agreement and transcript of the change-of-plea hearing, the Hahn factors have been met, and defendant did not contend otherwise.

**OUTCOME:** Motion to enforce the appellate waiver in the plea agreement granted. Appeal dismissed.

**LexisNexis Headnotes**

*Criminal Law & Procedure > Guilty Pleas > Breach of Plea Agreements*
*Criminal Law & Procedure > Guilty Pleas > Enforcement of Plea Agreements*
*Criminal Law & Procedure > Guilty Pleas > Appeals*

An appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement. General principles of contract law define the content and scope of the government's

10CASES                                     1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

obligations under a plea agreement. The appellate courts thus look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea. The appellate courts evaluate the record as a whole to ascertain whether the government complied with its promise.

***Criminal Law & Procedure > Appeals > Standards of Review > Plain Error > Definitions***
***Criminal Law & Procedure > Appeals > Standards of Review > Plain Error > Burdens of Proof***

The plain-error test requires the defendant to demonstrate (1) error, (2) that is plain, (3) that affects his substantial rights, and, if those first three prongs are met, (4) that the error seriously affects the fairness, integrity or public reputation of the judicial proceedings.

***Criminal Law & Procedure > Appeals > Reviewability > Waiver > Validity & Exceptions***

In the context of ruling on Government's motion to enforce, the appellate courts consider whether the appeal falls within the scope of the waiver, whether the waiver was knowing and voluntary, and whether enforcing it would result in a miscarriage of justice.

<strong>Opinion</strong>

**ORDER AND JUDGMENT***

This matter is before the court on the government's motion to enforce the appeal waiver in Orin Kristich's plea agreement pursuant to *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam). Exercising jurisdiction under 28 U.S.C. § 1291, we grant the motion and dismiss the appeal.

<u>Kristich</u> pleaded guilty to coercion and enticement, in violation of 18 U.S.C. § 2422(a). Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to recommend a sentence of between five and twelve years' imprisonment followed by fifteen years' supervised release. The plea agreement provided a detailed explanation of the possible penalties and the agreed-upon sentencing range, which <u>Kristich</u> acknowledged was not binding on the district court. As part of the plea agreement, <u>Kristich</u> waived his right to appeal his conviction and any sentence within the stipulated range. Both by signing the written plea agreement{2022 U.S. App. LEXIS 2} and in his responses to the court's questions at the change-of-plea hearing, <u>Kristich</u> acknowledged that he was entering his plea knowingly and voluntarily and that he understood its consequences, including the possible sentences and appeal waiver.

The district court accepted the plea, including the parties' sentencing agreement. It then sentenced <u>Kristich</u> to 120 months in prison followed by a fifteen-year period of supervised release. As one of the conditions of supervised release, the district court ordered <u>Kristich</u> to "submit to clinical polygraph examinations, if recommended in the Sex Offense-Specific Assessment." Mot. to Enforce, Attach. 3 at 38. Despite receiving a sentence within the agreed-upon range, <u>Kristich</u> filed a notice of appeal.

In his pro se response to the government's motion to enforce, <u>Kristich</u> argues that the appeal waiver is unenforceable because the government breached the plea agreement and because he received ineffective assistance of counsel. Specifically, he argues that under the facts he stipulated to as part of the plea agreement, he did not admit that he knew the victim's age at the time of the offense, but

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the prosecutor made arguments at sentencing that{2022 U.S. App. LEXIS 3} there was evidence suggesting that he aware that she was a minor. He claims the prosecutor's sentencing arguments breached the plea agreement and resulted in the court adopting a less favorable guidelines range based on sentencing factors not contemplated in the plea agreement. And he claims plea counsel was ineffective for not handling this sentencing issue appropriately. In addition to his arguments about his prison sentence, **Kristich** argues that the government should be prohibited from using certain information (such as his refusal to make incriminating statements during a polygraph) in deciding whether to revoke his probation while he is on supervised release.

"[A]n appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement." *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008). "General principles of contract law define the content and scope of the government's obligations under a plea agreement." *United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007), *overruled on other grounds by Puckett v. United States*, 556 U.S. 129, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009). "We thus look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea." *Id.* "We evaluate the record as a whole to{2022 U.S. App. LEXIS 4} ascertain whether the government complied with its promise." *Id.*

**Kristich** did not raise his breach-of-plea-agreement argument in district court. We thus review it for plain error. *See Puckett*, 556 U.S. at 133-34; *United States v. Bullcoming*, 579 F.3d 1200, 1205 (10th Cir. 2009). The plain-error test requires the defendant to demonstrate (1) error, (2) that is plain, (3) that affects his substantial rights, and, if those first three prongs are met, (4) that the error seriously affects the fairness, integrity or public reputation of the judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732-36, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). **Kristich** cannot meet the first requirement, so we need not address the other three.

Contrary to Kristich's contention, the prosecutor's arguments at the sentencing hearing did not breach the plea agreement. The agreement did not require the government to recommend a particular guidelines range or to limit its factual arguments to facts **Kristich** admitted. To the contrary, the agreement provides that "[r]egardless of any other provision in this agreement, the [government] reserves the right to provide . . . the Court [with] any information [it] believes may be helpful to the Court, including . . . information about . . . any relevant conduct under [the guidelines]." Mot. to Enforce, Attach. 1 at 3. Moreover, nothing in{2022 U.S. App. LEXIS 5} the plea agreement precluded the court from considering unadmitted facts in determining the applicable guidelines range.

Having rejected Kristich's contention that his appeal waiver is unenforceable based on the government's alleged breach of the plea agreement, we must rule on the government's motion to enforce. In doing so, we consider whether the appeal falls within the scope of the waiver, whether the waiver was knowing and voluntary, and whether enforcing it would result in a miscarriage of justice. *See Hahn*, 359 F.3d at 1325. Based on our review of the written plea agreement and transcript of the change-of-plea hearing, we conclude the *Hahn* factors have been met, and **Kristich** does not contend otherwise. In particular, we note that his ineffective-assistance-of-counsel argument falls within the scope of the appeal waiver, which provides that any ineffective-assistance claim may be raised in a 28 U.S.C. §§ 2241 or 2255 petition, not on direct appeal. To the extent **Kristich** challenges the supervised-release condition that he submit to a polygraph examination if the sex offender assessment recommends one, that too falls within the scope of the appeal waiver. *See United States v. Sandoval*, 477 F.3d 1204, 1207 (10th Cir. 2007) (holding that "[s]upervised-release conditions are part of the sentence,"{2022 U.S. App. LEXIS 6} and the reference in the plea agreement to 18 U.S.C. § 3742-the statutory basis for sentence appeals-"makes clear that the waiver

10CASES                                    3

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

encompasses all appellate challenges to the sentence other than those falling within [an] explicit exception"). And his argument about what information the government may consider if it someday seeks to revoke his probation does not affect the enforceability of the appeal waiver.

Accordingly, we grant the government's motion to enforce the appellate waiver in the plea agreement, and we dismiss this appeal.

Entered for the Court

Per Curiam

### Footnotes

\*

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Orin Kristich, Petitioner v. United States.**
**SUPREME COURT OF THE UNITED STATES**
**142 S. Ct. 2762; 2022 U.S. LEXIS 2570; 90 U.S.L.W. 3358**
**No. 21-7594.**
**May 31, 2022, Decided**

**Editorial Information: Prior History**

United States v. Kristich, 2022 U.S. App. LEXIS 152, 2022 WL 30174 (10th Cir. N.M., Jan. 4, 2022)
**Judges: {2022 U.S. LEXIS 1}**Roberts, Thomas, Breyer, Alito, Sotomayor, Kagan, Gorsuch, Kavanaugh, Barrett.

**Opinion**

Petition for writ of certiorari to the United States Court of Appeals for the Tenth Circuit denied.

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A

Rough Draft letter

Alejandro,

This is orin kristich, it is now July (22), 2021. When I talked with you on the phone on the 20th about the issue's I have with the presentence report, after finding out that rule 32 (3) (A) say's the court may accept any undisputed portion of the presentence report as a finding of fact. We then talked about a few of the thing's I would like you to talk about at my sentencing hearing. I must say I did not do this to irritate you, but you did seem a bit annoyed at what I was telling you. That is why I am sending this letter to you, ~~xxxxxxxxxx~~ ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

Moreover, I want you to know that I understand that you must follow the ~~x~~ censorship clause or it will be your ass. ~~xxxxxxxx~~ However, I can say thing you can not. I would not ask you to call the probation officer a peice of Shit in the court room. But we both know that his report show's he is a lying peice of Shit. He even changed what the law say's for an unknown reason. I have to ask ~~you~~ do you think he is ~~xxx~~ ok or should we question his competency to submit such a report to the court. The sentencing Guidline's he is using talk about involved conduct on my part. So he is saying that the diffrent part's of the four different stories are fact's. However, he say's that they are a bit inconsistent, they can't be both. They are either fact's that show my involved conduct or they are inconsistent storie's. He also say's that I threatened to kill Jane Doe on multiple →

Exhibit A  P1

Exhibit A-2

occasion's, but the police report's talk about one occasion not multiple occasion's. Now, they could play the 911 call to say I threatened her, but that is not more then one occasion. He also say's that the police Dispach reported that the male was screaming, the female was crying and it sounded like she was being slapped. However, he leaves out the fact that she did not have any mark's or bruise's to back up this story. At this point Alejandro I have to tell you that, I am even thinking of fair and just reason's for requesting the withdrawal of my plea. This is why I asked you to come see me at least over the video screen. Please understand that it has always been in the back of my mind to question thing's like the mitochondrial deoxyribonucleic acid DNA test that was done in my case, I now found out by reading Wharton's Criminal Evidence, that errors can occur when there are limited amount's of DNA, this limit's the amount of test information and increases the chance of misinterpretation of the test. Case review's of the mtDNA test also show a wide range, in the quality of testing result's that include contamination, inexperience in interperting mixtures and differences in how a test is conducted. Please See State v Tester, 2009 VT 3, 968 A. 2d 895, 909 (Vt 2009) The two I think apply to my case are the limited amount of DNA in my case; there were only four cell's and they need at the least five. As well there were alot of

Exhibit A-2 mixture's in my case. ████████████████

Exhibit 1
Case 1:22-cv-00569-WJ-KRS   Document 7   Filed 09/26/2022   Page 4 of 5
Case 1:22-cv-00569-WJ-KRS   Document 17   Filed 03/09/23   Page 67 of 84



**ACTON LAW OFFICE, PC**
Gregory M. Acton
Attorney at Law

December 9, 2021

Orin Kristich
Reg. No. 99811-051
Otero County Prison Facility
10 McGregor Range Road
Chaparral, NM 88081

Re:  Tenth Circuit Appeal No. 21-2136; *United States v. Kristich*

Dear Mr. Kristich:

Thank you for your recent letter.  I found it very helpful in understanding your reasons for
appealing your case.  From you letter, I understand that you wish to raise issues of both the
procedural and substantive reasonableness of your sentence. Procedural reasonableness
covers a whole host of errors, such as not properly calculating the Guidelines or using the
wrong Guidelines, not sufficiently explaining the sentence, relying upon illegitimate or
unreliable evidence at sentencing, etc.

You also claim ineffective assistance of counsel, which is something that you bring in the
district court after this appeal, under 28 U.S.C. § 2255.  Should the Tenth Circuit Court of
Appeals deny this present appeal, you will have ninety days from the date from the filing of
the decision to file a request with the U.S. Supreme Court to hear your appeal (called a
"petition for writ of certiorari"). SUP. CT. R. 13.  Once that ninety days expires (unless you
file the petition), the clock starts ticking and you will have one year from that date in which
to file your ineffective assistance motion with the district court. *Clay v. United States*, 537 U.S.
522 (2003).  If the district court denies that motion, you will be able to appeal to that
decision separately.

You are also challenging your conditions of release, mostly based upon constitutional issues
but also upon reasonableness.

You state in your letter, on pages 2-3, "Judge Johnson said he considered these kinds of cases
before imposing a split sentence in my case of 25 years. (The max in my case is 23 years.)"
That would indeed be an egregious error.  However, the statutory maximum under 18 U.S.C.

3811 Atrisco Dr. NW, Suite A
Albuquerque, New Mexico 87120
Telephone: (505) 338-0453   E-mail: gregoryacton@gmail.com   Telecopier: (505) 839-7212

Exhibit B-1

# CIMARRON CORRECTIONAL FACILITY
## MAIL LOG HISTORY

**NAME:** KRISTICH, ORIN
**AGENCY #:** 99811051
**PERM #:** 5493640
**HOUSING:** A/N/244/B

| MAIL DATE | MAIL FROM/TO | ADDRESS | CITY | STATE | ZIP | MAIL TYPE |
|---|---|---|---|---|---|---|
| 12/29/2021 | GREGORY ACTON LAW OFFICE | 3811 ATRISCO DR NW STE A OR B ALBUQUERQUE, NM 87120 | | | | OUTGOING-LEGAL |

**TOTAL ENTRIES: 2**

MAIL LOG HISTORY

MAIL LOG HISTORY

Exhibit B

Report: Call Details - KRISTICH, ORIN
Starting: 07/20/2021 12:00  Ending: 07/20/2021 18:00

Customize columns...

| Id | Inmate | Destination | Fid | Group | Phone | Date | Termination | Minutes | Area |
|---|---|---|---|---|---|---|---|---|---|
| 2932684942 | KRISTICH, ORIN | 505-346-2489 | 9993 | Dorm 300 B | 300 B ph 1 | 07/20/2021 13:44 | | 9 | Local |
| 2932845662 | KRISTICH, ORIN | 505-346-2489 | 9993 | Dorm 300 B | 300 B ph 1 | 07/20/2021 13:34 | | 10 | Local |

Exhibit B

Page 1 of 1

Exhibit C

Read admission of false firearm fthe

120 months.

ten years

Exhibit C

Exhibit D

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

UNITED STATES OF AMERICA,　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　)　　　CRIMINAL NO. 18-02635 WJ
　　　　　　　　　　　　　　　　)
　　.vs.　　　　　　　　　　　　)　　　18 U.S.C. § 2422(a): Coercion and Enticement.
　　　　　　　　　　　　　　　　)
**ORIN KRISTICH,**　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　)
　　　　　　　　　　　　　　　　)

COPY

## I N F O R M A T I O N

The United States Attorney charges:

From on or about March 5, 2018, and continuing to on or about March 8, 2018, in Bernalillo County, in the District of New Mexico, and elsewhere, the defendant, **ORIN KRISTICH,** knowingly persuaded, induced, enticed and coerced Jane Doe to travel in interstate and foreign commerce to engage in any sexual activity for which any person could be charged with a criminal offense.

In violation of 18 U.S.C. § 2422(a).

JOHN C. ANDERSON
United States Attorney

SARAH J. MEASE
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103-0607
(505) 346-7274

Exhibit D

Exhibit D-1

 **CoreCivic**

## COVID-19 TEST NOTIFICATION FORM

PATIENT NAME _Kristich, Orin_

ID # _99811051_                    Date _8/6/2020_

**Your recent COVID-19 test was:**

✗ Positive

     -If you are NOT having symptoms such as a cough, shortness of breath, fever, chills, shaking, muscle pain, headache, sore throat, or new loss of taste or smell, then no further action is necessary. You will receive further instructions from an officer regarding any further required protective measures.

     - If you have one or more of the above symptoms, please alert the nurse or custody officer IMMEDIATELY.

     - If you develop one or more of the above symptoms, please alert a nurse or custody officer IMMEDIATELY.

_____Negative

                       Keith W. Ivens, MD

                       **Staff signature**

                                        May 2020 CoreCivic

Exhibit D-1

Exhibit D-2



| | |
|---|---|
| **Scientific Laboratory Division** | **CAP:** 8564801 |
| **1101 Camino de Salud, N.E.** | **NPI:** 1548488414 |
| **Albuquerque, NM 87102** | |
| **(505) 383-9000** | |

**LIMS Report #:**   741963                              **Patient:**   ORIN KRISTICH

                                                              2000 CIBOLA LOOP
                                                              Milan, NM, 87021

**Provider:**  **CIBOLA COUNTY CORRECTION CENTER**    **Submitter Code:**    CCCC2000
                **DON DOUGLAS**                        **Patient Id:**        99811051
                **2000 CIBOLA LOOP**                   **Date of Birth:**     5/23/1980
                **Milan, NM  87021**                   **Social Security #:**          **Gender:**  Male
                                                       **Clinician Name:**    DON DOUGLAS
                                                       **User Code:**         51000

| | | | |
|---|---|---|---|
| **Sample #:** | 2020239110 | **Date Collected:** | 7/20/2020  13:37 |
| **Source:** | Not Given | **Date Received:** | 7/24/2020  15:12 |
| **Specimen Condition:** | Cold | **Date Reported:** | 7/26/2020 |
| **Specimen Note:** | | | |

| Test | Result | Date Approved | Technician |
|---|---|---|---|
| TaqPath COVID-19 Combo RT-PCR | **Positive** | 7/25/2020 | LS |

**REFERENCE (NORMAL) RANGE:** Not Detected

**INTERPRETIVE CRITERIA:**
**Positive:** Positive SARS-CoV-2.
**Inconclusive:** SARS-CoV-2 Inconclusive.
**Not Detected:** SARS-CoV-2 Not Detected
**Invalid** Specimen quality control failed.
**INTERPRETIVE DATA:**
Healthcare provider data sheet is available at <https://www.fda.gov/media/136111/download>.
Patient data sheet is available at <https://www.fda.gov/media/136114/download>.
False negative results may arise from improper specimen collection or degradation of the viral RNA during
shipment/storage.
The TaqPath RT-PCR COVID-19 kit cannot rule out diseases caused by other bacterial or viral pathogens and should not be used as the sole basis for
treatment or other patient management decisions.
Variant sequences may occur in new strains of the coronavirus.  These may not be detected by this assay even though the targeted gene is present.
This assay includes a control reaction that detects inhibition of the real-time PCR reaction, but it does not assess the quality of specimen collection.  If the
quality of specimen collection is suspected, please collect another specimen.

*Keith Ivens*
7/27/20
**Keith W. Ivens, MD**

**Final**

Exhibit D-2

Exhibit E

      f.     restitution as may be ordered by the Court.

    5.     The parties recognize that the federal sentencing guidelines are advisory, and that the Court is required to consider them in determining the sentence it imposes.

    6.     The parties are aware that the Court will decide whether to accept or reject this plea agreement.  The Court may defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report.   Pursuant to <u>Federal Rule of Criminal Procedure 11(c)(5)</u>; if the Court rejects this plea agreement, the defendant shall have the right to withdraw the defendant's plea of guilty.

    7.     Regardless of any other provision in this agreement, the United States reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any information the United States believes may be helpful to the Court, including but not limited to information about the recommendations contained in this agreement and any relevant conduct under U.S.S.G. § 1B1.3.

## <u>ELEMENTS OF THE OFFENSE</u>

    8.     If this matter proceeded to trial, the Defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for violations of the charges listed below:

<u>18 U.S.C. § 2422(a), that being Coercion and Enticement:</u>

    *First*:     The Defendant knowingly persuaded, enticed, or coerced any individual to travel in interstate or foreign commerce; and

    *Second*:     The purpose of the travel was for the individual to engage in prostitution, or any sexual activity for which any person can be charged with a criminal offense.

3

Exhibit E

Exhibit E-1

## DEFENDANT'S ADMISSION OF FACTS

9.      By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty.   I recognize and accept responsibility for my criminal conduct.   Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the information that increase the statutory minimum or maximum penalties.   I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

> **From on or about March 5, 2018, and continuing to on or about March 8, 2018, I, Orin Kristich, induced Jane Doe, who I have learned was 13 years old at the time, to travel in interstate commerce, with the intention that Jane Doe and I engage in sexual activity, for which I could have be charged with a criminal offense. Specifically, I induced Jane Doe to leave the District of Colorado and travel to the District of New Mexico. My intentions for traveling across state lines included an intention to engage in sexual activity with Jane Doe at my home in New Mexico. Sexual intercourse with Jane Doe is punishable under New Mexico state law under N.M.S.A. § 30-9-11(G)(1), which is criminal sexual penetration in the fourth degree. Sexual intercourse with Jane Doe was a criminal offense because Jane Doe was aged 13 to 16 years old and I am at least four years older than her.**

10.      By signing this agreement, the Defendant admits that there is a factual basis for each element of the crime(s) to which the Defendant is pleading guilty.   The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

## RECOMMENDATIONS

11.    . The United States and the Defendant recommend as follows:

4

Exhibit E-1

Exhibit F

# DECLARATION OF ORIN KRISTICH

I, Orin Kristich, do hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

1. I am currently detained at the Cibola County Correctional Center ("CCCC"), in Milan, New Mexico. I have been detained at CCCC since August 2018.

2. My case number is 18-cr-2635 WJ. I am awaiting sentencing in this case.

3. I suffer from asthma and since having covid-19 in July 2020, I suffer from shortness of breath and have experienced blackouts.

4. In late July, 2020, I was ill with covid-19. Although I recovered, since then, I have been suffering from shortness of breath and on Thanksgiving day I passed out and fell to the floor.

5. I was taken to medical and told that I would have a chest X-ray done but one has not been done. I was also told that I would be taken back to medical to be placed under observation but instead I was sent back to my pod.

6. When I had covid-19 I was extremely ill. Yet, I was not taken to a hospital. In fact, I was not even informed by CCCC staff that I had COVID-19. Instead, I was told it was just a cold. My attorney had to notify me that I had tested positive for covid-19.

7. Staff at CCCC no longer do temperature checks or mass covid-19 testing.

8. CCCC provides inmates one small bar of soap per week. If soap runs out before the week ends, the inmate will go without soap.

9. The pods lack cleaning supplies and disinfecting supplies.

10. In April, we received one cloth mask. These masks are not N95 masks.

11. I am afraid my lungs have been damaged due to covid-19 and I fear reinfection.

Exhibit F

Exhibit G

Declaration for Persons in Detention and Detention Staff
COVID-19

Chris Beyrer, MD, MPH
Professor of Epidemiology
Johns Hopkins Bloomberg School of Public Health
Baltimore, MD

I, Chris Beyrer, declare as follows:

1. I am a professor of Epidemiology, International Health, and Medicine at the Johns Hopkins Bloomberg School of Public Health, where I regularly teach courses in the epidemiology of infectious diseases. This coming semester, I am teaching a course on emerging infections. I am a member of the National Academy of Medicine, a former President of the International AIDS Society, and a past winner of the Lowell E. Bellin Award for Excellence in Preventive Medicine and Community Health.  I have been active in infectious diseases Epidemiology since completing my training in Preventive Medicine and Public Health at Johns Hopkins in 1992.

2. I am currently actively at work on the COVID-19 pandemic in the United States. Among other activities I am the Director of the Center for Public Health and Human Rights at Johns Hopkins, which is active in disease prevention and health promotion among vulnerable populations, including prisoners and detainees, in the US, Africa, Asia, and Latin America.

### The nature of COVID-19

3. The SARS-nCoV-2 virus, and the human infection it causes, COVID-19 disease, is a global pandemic and has been termed a global health emergency by the WHO. Cases first began appearing sometime between December 1, 2019 and December 31, 2019 in Hubei Province, China. Most of these cases were associated with a wet seafood market in Wuhan City.

4. On January 7, 2020, the virus was isolated. The virus was analyzed and discovered to be a coronavirus closely related to the SARS coronavirus which caused the 2002-2003 SARS epidemic.

5. COVID-19 is a serious disease. The overall case fatality rate has been estimated to range from 0.3 to 3.5%, which is 5-35 times the fatality associated with influenza infection. COVID-19 is characterized by a flu-like illness. While more than 80% of cases are self-limited and generally mild, overall some 20% of cases will have more severe disease requiring medical intervention and support.

6. The case fatality rate varies significantly depending on the presence of certain demographic and health factors. The case fatality rate is higher in men, and varies significantly with advancing age, rising after age 50, and above 5% (1 in 20 cases) for those with pre-existing medical conditions including cardio-vascular disease, respiratory disease, diabetes, and immune compromise.

7. Among patients who have more serious disease, some 30% will progress to Acute Respiratory Distress Syndrome (ARDS) which has a 30% mortality rate overall, higher in those with other health conditions.  Some 13% of these patients will require mechanical

Exhibit A

Exhibit G

Exhibit G-1

ventilation, which is why intensive care beds and ventilators have been in insufficient supply in Italy, Iran, and parts of China.

8. COVID-19 is widespread. Since it first appeared in Hubei Province, China, in late 2019, outbreaks have subsequently occurred in more than 100 countries and all continents, heavily affected countries include Italy, Spain, Iran, South Korea, and increasingly, the US. As of today, March 16th, 2020, there have been 178,508 confirmed human cases globally, 7,055 known deaths, and some 78,000 persons have recovered from the infection. The pandemic has been termed a global health emergency by the WHO. It is not contained and cases are growing exponentially.

9. SARS-nCoV-2 is now known to be fully adapted to human to human spread. This is almost certainly a new human infection, which also means that there is no pre-existing or "herd" immunity, allowing for very rapid chains of transmission once the virus is circulating in communities.

10. The U.S. CDC estimates that the reproduction rate of the virus, the $R_0$, is 2.4-3.8, meaning that each newly infected person is estimated to infect on average 3 additional persons. This is highly infectious and only the great influenza pandemic of 1918 (the Spanish Flu as it was then known) is thought to have higher infectivity. This again, is likely a function of all human populations currently being highly susceptible. The attack rate given an exposure is also high, estimated at 20-30% depending on community conditions, but may be as high as 80% in some settings and populations. The incubation period is thought to be 2-14 days, which is why isolation is generally limited to 14 days.

### The risks of COVID-19 in detention facilities

11. COVID-19 poses a serious risk to inmates and workers in detention facilities. Detention Facilities, including jails, prisons, and other closed settings, have long been known to be associated with high transmission probabilities for infectious diseases, including tuberculosis, multi-drug resistant tuberculosis, MRSA (methicillin resistant staph aureus), and viral hepatitis.

12. The severe epidemic of Tuberculosis in prisons in Central Asia and Eastern Europe was demonstrated to increase community rates of Tuberculosis in multiple states in that region, underscoring the risks prison outbreaks can lead to for the communities from which inmates derive.

13. Infections that are transmitted through droplets, like influenza and SARS-nCoV-2 virus, are particularly difficult to control in detention facilities, as 6-foot distancing and proper decontamination of surfaces is virtually impossible. For example, several deaths were reported in the US in immigration detention facilities associated with ARDS following influenza A, including a 16-year old male immigrant child who died of untreated ARDS in custody in May, 2019.

14. A number of features of these facilities can heighten risks for exposure, acquisition, transmission, and clinical complications of these infectious diseases. These include physical/mechanical risks such as overcrowding, population density in close confinement, insufficient ventilation, shared toilet, shower, and eating environments and limits on hygiene and personal protective equipment such as masks and gloves in some facilities.

15. Additionally, the high rate of turnover and population mixing of staff and detainees increases likelihoods of exposure. This has led to prison outbreaks of COVID-19 in multiple detention facilities in China, associated with introduction into facilities by staff.

Exhibit G-1

Exhibit G-2

16. In addition to the nature of the prison environment, prison and jail populations are also at additional risk, due to high rates of chronic health conditions, substance use, mental health issues, and, particularly in prisons, aging and chronically ill populations who may be vulnerable to more severe illnesses after infection, and to death.

17. While every effort should be made to reduce exposure in detention facilities, this may be extremely difficult to achieve and sustain.  It is therefore an urgent priority in this time of national public health emergency to reduce the number of persons in detention as quickly as possible.

18. Pre-trial detention should be considered only in genuine cases of security concerns. Persons held for non-payment of fees and fines, or because of insufficient funds to pay bail, should be prioritized for release.  Immigrants awaiting decisions on their removal cases who are not a flight risk can be monitored in the community and should be released from immigration detention centers. Older inmates and those with chronic conditions predisposing to severe COVID-19 disease (heart disease, lung disease, diabetes, immune-compromise) should be considered for release.

19. Given the experience in China as well as the literature on infectious diseases in jail, an outbreak of COVID-19 among the U.S. jail and prison population is likely. Releasing as many inmates as possible is important to protect the health of inmates, the health of correctional facility staff, the health of health care workers at jails and other detention facilities, and the health of the community as a whole.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of March, 2020.

_____
Professor Chris Beyrer[1]

_____
[1] These views are mine alone; I do not speak for Johns Hopkins University or any department therein.

Exhibit G-2

# ARTICLE III. JUDICIAL POWER.

Sec. 1. Supreme Court and inferior courts—Judges and compensation.
Sec. 2.
Sec. 3.

## Sec. 1. Supreme Court and inferior courts—Judges and compensation.

The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.



"Seperation of powers doctrine"

USCONST                                    1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## § 20911. Relevant definitions, including Amie Zyla expansion of sex offender definition and expanded inclusion of child predators

In this title the following definitions apply:

(1) Sex offender. The term "sex offender" means an individual who was convicted of a sex offense.

(2) Tier I sex offender. The term "tier I sex offender" means a sex offender other than a tier II or tier III sex offender.

(3) Tier II sex offender. The term "tier II sex offender" means a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and—

(A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:

(i) sex trafficking (as described in section 1591 of title 18, United States Code [18 USCS § 1591]);

(ii) coercion and enticement (as described in section 2422(b) of title 18, United States Code [18 USCS § 2422(b)]);

(iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a)[)] of title 18, United States Code [18 USCS § 2423(a)][)]);

(iv) abusive sexual contact (as described in section 2244 of title 18, United States Code [18 USCS § 2244]);

(B) involves—

(i) use of a minor in a sexual performance;

(ii) solicitation of a minor to practice prostitution; or

(iii) production or distribution of child pornography; or

(C) occurs after the offender becomes a tier I sex offender.

USCS                                    1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

---

**UNITED STATES OF AMERICA, Plaintiff, vs. LEOTHA WILLIAMS, Defendant.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO**
**2020 U.S. Dist. LEXIS 124956**
**No. CR. 17-2556 JB**
**July 16, 2020, Filed**

---

**Editorial Information: Prior History**

United States v. Baker, 349 F. Supp. 3d 1113, 2018 U.S. Dist. LEXIS 173951 (D.N.M., Oct. 9, 2018)

**Counsel**          {2020 U.S. Dist. LEXIS 1}For Plaintiff: John C. Anderson, United States Attorney, Letitia Carroll Simms, Assistant U.S. Attorney, United States Attorney's Office, Albuquerque, New Mexico.

**Judges:** James O. Browning, UNITED STATES DISTRICT JUDGE.

Opinion

**Opinion by:**          James O. Browning

Opinion

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Leotha Williams' First Set of Objections to the Presentence Report, filed March 16, 2020 (Doc. 198)("First Objections"); and (ii) Defendant Leotha Williams' Second Set of Objections to the Presentence Report, filed March 16, 2020 (Doc. 199)("Second Objections"). The primary issues are: (i) whether the Court should amend the Presentence Investigation Report ¶ 11, at 8, filed January 6, 2020 (Doc. 184)("PSR"), to omit its characterization of Defendant Leotha Williams' co-Defendant, Adonis Baker, as the most active sex trafficker in Albuquerque, New Mexico; (ii) whether the Court should amend the PSR's ¶ 14, at 9, to omit its statement that Baker placed advertisements for trafficked women in Texas, Arizona, Nevada, Illinois, Tennessee, Alabama, Missouri, Kansas, and Virginia; (iii) whether the Court{2020 U.S. Dist. LEXIS 2} should amend the PSR's ¶ 14, at 9, to omit its reference to Baker's use of a firearm in forcing Jane Doe 2, Williams' victim, to get into a car with Baker and Williams; (iv) whether the Court should amend the PSR's ¶ 17, at 9, to omit its description of Baker's abuse of Jane Doe; (v) whether the Court should amend the PSR's ¶ 18, at 9, to omit its characterization that girls and women in Williams and his co-Defendants' employment were not free to leave such that Jane Doe 2 had to escape from Williams and his co-Defendants; (vi) whether the Court should amend the PSR ¶ 23, at 10, to omit its characterization that Williams conspired and engaged in an extensive human trafficking organization; (vii) whether the Court can rely on Baker's sale of Jane Doe 7, a sex worker, to Cornelius Galloway in March, 2016, as conduct relevant to Williams' sentence; (viii) whether the Court should amend the PSR's ¶ 46, at 13, to omit instances of Baker's sexual abuse of his victims, because there is no evidence that Williams was aware of this abuse; (ix) whether the Court should amend the PSR's ¶ 47, at 13, because there is insufficient evidence that Baker held one of victim's children hostage to intimidate{2020 U.S. Dist. LEXIS 3} the victim to continue working for Baker; (x) whether the Court should amend the PSR's ¶ 50, at 14, because there is insufficient evidence that Baker and Williams took several victims to Colorado Springs,

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Colorado, to engage in sex work; (xi) whether the Court should apply the United States Sentencing Commission Guidelines Manual ("U.S.S.G." or "Guidelines") § 2G1.1, rather than U.S.S.G. § **2A3.1**, to Williams' offense, because Williams did not coerce or intimidate the sex workers that Baker employed, but rather persuaded them to continue working; (xii) if U.S.S.G. § **2A3.1** applies, whether Williams abducted Jane Doe 2 such that a 4-level enhancement for abduction under U.S.S.G. § **2A3.1**(b)(5) applies; (xiii) whether Williams' offense involved physical restraint of Jane Doe 2 such that U.S.S.G. § 3A1.3's 2-level enhancement applies; and (xiv) whether Williams' role was sufficiently minimal that he should receive a 4-level adjustment pursuant to U.S.S.G. § 3B1.2(a). Williams' primary argument for several of these objections is that he was unaware of and not present for much of Baker's abuse. See First Objections at 2-5. The Court concludes that many -- but not all -- of Baker's acts to whose inclusion in the PSR Williams objects are foreseeably within the scope and in furtherance of Williams' jointly undertaken{2020 U.S. Dist. LEXIS 4} criminal activity. See U.S.S.G. § 1B1.3. Accordingly, the Court concludes that: (i) Plaintiff United States of America has not proven by a preponderance of the evidence that Baker was Albuquerque's most active sex trafficker, so the Court will amend the PSR's ¶ 11, at 8, to omit that characterization, unless the United States presents evidence at the sentencing hearing that supports the PSR's characterization of Baker; (ii) although Baker placed sex-worker advertisements in other states, advertisements beyond New Mexico and Colorado were not within the scope of jointly undertaken conduct in which Williams agreed to assist, and so the Court will amend the PSR's ¶ 14, at 9; (iii) Baker's use of a firearm in directing Jane Doe 2 to get into a vehicle with Baker and Williams was foreseeably in furtherance and in the scope of jointly undertaken criminal activity, so the Court will not amend the PSR's ¶ 14, at 9; (iv) the relevance of Baker's abuse does not depend on Williams' knowledge, because that abuse was central to Williams and his co-Defendants' criminal enterprise, so the Court will not amend the PSR's ¶ 17, at 9; (v) the United States has proven by a preponderance of the evidence that sex workers{2020 U.S. Dist. LEXIS 5} in Williams' employ were not free to quit or leave, so the Court will not amend the PSR's ¶ 18, at 10; (vi) the United States has not proven by a preponderance of the evidence that Williams conspired and engaged in an extensive trafficking organization, so the Court will not amend the PSR's ¶ 23, at 10; (vii) that Baker sold Jane Doe 7 to another trafficker is illustrative of Williams' offense and so is relevant under 18 U.S.C. § 3661; (viii) Baker's sexual abuse of sex workers in the Defendants' employ is relevant to Williams' offense under 18 U.S.C. § 3661, so the Court will not amend the PSR's ¶ 46, at 12; (ix) there is sufficient evidence that Baker held one of his victim's children hostage to coerce the victim's subservience, and this incident is relevant under 18 U.S.C. § 3661, so the Court will not amend the PSR's ¶ 50, at 14; (x) there is sufficient evidence that Baker took several victims to Colorado Springs to engage in sex work, and this conduct is relevant to Williams' offense under 18 U.S.C. § 3661, so the Court will not amend the PSR's ¶ 50, at 14; (xi) U.S.S.G. § **2A3.1** properly applies to Williams' offense, because, although he pled guilty to violating 18 U.S.C. § **2422(a)**, his offense conduct involved coercive behavior that § **2A3.1** cross references; (xii) § **2A3.1**(b)(5)'s 4-level enhancement{2020 U.S. Dist. LEXIS 6} applies, because Williams aided and abetted Baker when he forcibly abducted Jane Doe 2, transported her to another state, and forced Jane Doe 2 to engage in sex work; (xiii) Baker forcibly restrained Jane Doe 2, and Williams aided and abetted that restraint, such that § 3A1.3's 2-level enhancement applies; and (xiv) Williams' role in the sex-trafficking enterprise was not supervisory or managerial, but also was not minimal, so a 2-level reduction in Williams' offense level is appropriate. The Court also concludes that the PSR's application of a 4-level enhancement under § **2A3.1**(b)(1) is proper and does not constitute double counting, but that the PSR improperly applies a 2-level enhancement under § **2A3.1**(b)(4), because Williams' victim did not sustain serious bodily injury. Accordingly, the Court sustains in part and overrules in part the First Objections, and sustains in part and overrules in part the Second Objections.

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

<99811-051<>
Orin Kristich
Jesus Loves you !
PO BOX 24550,
Tucson, AZ 85734
United States

Legal
Mail



CERTIFIED MAIL

RECEIVED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 09 2023

MITCHELL R. ELFERS
CLERK

<99811-051<>
Federal District Court Nm
333 Lomas BLVD NW
Albuquerque, NM 87102
United States

Legal
Mail









