**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ORIN KRISTICH,

     Petitioner,

v.

                                 Civ. No. 22-cv-569 WJ-KRS
                                 Cr. No. 18-cr-02635 WJ-KRS

UNITED STATES OF AMERICA,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

    **THIS MATTER** is before the Court on Orin Kristich's ("Petitioner") Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Amended 2255 Petition"), filed March 9, 2023, (CV Doc. 17),[2] as well as on Petitioner's Motion for an Evidentiary Hearing, (CV Doc. 40), Motion for Clarification, (CV Doc. 58), Motion to Extend Review of New Evidence, (CV Doc. 61), Motion to Appoint Counsel, (CV Doc. 62), and Motion to Compel Counsel to Produce Client File, (CV Doc. 66).[3]

    After reviewing the Amended 2255 Petition, response, and Petitioner's subsequent filings, as well as the underlying files and records of the case, I can hold an evidentiary hearing to "determine the issues and make findings of fact . . ." if I have any question as to whether Petitioner

---

[1] Chief District Judge William P. Johnson referred this matter to me on April 20, 2023, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. (CV Doc. 19).

[2] Unless otherwise noted, all referenced documents are from Petitioner's criminal case, USDC NM CR No. 18-02635. Some of the referenced documents, but not all, were also filed in Petitioner's civil case, USDC NM CIV 22-00569. Citations to documents in the underlying criminal case will be "CR Doc. ___," and to documents in the instant civil matter will be "CV Doc. ___."

[3] Pursuant to this Court's August 27, 2024, Order, Petitioner's memorandum, (CV Doc. 50), shall be construed as an untimely reply to the extent it bears on the Amended 2255 Petition. *See* (CV Doc. 59). On June 3, 2025, Petitioner filed "Notice of Additional Facts", (CV Doc. 65), presumably in advance of his Amended 2255 Motion. The Notice of Additional Facts includes defendants' responses to interrogatories filed in Petitioner's separate civil lawsuit, 23-cv-544-R, in the Western District of Oklahoma. The Court has reviewed (CV Doc. 65) in its entirety and finds it bears no weight on Petitioner's Amended 2255 Motion as the document pertains to Petitioner's current incarceration in federal prison and are wholly unrelated to his claims of ineffective assistance of counsel.

is entitled to relief. 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . ."). When reviewing the record in this case, including Petitioner's Amended 2255 Petition, Petitioner's Memorandum in Support of Motion to Vacate,[4] and subsequent filings, and the Respondent United States of America's ("Government") response, as well as all the documents in the underlying criminal case, I am mindful that I must liberally construe a *pro se* litigant's pleadings and hold them to a less stringent standard than pleadings drafted by an attorney. *Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir. 1991). I have done so here and have determined that no such evidentiary hearing is warranted, as the Amended 2255 Petition, files, and records in this matter conclusively show that Petitioner is not entitled to relief. I am comfortable making the proposed findings and recommended disposition without taking additional testimony or evidence. *See Machibroda v. United States*, 368 U.S. 487, 495 (1962) (where the record for a § 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required); *see also In re Lindsey*, 582 F.3d 1173, 1175-76 (10th Cir. 2009) (holding that an evidentiary hearing is not needed if "the district court has concluded that the record does not entitle the prisoner to relief; either the prison has failed even to allege facts on which relief could be predicated, or the records conclusively contradicts the prisoner's allegations"). The Court accordingly recommends that Petitioner's Motion for an Evidentiary Hearing, (CV Doc. 40), be **denied**.

　　As discussed below, I recommend that the Court **deny** Petitioner's Amended 2255 Petition, **deny as moot** Petitioner's additional pending motions, and that this case be **dismissed with prejudice**. Furthermore, I recommend that the Court **deny** a certificate of appealability and enter

---

[4] Petitioner's memorandum is 15-pages, including citations to exhibits that were not attached to the filing. While the Court will consider memorandum in addressing the merits of Petitioner's Amended 2255 Petition, it will not consider any new arguments raised for the first time in reply. *See* (Doc. 50); *see also Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016).

judgment accordingly.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

   A.    **CRIMINAL CASE**

On August 10, 2018, a Criminal Complaint was filed alleging Petitioner violated 18 U.S.C. § 2423(a), Transportation of a minor with intent to engage in criminal sexual activity. (CR Doc. 1).[5] Pursuant to an August 14, 2018, Indictment returned by a Federal Grand Jury in the District of New Mexico, Petitioner was charged with Transportation with Intent to Engage in Criminal Sexual Activity in violation of 18 U.S.C. § 2423(a) and (e). (CR Docs. 6, 7). Sections 2423(a) and 2423(e) are Class-C felonies, for which the penalties include terms of incarceration of "not less than 10 years or for life," and not more than 30 years, respectively. *See* 18 U.S.C. § 2423(a) and (e).

Following his indictment, the Court issued an Arrest Warrant for Petitioner on August 15, 2018. (CR Doc. 8). That same day, Petitioner was arrested and an initial appearance was held before the Honorable Karen B. Molzen.[6] (CR Doc. 9). The Court appointed Federal Public Defender Alejandro Fernandez ("Mr. Fernandez") to represent Petitioner. (CR Docs. 9, 11). Petitioner waived the reading of the Indictment and entered a plea of "not guilty" to all counts in the Indictment. (CR Doc. 14). Petitioner was thereafter remanded to custody of the United States Marshal's Services. (CR Docs. 14, 15).

On September 21, 2018, Petitioner filed his first motion to continue trial and extend time to file pretrial motions. (CR Doc. 20). In the motion, Petitioner noted that initial discovery was

---

[5] For purposes of this PFRD, the details of the criminal investigation are contained within the Criminal Complaint, (CR Doc. 1), and the Presentence Investigation Report, (CR Doc. 57).
[6] On August 14, 2018, this case was reassigned to Chief District Judge William P. Johnson.

delivered to his counsel on August 24, 2018,[7] and Mr. Fernandez needed further time to assess the discovery—which included "a host of documents and several hours of tape-recorded interviews." *Id.* at 1–2. Petitioner's counsel further claimed that additional time was necessary to evaluate Petitioner's mental health status, including whether a mental health evaluation was pertinent to Petitioner's defense, or, alternatively, negotiate a pre-trial resolution with the government. *Id.* at 2. Mr. Fernandez also represented that he advised Petitioner of his right to a speedy trial, and Petitioner understood the need for and agreed to a continuance. *Id.* On September 24, 2018, Chief District Judge William P. Johnson granted the motion. (CR Doc. 21).

On January 28, 2019, Petitioner filed his second motion to continue trial. (CR Doc. 23). In the motion, Petitioner informed the Court that his mental competence was confirmed via a medical evaluation. *Id.* at 1–2. Petitioner's investigator and legal counsel further investigated the charges to determine "additional sources of information including witnesses, surveillance cameras, court filings, and discovery materials." *Id.* at 2. Mr. Fernandez thus requested an additional 90-days to complete his investigation and discuss legal options with Petitioner. *Id.* Again, the second motion stated Petitioner was aware of his right to a speedy trial, understood the need for a continuance and agreed with the continuance. *Id.* at 2–3. On February 1, 2019, the Court granted Petitioner's second motion to continue trial. (CR Doc. 25).

On April 25, 2019, Petitioner filed his third motion to continue trial. (CR Doc. 26). Therein, Petitioner's counsel informed the Court that, although a forensic psychologist deemed Petitioner competent for trial, concerns remained of Petitioner's mental state at the time of the alleged crime. *Id.* at 1–2. Hence, a second forensic interview and assessment were pertinent to Petitioner's legal strategy. *Id.* at 2. Moreover, the subsequent results could warrant further legal research, discovery,

---

[7] On August 16, 2018, the Court entered a discovery Order. CR Doc. 16. The United States produced discovery on August 24, 2018, December 3, 2018, June 11, 2019, August 5, 2019, and August 26, 2019. *See* CR Docs. 31, 36.

and motion practice. *Id.* Petitioner once more understood his rights and agreed with the motion. *Id.* at 3. On May 2, 2019, the Court granted Petitioner's third motion for a trial continuance. (CR Doc. 28).

On July 24, 2019, Petitioner filed his fourth motion to continue trial. (CR Doc. 29). In the motion, Mr. Fernandez explained that the forensic psychologist who previously screened Petitioner performed additional work "to address case specific concerns" as to Petitioner's mental state. *Id.* at 2. The findings of the forensic interview were discussed with Petitioner—in particular, no mental state defense was applicable to Petitioner. *Id.* Nevertheless, Mr. Fernandez represented that additional time was necessary to negotiate a possible resolution with the government, or, alternatively prepare for trial. *Id.* Defense counsel stated Petitioner again understood his rights, but agreed with a trial continuance. *Id.* On July 25, 2019, the Court granted the motion. (CR Doc. 30).

On October 21, 2019, Petitioner moved for a fifth trial continuance following the Court's Sealed Order granting a second protective order for discovery relating to the alleged minor victim. *See* (CR Docs. 32, 33). In the motion, Mr. Fernandez stated that the parties were "working towards resolving discovery issues . . . while also discussing the possibility" of a plea deal. (CR Doc. 33 at 1–2). Defense counsel further represented that Petitioner was aware of his right to a speedy trial, but agreed with and understood the need for a continuance. *Id.* at 2. On October 29, 2019, the Court granted the fifth motion for a trial continuance. (CR Doc. 35).

On October 31, 2019, the Government filed a third motion for protective order in relation to the alleged victim's Sexual Assault Nurse Examiner ("SANE") examination. (CR Doc. 36). The Court entered a Sealed Third Protective Order on November 1, 2019. (CR Doc. 37).

On January 27, 2020, Petitioner filed his sixth motion to continue trial. (CR Doc. 39). Mr. Fernandez represented that he and the Government were continuing to resolve discovery issues in

anticipation of trial while addressing a potential plea deal. *Id.* at 1–2. Simultaneously, the government's "voluminous discovery and its spaced out disclosure . . . required multiple visits to" Petitioner and further investigation. *Id.* at 2. As a result, Mr. Fernandez was consistently counseling Petitioner "regarding his option and make a final decision about which direction [Petitioner] wishes to go in resolving the case." *Id.* Petitioner was advised of and agreed to the continuance. *Id.* at 2. The Court granted the motion on February 3, 2020. (CR Doc. 40).

On March 5, 2020, Petitioner filed a motion to dismiss the indictment on the bases of prosecutorial misconduct and violation of civil rights. (CR Doc. 41). On March 9, 2020, the Court filed an Order Striking Defendant's Filing on the grounds that the Court did not permit hybrid representation. (CR Doc. 42).

On April 28, 2020, the Court *sua sponte* continued trial pursuant to the Administrative Order 20-MC-0004-17, filed April 27, 2020, in response to the Coronavirus Outbreak. (CR Doc. 45). The May 4, 2020, trial was vacated and reset for July 6, 2020. *Id.* at 1. All pre-trial deadlines were continued in accordance with the new trial date. *Id.* at 1–2.

On June 10, 2020, the Court again continued trial in accordance with Administrative Order 20-MC-0004-19, filed May 19, 2020, due to the Coronavirus Outbreak. (CR Doc. 46). All pre-trial deadlines were also continued in alignment with the new trial date. *See id.*

On July 27, 2020, Petitioner filed his seventh motion for a continuance. (CR Doc. 47). In the motion, Mr. Fernandez stated the parties were close to a plea agreement. *Id.* at 1. However, in light of the ongoing Coronavirus Outbreak, guilty pleas were being deferred and the parties believed Petitioner was "not in a position to require an immediate plea setting." *Id.* at 1–2. Petitioner was advised of his right to a speedy trial, the reason for a continuance, and agreed with the motion. *Id.* at 2. On July 28, 2020, the Court granted the motion. (CR Doc. 48).

Thereafter, the Court set a change of plea hearing for October 23, 2020. (CR Doc. 49). On October 23, 2020, the Government filed an Information stating that, "[f]rom on or about March 5, 2018, and continuing to on or about March 8, 2018," Petitioner "knowingly persuaded, induced, enticed, and coerced Jane Doe to travel in interstate and foreign commerce to engage in any sexual activity" in violation of 18 U.S.C. § 2422(a). (CR Doc. 50).

On October 23, 2020, Petitioner filed a signed Waiver of Indictment. (CR Doc. 52). Therein, Petitioner stated he understood he was accused of one or more offenses punishable by imprisonment for more than one year. *Id.* He further attested that he was advised of rights and nature of the charges against him in open court. *Id.* After being advised as such, Petitioner waived his right to prosecution by indictment and consented to prosecution by information. *Id.*

### B.    PLEA AGREEMENT AND HEARING

On or about September 29, 2020, Petitioner signed a Rule 11(c)(1)(C) Plea Agreement ("Plea Agreement"). (CR Doc. 54). The Plea Agreement stated Petitioner acknowledged and waived his right to be prosecuted by the Indictment, which asserted violations of 18 U.S.C. § 2423(a) and (e). *Id.* at 1, ¶ 2. Rather, Petitioner agreed to plead guilty to the information charging a violation of 18 U.S.C. § 2422(a). *Id.* at 1, ¶ 3. Section 2422(a) imposes a maximum sentence of 20 years. 18 U.S.C. § 2422(a). Petitioner also affirmed in the Plea Agreement that he reviewed all aspects of his case with Mr. Fernandez and was fully satisfied with Mr. Fernandez's legal representation. *Id.* at 1, ¶ 1. Petitioner pled guilty to the following admitted facts:

> From on or about March 5, 2018, and continuing to on or about March 8, 2018, I, Orin Kristich, induced Jane Doe, who I have learned was 13 years old at the time, to travel in interstate commerce, with the intention that Jane Doe and I engage in sexual activity, for which I could have be [*sic*] charged with a criminal offense. Specifically, I induced Jane Doe to leave the District of Colorado and travel to the District of New Mexico. My intentions for traveling across state lines included an intention to engage in sexual activity with Jane Doe at my home in New Mexico. Sexual intercourse with Jane Doe is punishable under New Mexico state law under

> N.M.S.A. § 30-9-11(G)(1), which is criminal sexual penetration in the fourth degree. Sexual intercourse with Jane Doe was a criminal offense because Jane Doe was aged 13 to 16 years old and I am at least four years older than her.

*Id.* at 4, ¶ 9. The Plea Agreement further provided that Petitioner entered it both knowingly and voluntarily:

> The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats or promises (other than the promises set forth in this agreement and any addenda). The Defendant also represents that the Defendant is pleading guilty because the Defendant is in fact guilty.

*Id.* at 10, ¶ 23. The Petitioner also affirmed directly above his signature that:

> I have carefully discussed every part of this agreement with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement.

*Id.* at 12, .

On October 23, 2020, Petitioner's change of plea hearing was conducted before Magistrate Judge Laura Fashing.[8] (CR Doc. 55). Mr. Fernandez appeared on behalf of Petitioner. (CR Doc. 84 (hereinafter "Plea Hr'g Tr."), 2:5–11). Petitioner appeared via Zoom video. *Id.* at 2:5–11, 2:12–3:23; *see also* (CR Doc. 53). After being sworn in, Petitioner affirmed he was not under the influence of any alcohol, drugs, or medication. Plea Hr'g Tr., 8:11–25, 9:17–19. Petitioner and Mr. Fernandez stated Petitioner was not suffering from any physical or mental illness or medical problem that prohibited or impeded Petitioner from voluntarily participating and understanding the plea agreement and hearing. *Id.* at 9:20–11:2. Mr. Fernandez specifically stated,

> I have spoken to Mr. Kristich on many occasions, and from his answers today and his appearance, he seems of sound mind. And that although I'm very aware of his fairly extensive history, and why he's on medication, he seems well and he is communicating in a manner that makes me comfortable that he's aware of what's going on and he's doing everything voluntarily.

---

[8] Petitioner consented to plea before a United States Magistrate Judge. *See* (CR Docs. 51, 55, 84 at 7:15–14).

*Id.* at 109:20–11:2.

Magistrate Judge Fashing then guided Petitioner through the difference between an information and an indictment and what rights Petitioner waived by consenting to prosecution by information. *Id.* at 11:16–13:3. Petitioner affirmed he knowingly and voluntarily waived his right to be prosecuted by an indictment. *Id.* at 13:4–13:10.

Next, the Court addressed additional rights Petitioner waived with the Plea Agreement. *Id.* at 13:7–15:8. Specifically, the right to a jury trial; court-appointed counsel at trial; confront the witnesses; present evidence; compel witnesses to testify; remain silent; as well as the Government's burden to establish Petitioner was guilty beyond a reasonable doubt. *Id.* at 13:7–14:13. Petitioner affirmed he understood and voluntarily waived those rights. *Id.* at 13:7–14:17.

Petitioner then affirmed that he had received a copy of the Information and understood the charge to which he was pleading guilty. *Id.* at 15:17–16:6; 17:1–7. The Court next directed Petitioner to the two elements the Government would have to prove beyond a reasonable doubt if he had proceeded to trial. *Id.* at 17:8–23. Petitioner confirmed he was aware of and understood the potential penalties associated with the crime, including up to 20 years of incarceration, a fine up to $250,000, a term of supervised release of 5 years or up to lifetime supervision, a $100 mandatory special penalty assessment, and a possible additional assessment of $5,000 pursuant to the Justice for Victims of Trafficking Act. *Id.* at 17:24–18:15.

Magistrate Judge Fashing next addressed the sentencing guidelines, possible departures, and other factors that could apply to Petitioner. *Id.* at 18:16–19:9. Petitioner affirmed that counsel discussed the sentencing guidelines and how they would potentially apply to Petitioner's case. *Id.* When the Court inquired as to whether Mr. Fernandez had discussed with Petitioner that the sentencing guidelines were not binding, Petitioner responded that he was unsure because he

thought the Plea Agreement included a downward departure. *Id.* at 19:10–16. In light of Petitioner's confusion, Magistrate Judge Fashing explained that he and the Government agreed to a range of 5 (five) to 12 years of imprisonment. *Id.* at 19:18–23. The sentencing judge could not go below 5 (five) years or above 12 years if the sentencing judge accepted the Plea Agreement. *Id.* at 19:24–20:2. The sentencing guidelines for the particular crime, however, could go as high as 14 years. *Id.* at 20:3–13. Hence, the sentencing guidelines were not binding and the sentencing judge could go below the guidelines—a downward departure—if the sentencing judge accepted the Plea Agreement. *Id.* Petitioner affirmed that he understood the aforementioned terms of the sentencing guidelines and potential departure thereto. *Id.* at 18:16–20:13.

Next, Magistrate Judge Fashing inquired as to whether Petitioner read the Plea Agreement prior to signing it. *Id.* at 20:20–21:10. The following plea colloquy occurred:

| | |
|---|---|
| COURT: | . . . First I am going to show you the last page of this Plea Agreement; that should pop up on your screen in front of you. This is the last page of your Plea Agreement, and on – and above your printed name on this page is a signature. Is that your signature? |
| DEFENDANT: | Yes, ma'am. |
| COURT: | All right. Now, before you signed this Plea Agreement, did you read the entire Plea Agreement? |
| DEFENDANT: | Yes, I did. |
| COURT: | And did you go over the Plea Agreement with your attorney, and did he explain every part of this Plea Agreement, and answer all of your questions to your satisfaction before you signed the Plea Agreement? |
| DEFENDANT: | Yes, we talked about it several times. |
| COURT: | Okay. Do you understand each and every term of your Plea Agreement? |
| DEFENDANT: | Yes, I do. |

*Id.* at 21:2–19.

Magistrate Judge Fashing then readdressed the Plea Agreement's sentencing terms with Petitioner. *Id.* at 21:20–22:3 She also further explained that the sentencing judge either had to accept or reject the Plea Agreement in its entirety. *Id.* at 22:4–7. And, should the sentencing judge reject the Plea Agreement, then Petitioner could either withdraw his guilty plea and go to trial, negotiate a different Plea Agreement, or go straight to sentencing. *Id.* at 22:8–14. Petitioner affirmed he understood the aforesaid. *Id.* at 21:20–22:16. Petitioner also acknowledged that he could withdraw his plea if the Government failed to withdraw the Indictment following sentencing or if the sentencing judge rejected the Plea Agreement. *Id.* at 22:17–23:1.

Petitioner and Magistrate Judge Fashing next discussed Mr. Fernandez's representation. Specifically, whether Mr. Fernandez: (1) discussed the facts and circumstances with Petitioner; (2) addressed what the Government had to prove beyond a reasonable doubt for a jury to render a guilty verdict; (3) explained the Government's evidence and discovery; (4) clarified possible defenses; (5) spent enough time with Petitioner to discuss his case; and (6) answered all of Petitioner's questions to Petitioner's satisfaction. *Id.* at 23:2–23:23; *see also* (CR Doc. 55). Petitioner responded affirmatively to all six inquiries. *Id.* Petitioner also testified that he was satisfied with Mr. Fernandez's advice and representation. *Id.* at 23:24–24:1.

Petitioner likewise acknowledged his waiver of his right to appeal his conviction and the sentence imposed in conformity with the Plea Agreement. *Id.* at 24:2–18. Similarly, Petitioner testified that he was giving up his right to appeal any sentence imposed below or within the guideline range of supervised release. *Id.* at 24:19–23. Lastly, Petitioner acknowledged that he waived his right to collaterally attack his conviction and sentence, but that he could still raise the issue of ineffective assistance of counsel. *Id.* at 24:24–25:4.

The Magistrate Judge then walked Petitioner through "Defendant's Admission of Facts." *Id.* at 25:5–26:5. Petitioner stated he reviewed the Admission of Facts with his counsel and he had an opportunity to correct any inaccurate or untrue facts. *Id.* at 25:11–23. Petitioner admitted that all facts stated within the Admission of Facts were accurate and that the Government could prove said facts beyond a reasonable doubt if he proceeded to trial. *Id.* at 25:24–26:5.

Petitioner then went on to admit that he was in fact guilty of the charge against him. *Id.* at 26:6–9. He further attested that no one threatened him or made promises to make him plead guilty. *Id.* at 26:13–20. He was, in fact, pleading guilty on his own volition. *Id.* at 26:13–27:1. Mr. Fernandez also stated that he thought pleading guilty was in Petitioner's best interest. *Id.* at 26:10–12. The Court then accepted Petitioner's guilty plea. *Id.* at 27:2–29:12.

## C.    THE PRESENTENCE REPORT

On December 24, 2020, the Probation Office disclosed the Presentence Investigation Report ("PSIR"). (CR. Doc. 57 at 24, ¶ 89). The PSIR noted that, had Petitioner proceeded to trial and been convicted on all counts of the information, his offense level would have been 43, absent any adjustments. *Id.* With an offense level of 43 and a criminal history category II, Petitioner's guideline imprisonment range would have been life. *Id.* The statutorily maximum sentence under § 2242(a), however, is 240 months (or 20 years). *Id.* As the PSIR demonstrated, Petitioner significantly reduced his exposure to incarceration by entering into the Plea Agreement. *Id.*

## D.    THE SENTENCING FILINGS AND HEARING

On January 11, 2021, Petitioner, through Mr. Fernandez, filed Sealed Objections to the PSIR. (CR Doc. 59). In the Sealed Objections, Petitioner objected to the application of any guideline enhancements that reflected the use of force or threats in the commission of the offense. *Id.* at 3–5. Further, he argued the incorrect guideline was applied causing the PSIR to arrive at the

wrong base offense level and the cross-refence did not apply. *Id.* Rather, the base level should have been 24, utilizing U.S.S.G. § 2G1.3, to include the two-level increase pursuant to U.S.S.G. § 2G1.3(b)(4). *Id.* at 4–5. Ultimately, counsel contended a total of six (6) offense levels were incorrectly applied. *Id.*

He also objected to the PSIR on the grounds that he did not engage in a pattern of activity under U.S.S.G. § 4B1.5(b)(1). *Id.* at 5. Petitioner specifically denied engaging in "at least two separate" prohibited sexual acts with the minor victim. *Id.* Petitioner also objected to several factual disputes in the PSIR, and maintained he was unaware of the minor victim's true age at the time of the incident. *Id.* at 2, 5–6. In support, he directed the Court to the victim's inconsistent statements regarding her age in the PSIR. *Id.* at 2, 5.

On August 2, 2021, Chief District Judge Johnson held Petitioner's sentencing hearing. (CR Doc. 91 (hereinafter "Sntc'g Tr."), 1). Petitioner was represented by Mr. Fernandez. *Id.* At the outset, the Court sustained Mr. Fernandez's objection to the pattern enhancement. *Id.* at 5:15–20. The Government conceded there were inconsistencies with the minor victim's statements, but DNA testing determined that at least one instance of sexual contact occurred between the victim and Petitioner. *Id.* at 5:4–14. Given the Government's concerns pertaining to the victim's inconsistencies the Government agreed to recommend a sentencing below the guideline range per the Plea Agreement. *Id.* at 4:11–5:14.

Mr. Fernandez then objected to the cross-reference of force and threatened force against the victim at U.S.S.G. § 2G1.3. He stated Petitioner "entered into the plea agreement, which envisioned a plea to very specific conduct . . . . [Petitioner] didn't know her age at the time, and there's quite a bit of evidence that would support that." *Id.* at 5:15–6:25. In support of his objection, Mr. Fernandez directed the Court to evidence submitted as an addendum to Government's

Sentencing Memorandum. *Id.* at 7:1–11:10. That evidence included the victim's journal entries to support his contention that Petitioner did not use force, the victim was free to leave, any sexual encounter was consensual, Petitioner was unaware of the victim's true age at that time, and the victim was suffering from her own "mental turmoil" unrelated to her encounters with Petitioner. *Id.* Mr. Fernandez also elaborated on Petitioner's "mistaken belief" regarding the victim's age. *Id.* at 11:11–13:13. Nevertheless, Mr. Fernandez admitted that "mistake of age is not a complete defense. . . . it can be posited as an affirmative defense, but it doesn't become an element of the crime. So he's still guilty of it." *Id.* at 13:1–4.

The Government rebutted that the cross-reference was applicable because there was a disparity of influence between Petitioner and the minor victim. *Id.* at 13:15–14:14. Further, even if Petitioner did not know the victim's age initially, there were multiple circumstances that placed Petitioner on notice that the victim was a minor. *Id.* at 14:15–23. The Government also argued that the totality of the circumstances demonstrated a disparity of influence. *Id.* at 14:24–16:19. Nevertheless, the recommended sentence was below the guidelines. *Id.* at 16:20–23.

Mr. Fernandez countered that the totality of the circumstances supported not applying the cross-reference. *Id.* at 16:24–19:13.

The Court ultimately accepted the Plea Agreement, with a range of five (5) to 12 years. *Id.* at 19:14–20. The Court further found that the Probation Officer appropriately used a base offense level of § 2A3.1 and a cross-reference to § 2G1.3(c)(3) because of Petitioner's use of force and threatened force against a minor victim. *Id.* at 19:22–20:25.[9] The Court noted a disparity of

---

[9] The Court notes a discrepancy in the Sentencing Hearing Transcript, (CR Doc. 91). The sentencing judge stated he needed to determine if probation "properly applied the cross-reference accounting for [Petitioner's] use of force under Sentencing Guideline Section 2G1.3" Sntc'g Tr. at 19:22–20:2. He then overruled Petitioner's objection and found "Probation correctly applied the cross-reference of Sentencing Guideline Section 2G1.1." *Id.* at 20:16–19. Defendant, however, objected to base offense level of § 2A3.1 on the basis that the cross-reference in §2G1.3(C)(3) was inapplicable. (CR Doc. 59 at 3–4). After a thorough review of the record, I find that the sentencing court meant to state that Probation correctly applied the cross-reference of Sentencing Guideline Section 2G1.3. For instance, the

influence not only based on the age difference of the parties (13 years old versus 38 years old), but under the totality of the circumstances. *Id.* at 19:22–21:25. As such, the Court found the correct guideline sentence to be an "Offense Level 33, Criminal History II, which is an advisory sentencing guidelines range of 151 to 188 months" (or 12.58 years to 15.67). *Id.* at 21:17–22, 35:5–12. However, the specific sentencing range was five (5) to 12 years because the Court accepted the Plea Agreement. *Id.* at 21:20–22.

In turn, the Government argued that 12 years was the appropriate sentence. *Id.* at 21:23–24:6. Mr. Fernandez argued for five (5) years. *Id.* at 24:7–27:16. Petitioner then made a statement to the Court. *Id.* at 27:17–28:17, 30:1–33:23. Petitioner stated that he never made a statement when he was arrested, the victim was untruthful, he was upset the victim's representative could make a statement to the Court during sentencing, he objected to parts of the PSIR pertaining to Petitioner's background and history as well as use of force and a statement he allegedly made during the victim's 911 call, and requested portions of the PSIR to be excluded. *Id.* at 27:17–28:17, 30:1–33:23.

The Court then sentenced Petitioner "for a term of 120 months, or 10 years." *Id.* at 41:11–43:16. The Court found the plea range of five (5) to 12 years was a significant benefit to Petitioner given that the sentencing guidelines were higher than that range. *Id.* at 35:5–12. The Court also noted the seriousness of the offense, Petitioner's criminal history, and—notwithstanding that the victim said she was 19 years old—"she was still very vulnerable" under the circumstances, and thus those factors further supported the sentencing. *Id.* at 41:11–43:16. The Court also stated that Petitioner waived his right to appeal the sentence under the Plea Agreement. *Id.* at 41:5–6.

---

sentencing judge calculated a total offense level of 33. Sntc'g Tr. at 19:22–21:22. This included a base offense level of 30 under § 2A3.1(a)(2), increase six (6) levels based on specific offense characteristics under §§ 2A3.1(b)(1) and 2A3.1(b)(2)(B), with a decrease of four (4) levels in light of Petitioner's acceptance of responsibility pursuant to §§ 3E1.1(a) and (b). *See* (CR Doc. 57 at 8–9); *see also* (CR Doc. 59 at 3–4); *see also* Sntc'g Tr. at 4:11–21:22, 35:5–12.

### E.    HABEAS PETITION AND POST MOTIONS

On July 29, 2022, Petitioner, proceeding *pro se*, filed a motion to vacate under § 2255. (CV Doc. 1; CR Doc. 104). The Court reviewed his petition, (CV Doc. 1), Petitioner's numerous supplements to the petition, (CV Docs. 5, 7–8, 11–13), as well as Petitioner's motion in support of the petition, (CV Doc. 10), and instructed Petitioner to file an amended motion on the proper § 2255 form. *See* (CV Doc. 14). On March 9, 2023, Petitioner complied and filed the instant Amended 2255 Petition. (CV Doc. 17).[10] Thereafter, having determined that the Amended 2255 Petition survived initial screening pursuant to Habeas Corpus Rule 4, the Court ordered the Government to respond. (CV Doc. 18). The Government filed an answer on August 31, 2023. (CV Doc. 33). Subsequently, Petitioner sought and received two extensions for his reply. (CV Docs. 34–35, 37–38). The Court ordered Petitioner to file his reply no later than January 19, 2024. (CV Doc. 38).

On December 7, 2023, Petitioner filed a motion for an evidentiary hearing, (CV Doc. 40), and on December 11, 2023, he filed a motion to request for stay, (CV Doc. 42). Thereafter, Petitioner submitted a letter on December 19, 2023, requesting the Court Clerk send him any unsigned documents. (CV Doc. 43). Then, on January 31, 2024, Petitioner filed a motion for leave to amend the motion for an evidentiary hearing. *See* (CV Doc. 48). He also filed objections on February 13, 2024, to this Court's prior Orders. (CV Doc. 49).

On February 6, 2024, Petitioner filed a memorandum in support of his original motion to vacate. (CV Doc. 50). On March 1, 2024, the Government subsequently filed a Motion to Strike

---

[10] In deciding this case, the Court addresses claims in the Amended 2255 Motion, (CV Doc. 17). However, Petitioner brings the same claims in his Amended 2255 Motion as he did in his original petition, supplemental documents, and in his recently filed Memorandum in Support of Doc. 1 Motion to Vacate, (Doc. 50). For the reasons addressed in, (CV Doc. 59), the Court construes (CV Doc. 50) as Petitioner's untimely reply in considering the claims and allegations in support of Petitioner's Amended 2255 Motion.

(CV Doc. 50). *See* (CV Doc. 51). Petitioner filed an opposition on March 19, 2024. (CV Doc. 53).

On July 25, 2024, Petitioner filed a Motion for Clarification, requesting this Court provide the legal meaning for "knowingly," "learned," "coerce," and "enticement" as used in the Plea Agreement. (CV Doc. 58 at 1–2).

On August 27, 2024, the Court denied without prejudice Petitioner's Motion to Request for Stay, (CV Doc. 42), and Motion for Leave to Amend Motion for an Evidentiary Hearing, (CV Doc. 48). *See* (CV Doc. 59). The Court also denied, in part, and granted, in part, the Government's Motion to Strike, or, in the Alternative, Construe Filing as Untimely Reply, (CV Doc. 51). *See id.*

On March 21, 2025, Petitioner filed a Motion to Extend Review of New Evidence, (CV Doc. 61), seeking 60-days to review the "Court documents from the district court" because the documents purportedly contained new evidence in support of his Amended 2255 Petition. *Id.*

On May 5, 2025, Petitioner filed a Motion to Appoint Counsel. (CV Doc. 62).[11]

On June 9, 2025, Petitioner filed a Motion to Compel Counsel to Produce Client File, (CV Doc. 66). Petitioner seeks discovery from his former trial counsel, Mr. Fernandez, including his entire case file and all transcripts, emails, text messages, and recorded phone calls. *Id.*

## F.    TENTH CIRCUIT APPEAL

### 1.    Criminal Appeal

On October 18, 2021, Petitioner filed a direct appeal with the Tenth Circuit. *See* (CR Docs. 79–83). In January 2022, the Tenth Circuit issued its Order and Judgment, (CR Doc. 98), enforcing the appeal waiver and dismissing the appeal. *See United States v. Kristich*, 2022 U.S. App. LEXIS 152 (10th Cir. Jan. 4, 2022) (per curiam) (unpublished). On April 13, 2022, the panel withdrew

---

[11] I recommend denying the motion to appoint counsel because an evidentiary hearing is not warranted for the reasons stated *supra*. *See* Rules Governing § 2255 Proceedings 8(c); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Akers*, 807 Fed. Appx. 861, 867 (10th Cir. 2020) ("There is no constitutional right to counsel beyond the direct appeal of a criminal conviction.").

and replaced its Order and Judgment. *See United States v. Kristich*, 2022 U.S. App. LEXIS 9921 (10th Cir. Apr. 13, 2022) (unpublished). This mandate, (CR Doc. 102), took effect on April 21, 2022. *See United States v. Kristich*, 2022 U.S. App. LEXIS 9920 (10th Cir. Apr. 13, 2022) (per curiam) (unpublished). Once again, the panel "grant[ed] the government's motion to enforce the appellate waiver in the plea agreement" and dismissed the appeal. *Id.* at *6. Then, on May 31, 2022, the Supreme Court denied Petitioner's petition for certiorari. (CR Doc. 103); *Kristich v. United States*, 142 S. Ct. 2762 (2022). As it stands, Petitioner has been in federal custody since August 14, 2018. (CR Doc. 57 at 1). And, based upon the sentence imposed, his estimated release date is September 13, 2026.

### 2. Civil Appeal

On or about August 7, 2023, Petitioner filed a writ of mandamus with the Tenth Circuit Appellate Court. (CV Doc. 29). The Tenth Circuit dismissed the mandamus proceeding on October 6, 2023, for failure to file a proof of service. *See* (CV Doc. 36 at 1). On October 11, 2023, the Tenth Circuit reinstated the mandamus. *Id.* On December 7, 2023, the Tenth Circuit denied the petition for a writ on mandamus. (CV Doc. 55).

### G. PETITION FOR WRIT OF CERTIORARI

On April 3, 2024, Petitioner filed a petition for writ of certiorari to the United States Supreme Court. (CV Doc. 54). The petition for writ of certiorari only pertained to Petitioner's petitions for a writ of mandamus to the Tenth Circuit previously discussed. *See* (CV Doc. 55). On June 24, 2024, Supreme Court denied his petition for writ of certiorari. (CV Doc. 57). Accordingly, this Court has jurisdiction to address the habeas claims. *Cf. United States v. Madrid*, 633 F.3d 1222, 1226 (10th Cir. 2011).

### II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner who "claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . , or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief is available under § 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted). The court must presume "that the proceedings leading to the conviction were correct"; the burden is on the petitioner to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

When a party proceeds *pro se*, the court generally construes his pleadings liberally, holding them to a less stringent standard than those filed by a party represented by counsel. *Hall*, 935 F.2d at 1110. However, the court will not fashion Petitioner's "arguments for him where his allegations are merely conclusory in nature without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

## III.   DISCUSSION

### A.    AMENDED § 2255 HABEAS PETITION

Petitioner advances 84 grounds for relief in his Amended 2255 Petition. (CV Doc. 17). Petitioner's four (4) initial grounds are: (1) ineffective assistance of trial counsel (Mr. Fernandez); (2) due process violation; (3) violation of the ex post facto clause of the United States Constitution; and (4) ineffective assistance of appellate counsel (Mr. Acton). *Id.* at 4–9. In Petitioner's grounds 5 through 84, he asserts an array of grounds. The Court finds that after a diligent review of Petitioner's 84-page Amended 2255 Petition that Petitioner's 84 grounds may be grouped into the

following categories:

- Ineffective Assistance of Counsel of Trial Counsel, Mr. Fernandez:

  o   Advice as to defense strategy and possible defenses: Grounds 1, 51, 55, 58, 77–78;

  o   Pretrial, pre-plea hearing, and other plea agreement claims: Grounds 2, 5, 8–25, 29–38, 43–49, 52–53, 56, 59–63, 67–68, 70, 73, 75–76, 81–82;

  o   Presentencing and sentencing hearing claims: Grounds 3, 7, 26–28, 38–39, 42, 50, 65–67, 81, 83;

  o   Supervised release conditions: Grounds 71–72, 79–80(C);

  o   Hostile relationship and prejudice to Petitioner: Grounds 6, 40, 57;

  o   Judicial misconduct: Ground 41

- Ineffective Assistance of Appellate Counsel, Mr. Acton: Ground 4;

- Constitutional Challenge to 18 U.S.C. § 2422: Grounds 69, 74; and

- Miscellaneous Grounds: Grounds 54, 64, 84;

*Id.* at 4–83.[12]

---

[12] Petitioner does not cite any evidence in support of his 84 Grounds in the first 28 pages of the 84-page Amended Petition. In his "Memorandum in Support of 2255," Petitioner generally cites the plea hearing and sentencing transcripts, but does not provide any pinpoint citations. *See* (CV Doc. 17). Petitioner also attached the following exhibits, most which are not authenticated or are incomplete: Exhibits A and A-2 (unsigned July 2021 "Rough Draft Letter" to "Alejandro"); Exhibit A-[number illegible] (partial December 9, 2021, Letter from Mr. Acton, which is not signed); Exhibit B-1 (December 29, 2021, Mail Log of a Letter from Mr. Acton), Exhibit B (July 20, 2021, Call Log documenting two (2) calls, nine (9) and ten (10) minutes respectively, to the Office of the Federal Defender - District of New Mexico); Exhibit C (an unsigned and not dated piece of paper that says, "Read admission of facts from plea. 120 months. Ten years"); Exhibit D (executed Information); Exhibit D-1 (CoreCivic COVID-19 Test Notification Form dated August 6, 2020); Exhibit D-2 (July 25, 2020, TaqPath COVID-19 Combo RT-PCR positive lab report); Exhibit E (page three (3) of the Plea Agreement); Exhibit E-1 (page four (4) of the Plea Agreement); Exhibit F (Petitioner's unsigned not notarized Declaration regarding contracting COVID-19); Exhibit G to G-2 (Declaration of Chris Beyrer, MD, MPH); Exhibit H (Article III. Judicial Power); Exhibit I (§ 20911. Relevant definitions, including Amie Zyla expansion of sex offender definition and expanded inclusion of child predators); Exhibits J-1 to J-2 (*United States v. Leotha Williams*, No. CR. 17-2556 (James O. Browning), 2020 U.S. Dist. LEXIS 124956 (D.N.M. July 16, 2020)). The Court, when applicable, will address Petitioner's evidence to the extent the claim cites an exhibit. Notably, the majority of Petitioner's grounds do not reference Exhibits A through J.

Petitioner seeks "immediate release" or, alternatively, "speedier release," and that the Court grant such relief that it may deem appropriate. *Id.* at 12.

### 1.    Ineffective Assistance of Counsel Claims

It is well established that defendants have a Sixth Amendment right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Accordingly, the Supreme Court in *Strickland* devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. *Id.* at 686–87. In order to establish an ineffective assistance claim, a movant" must demonstrate (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687–88.

Under the first prong, a defendant must demonstrate that his counsel's performance was deficient. The appropriate standard for attorney performance is that of reasonably effective assistance. The defendant must demonstrate that, considering all the circumstances, counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms. *See id.* at 687–88. For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)). The Court must be highly deferential in evaluating an attorney's performance:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant

21

must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

In applying this test, the Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "Neither hindsight nor success is the measure" of whether counsel was effective, and "effective" is not synonymous with victorious or flawless. *Dever v. Kan. State Penitentiary*, 36 F. 3d. 1531, 1537 (10th Cir. 1994). Rather, to be considered ineffective assistance of counsel, "the representation must have been such as to make the [proceeding] a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *Id.* (*citing Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971)).

The inquiry does not stop there; rather, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Under the second prong of the inquiry, the movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

In the context of a defendant who pleaded guilty, the prejudice prong is modified slightly to focus on whether the constitutionally ineffective performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). Accordingly, the habeas petitioner who pleaded guilty must show "that there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

As explained below, I conclude Petitioner's claims fail because counsels' representation was not objectively unreasonable, nor did Petitioner suffer prejudice as a result of that representation.

<u>a)</u>          <u>**Advice as to defense strategy and possible defenses (Grounds 1, 51, 55, 58, 77–78)**</u>

Petitioner first claims that his trial counsel, Mr. Fernandez, was ineffective by failing to provide sound legal advice generally as well as to the overall defense strategy and potential defenses. (CV Doc. 17 at 4) (Ground 1). Petitioner alleges Mr. Fernandez not only lied about possible defenses to force Petitioner into the Plea Agreement, but he also lied to him about the application of the "mistake of age" defense. *Id.* at 4 (Ground 1), 18 (Ground 51), 22 (Grounds 77, 78), 34–36. He further asserts Mr. Fernandez failed to advise him of "other possible defenses" and the factual basis for the Plea Agreement. *Id.* at 36. As a result, there is insufficient evidence to support a conviction under the statute for which Petitioner pled guilty. *Id.* at 18 (Ground 55), 19 (Ground 58).

The Government counters that the crux of Petitioner's claims rely upon Petitioner's lack of knowledge of the victim's age to assert the "mistake of age" defense. (CV Doc. 33 at 12). The Government proffers that the victim's age is not an element of Section 2242(a) and only pertains "to the offense of conviction as it relates to the [*sic*] whether the two engaged in sexual activity 'for which any person can be charged with a criminal offense'" under Section 2242(a). *Id.* at 12–13. Moreover, the factual statement in the Plea Agreement reflects Petitioner's position that he did not know the victim's true age at the time of the incident. *Id.* at 13.

When a defendant alleges ineffective assistance of defense counsel for failure to raise

certain defenses/issues, the court must review the merit of those issues first, and if the omitted issue is meritless, counsel is not ineffective for failing to raise them. *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). Defense counsel's omission of "meritless" issues will not constitute ineffective assistance of counsel. *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (internal quotation omitted).

The Court finds that Petitioner has failed to plead facts to show that Mr. Fernandez's performance fell below an objective standard of reasonableness or to demonstrate a reasonable probability that but for his counsel's failure to assert a mistake of age defense, or "other possible defenses," the result would have been different. To begin, Petitioner offers no information or evidence as to the "other possible defenses" Mr. Fernandez failed to investigate or he supposedly lied about. Conclusory allegations of ineffective assistance of counsel, without supporting factual averments, are insufficient to state a valid claim under § 2255. *Fisher*, 38 F.3d at 1147.

As for the "mistake of age defense," Petitioner claims that the "mistake-of-age defense should have been permitted (had counsel not lied to [him] about the defense on more than one recorded phone call . . . .)." (CV Doc. 17 at 35); *see also* (CV Doc. 17 at 18, 22) (Grounds 77, 78). Petitioner generally cites the Plea Agreement and sentencing transcript in support of his contention, but does not provide pinpoint citations nor any other evidence. *Id.* at 35–36. He also asserts Mr. Fernandez lied to him about the "mistake of age" defense on recorded phone calls, but does not include any further details nor did he attach any transcripts to his Amended 2255 Petition. *See id.* at 18, 22 (Grounds 77, 78). Petitioner then contends he is not guilty of the crime because he lacked the "'mens rea' as shown in the 'learned' language in the admission of facts" in the Plea Agreement. *Id.* at 19, 36 (Ground 58). He further argues that there is insufficient evidence to support a conviction under "18 U.S.C. [*sic*] 2244(a): "Whoever, knowingly persuades, induces,

entices, or coerces an individual to travel interstate or foreign commerce . . ." because he did not know the victim was a minor. (CV Doc. 17 at 18) (Ground 55).

Petitioner appears to confuse the mistake of age affirmative defense as an element of the offense for which he pled guilty. Section 2422(a) does not require the Government prove Petitioner had knowledge of the victim's true age during the crime. Section 2422(a) states:

> Whoever knowingly persuades, induces, entices, or coerces **any individual** to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 2422(a) (emphasis added). The language in § 2242(a) explicitly applies to "any" victim. The victim's age is thus not a factor in proving § 2422(a). *See also United States v. Streett*, 83 F.4th 842, 845 (10th Cir. 2023) (holding § 2422 not require defendant know victim is a minor). Notwithstanding, Petitioner could have argued mistake of age as an affirmative defense at trial. A point Mr. Fernandez made at the sentencing hearing. Sntc'g Tr., 12:3–13:9. Mr. Fernandez also zealously objected at the sentencing hearing to the application of the cross-reference to U.S.S.G. § 2A3.1 because Petitioner lacked knowledge of the victim's true age at the time of the incident. *Id.* at 6:1–11:10. By Mr. Fernandez's own account, raising Petitioner's lack of knowledge as to the victim's age as a *defense* to the federal charge would have been meritless. *See id.* Petitioner's ground for ineffective counsel thus fails. *See Miller*, 354 F.3d at 1298 (holding omission of meritless issues not constitute ineffective assistance of counsel) (internal quotation omitted).

To the extent Petitioner argues Mr. Fernandez unreasonably advised him or failed to argue the mistake of age defense as to New Mexico Statute 30-9-11(G)(1) (criminal sexual penetration in the fourth degree), his ineffective assistance of counsel claim fails. Petitioner was not charged

with violating N.M.S.A. § 30-9-11(G)(1). *See* (CR Doc. 6) (indictment alleging violation of 18 U.S.C. §§ 2423(a) and (e) (transportation of minor with intent to engage in criminal sexual activity); *see also* (CR Doc. 54 at 2) (guilty plea in violation of 18 U.S.C. § 2422(a)). Petitioner ultimately pled guilty to § 2422(a), which states that the purpose for the travel was to engage in a sexual activity for which Petitioner *could have* been charged with a criminal offense. *See* 18 U.S.C. § 2422(a) ("[t]he purpose of the travel [in interstate commerce] was for the [victim] to engage in . . . any sexual activity for which [Petitioner] *can* be charged with a criminal offense.") (emphasis added). Section 2422(a) does not require an actual arrest or conviction for an underlying state offense. The mere fact that Petitioner could have been charged with statutory rape in violation of New Mexico law does not mean the Government was required to prove the victim's age and/or Petitioner's knowledge thereto. Moreover, as Petitioner acknowledged in his objections to the PSIR, under New Mexico law, "mistake of age is an affirmative defense, not an element of the crime that must be proven." (CR Doc. 59 at 3, ¶ 4) (citing *Perez v. State*, 111 N.M. 160, 162 (N.M. Sup. Ct. 1990). Thus, as to the performance prong of *Strickland*, Mr. Fernandez acted reasonably because a substantive claim that Petitioner lacked the requisite knowledge of the victim's age is meritless, and he need not have raised meritless arguments. *See Hawkins*, 185 F.3d at 1152. Accordingly, I recommend the Court deny Grounds 1, 51, 55, 58, 77, and 78.

### b) Pretrial investigation and motions, suppression of evidence, objections at the change of plea hearing, and challenges to the Plea Agreement (Grounds 2, 5, 8–25, 29–38, 43–49, 52–53, 56, 59–63, 67–68, 70, 73, 75–76, 81–82)

Construing Petitioner's claims liberally, he raises further claims that Mr. Fernandez was ineffective for failing to fully inform him of his rights pre-plea, failing to file pretrial motions and

suppress evidence, failing to explain or object to the inclusion of particular words in the Plea Agreement, and fraudulently inducing and forcing Petitioner to sign the Plea Agreement. *See* (CV Doc. 17 at 5 (Ground 2), 13–23 (Grounds 5, 8–25, 29–38, 43–49, 52–53, 56, 59–63, 67–68, 70, 73, 75–76, 81–82)).

At the onset, some of Petitioner's contentions rely heavily on his argument that the "mistake of age" defense was applicable. For example, Petitioner argues he received ineffective assistance because counsel did not file a motion for lack of specificity and/or failure to state an offense under N.M.S.A. § 30-9-11(G)(1) in the charging papers. *Id.* at 17–18, 45 (Ground 49). He also claims the Plea Agreement undermines § 2422(a) because the admission of facts states Petitioner did not "learn" the victim was a minor until after the fact, but § 2422(a) requires Petitioner have knowledge of the victim's age. (CV Doc. 17 at 20 (Ground 68), 37–38). As this Court addressed *supra*, § 2242(a) does not require the Government prove Petitioner was charged with and/or found guilty of an underlying state crime. *See* Section III.A.1.a. Further, § 2242(a) applies to "any" victim. *See id.* The victim's age in this case is therefore inapplicable in proving § 2242(a). Further, as Mr. Fernandez noted at the sentencing hearing, mistake of age is an affirmative defense; it is not a complete defense. *See* Sntc'g Tr. at 5:15–13:13. In sum, the record and precedent, does not show that Mr. Fernandez's representation fell below an objective standard of reasonableness. The Court, therefore, recommends denial of Petitioner's ineffective assistance of counsel Grounds 49 and 68.

Petitioner also asserts numerous conclusory and speculative claims. For instance, in Ground 76, Petitioner claims "Mr. Fernandez failed to challenge the search warrant or tell [Petitioner] to do so" in violation of the Fourth Amendment. (CV Doc. 17 at 21). Petitioner, however, does not state on what grounds the search warrant should have been challenged or the

probability of success. Likewise, in Ground 75, Petitioner states that "[t]he government could not present sufficient evidence of venue with respect to [Petitioner's] enticement to engage in unlawful sexual activity in violation of 2422(a). [Trial Counsel] failed to raise this issue or tell [Petitioner] about venue issues." (CV Doc. 17 at 21, 44–45). Again, Petitioner fails to allege factual allegations challenging venue. The same follows for Ground 82. Petitioner generally claims Mr. Fernandez failed to object to *Brady* violations, but does not state what favorable evidence, if any, the Government failed to disclose. *See id.* at 23 (Ground 82).

Petitioner also raises several claims for ineffective assistance for failure to object to the grand jury. *See id.* at 17 (Grounds 43–46). Petitioner asserts counsel did not inform him that he could challenge the grand jury on the grounds that the jurors were "not lawfully drawn summoned" or "not legally qualified." *Id.* at 17 (Ground 43). He also contends Mr. Fernandez failed to object to the Indictment on the grounds that the foreperson did not sign the Indictment. *Id.* at 17 (Ground 44). The Court surmises, based upon a review of the record, that Mr. Fernandez, like most federal public defenders, was familiar with the local practice of filing unsigned copies of the indictment on the public docket and retaining signed copies under seal or for the Court's viewing only. Indeed, the docket in the criminal case shows two indictments: a "COURT ONLY" signed Indictment, (CR Doc. 6); and a "REDACTED INDICTMENT" without the foreperson's signature, (CR Doc. 7). In short, there was no irregularity or warranted objection regarding the Indictment. Finally, construing his pleading liberally, he claims counsel was ineffective because he did not object to the grand jury proceedings. (CV Doc. 17 at 17 (Grounds 45–46)). None of Petitioner's contentions proffer any supporting factual allegations.

I thus find Petitioner's Grounds 43–46, 75, 76, and 82 are insufficient to state a claim for relief and recommend denying Grounds 43–46, 75, 76, and 82. *See United States v. Moser*, 570

Fed. Appx. 800, 2014 WL 2978498, at *3 (10th Cir. 2014) (unpublished); *Snyder v. Addison*, No. 03-6050, 89 F. App'x 675, 681 (10th Cir. 2004); *see also Fisher*, 38 F.3d at 1147 (conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255); *Hall*, 935 F.2d at 1110 (holding that even *pro se* plaintiffs must allege sufficient facts on which a recognized legal claim can be based, and that conclusory allegations will not suffice).

Petitioner's remaining pretrial ineffective assistance of counsel claims are discussed in turn.

### (1)    *Failure to File Pretrial Motions (Grounds 2, 38, 47–49, 56, 59–62, 63)*

Petitioner contends Mr. Fernandez failed to file any pretrial motions other than motions to continue trial. (CV Doc. 17 at 5, 17–19 (Grounds 2, 47–49, 56, 59), 45–46). Petitioner puts forth several motions he believes counsel erroneously failed to file: Ground 38 (motion to impeach the government's witness); Ground 47 (move for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f)); Grounds 60 and 61 (motion to challenge the court's "'geographical jurisdiction' and/or lack of geographical jurisdiction" and "to challenge the justiciability/justiciability doctrine" under Article 3, Section 2 of the United States Constitution); and Ground 63 ("motion for selective or vindictive prosecution" due to the purported "lack of evidence, false evidence, false statements, and a low number count STR DNA test."). *Id.* at 16 (Ground 38), 17 (Ground 47), 19 (Grounds 60, 61, 63), 45 (Ground 63). In support of the foregoing, Petitioner contends Mr. Fernandez filed numerous motions to continue without his knowledge and consent. *Id.* at 18–19.

The Government responds the Court should deny Petitioner's grounds because he fails to specifically identify motions and/or does not point to any information or evidence suggesting the

probability of success on any particular motion. (CV Doc. 33 at 15–16). The Court agrees.

"Effective assistance does not require that every possible motion be filed, but only those having a solid foundation." *United States v. Afflerbach*, 754 F.2d 866, 870 (10th Cir. 1985) (internal quotation marks omitted). The failure to file a motion can constitute defective performance by an attorney if the failure was the result of lack of preparedness rather than a strategic decision to refrain from filing the motion. *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986). The fact that a defendant asks his attorney to file a pretrial motion does not mean the defendant is automatically prejudiced when the attorney fails to do so; rather, the defendant must still show that there was a colorable basis to file the motion. *See e.g. United States v. Roybal*, 2017 WL 3405602, *3 (D.N.M. Mar. 24, 2017) (defendant fails to establish counsel's deficient performance by claiming counsel should have filed a motion to suppress evidence of law enforcement's possible use of a "stingray" device, without identifying any grounds in support of such motion); *United States v. Cervantes*, 267 Fed.Appx. 741, 743 (10th Cir. 2008) (defendant not provided any evidence that counsel's decision to not advance a motion to suppress was anything other than a strategic choice that was reasonable from counsel's perspective "at the time of the alleged error and in light of all the circumstances.") (citing *Kimmelman*, 477 U.S. at 381).

Here, Petitioner does not specifically identify the pretrial motions in support of Grounds 2, 48, and 59. *See* (CV Doc. 17 at 5 (Ground 2), 17 (Ground 48), 18 (Ground 59)).[13] Likewise, Petitioner's remaining pretrial grounds are conclusory. Petitioner has not shown any factual or legal basis for the pretrial motions or that *any* of the motions would have likely affected the outcome of the case. Only those motions having a solid foundation, not every possible motion,

---

[13] Petitioner admits that he did not raise Ground 2 on direct appeal. However, Petitioner claims the failure to raise the issue rests with his appellate counsel, Mr. Acton. Specifically, Mr. Acton "abandoned [Petitioner] and lied to the appeals court." (CV Doc. 17 at 5 (Ground 2)). The Court will address Petitioner's ineffective assistance of counsel claims against Mr. Acton separately.

should be filed. *Afflerbach*, 754 F.2d at 870. Petitioner's conclusory allegations are thus insufficient to state a valid § 2255 claim. *Fisher*, 38 F.3d at 1147. I therefore recommend denying Grounds 2, 38, 47–49, 59–61, and 63.

(a)    <u>Motions to suppress (Grounds 8–25, 29–37, and 52)</u>

Construing the Amended 2255 Petition liberally, Petitioner also argues Mr. Fernandez was ineffective for failing to conduct a reasonable pretrial investigation and challenge the strength, validity, and admissibility of the DNA evidence as well as correlating electronic evidence via motions to suppress and to move for a *Daubert* hearing. *See* (CV Doc. 17 at 13–14, 18, 44). Petitioner further claims counsel did not seek the forensic acquisition of the electronic evidence that included "the hard drive of each person's computer that was involved in the DNA testing process." *Id.* at 14. Petitioner cites Exhibits A and A-2 in support of his contention that the scientific evidence presented at the sentencing hearing, *i.e.*, the DNA, "contained a very low amount of DNA" and "was also a mixture of persons." *Id.* at 30–31.

In the Amended 2255 Petition, Petitioner provides no evidence that his trial counsel failed to investigate or that a competent attorney would have conducted investigations that trial counsel did not conduct. It is evident from Mr. Fernandez's continuance motions that he was actively reviewing discovery and assessing potential defenses thereto. *See* (CR Docs. 20, 23, 26, 29, 33, 39). After receiving multiple rounds of discovery and several forensic psych evaluations, Petitioner appeared before Magistrate Judge Fashing to plead guilty. At his change of plea hearing, Petitioner affirmed that he had thoroughly consulted with his attorney and desired to plead guilty. Petitioner informed the Court that he was not threatened or forced to plead guilty, Plea Hr'g Tr., at 26:13–20, that he was satisfied with his counsel's representation, that he had enough time to discuss every part of the Plea Agreement with counsel, and that he understood each term of the Plea Agreement.

*Id.* 21:8–19. 1. Petitioner affirmed that he had discussed all the facts and circumstances of his case with counsel, that he reviewed the evidence in his case with counsel, that he had discussed with counsel what the government would have to prove at trial before he could be found guilty as well as what defenses he could raise if his case proceeded to trial. *Id.* at 23:2–24:1. Ultimately, Petitioner told the Court that he was satisfied with counsel's advice and representation. *Id.* at 23:24–24:1. Petitioner never expressed any concern about counsel's investigation, waiving his right to file pre-trial motions, including motions to challenge the admissibility of evidence, nor giving up his right to trial.

The Tenth Circuit has noted that the "colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance. Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings." *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002). As such, "[n]umerous courts have denied relief under §§ 2254 and 2255 to petitioners alleging that their guilty pleas were the product of ineffective assistance, where the plea colloquies have demonstrated otherwise." *Hammons v. Paskiewicz*, 368 Fed.Appx. 904, 907 (10th Cir. 2010) (citing *Fields*, 277 F.3d at 1214 ). The questioning of the Petitioner at his change of plea hearing demonstrates that Petitioner entered his guilty plea knowingly and voluntarily, with an understanding that he would forego litigating pretrial motions, including motions to suppress and *Daubert* motions.

It is also noteworthy that Petitioner's Exhibits A and A-2 are insufficient to support his contentions. Exhibits A and A-2 are unauthenticated letters titled "Rough Draft Letter" to "Alejandro" purportedly drafted in July 2021, the month prior to his sentencing hearing. (CV Doc. 17 at 65–66, Exhs. A, A-2). The Exhibits offer little in the way of supporting a grant of habeas relief. Even assuming Petitioner did not write this letter at the same time he drafted his original or

Amended 2255 Petition, its substance fails to establish or allege that Petitioner either would have not pled guilty and gone to trial or that counsel committed an error that prejudiced him. And it certainly does not establish ineffective assistance for failing to investigate Petitioner's lack of DNA theory or file evidentiary and expert motions. First, the Exhibits are titled, "Rough Draft Letter." There is no indication that Mr. Fernandez received the letter at any point during his representation of Petitioner. Notably, Petitioner does not allege he sent the letter to counsel. Second, in the letter, Petitioner states, "[p]lease understand that it has always's [*sic*] been in the back of my mind to question thing's [*sic*] like the mitochondrial deoxyribonucleic acid DNA test that was done in my case. . . [in] my case are the limited amount of DNA in my case; there were only four cell's [*sic*] and they need at least five. As well there were a lot of mixtures in my case." *Id.* at 66. Petitioner does not expressly question why Mr. Fernandez had not moved to suppress the DNA evidence, or any other evidence, nor does he ask him to. Instead, Petitioner's letter merely indicates that he is "questioning" the DNA. The Exhibits also fail to rebut the DNA analysis that confirmed Petitioner's DNA on the vaginal swab and the swabs from the victim's neck that were obtained during the SANE exam. *See* (CR Doc. 57 at 7, ¶ 21). Accordingly, I find Petitioner's self-serving Exhibits A and A-2—which are unsupported by evidence—do not establish a basis for relief for failure to file any particular motion to suppress or any other pre-trial motion including *Daubert* motions. I thus recommend denying Grounds 8–25, 29–37, and 52.

(b)    Speedy trial (Grounds 56, 62)

Petitioner's Ground 56 intimates Mr. Fernandez was ineffective by allowing violations of the Speedy Trial Act ("STA"). Petitioner claims his trial counsel "held [him] in-communicado [*sic*] in pre-trial detention for around 3 years; telling [him] that the courts had rescheduled his trial. However, the record shows that Mr. Fernandez had filed the motions without informing him . . .

." (CV Doc. 17 at 18–19 (Ground 56)). This claim is similar to Ground 62 in which Petitioner claims Mr. Fernandez failed to file a motion for a speedy trial. *Id.* at 19. Petitioner does not assert when his speedy trial clock commenced. The Government, in turn, did not respond to Petitioner's STA violations. Construing Petitioner's claims liberally, the Court addresses Petitioner's claims as a violation of the STA and ineffectiveness with regard to a speedy trial.

(i)    Speedy Trial Act

The STA, designed to protect a criminal defendant's constitutional right to a speedy trial and to serve the public interest in bringing prompt criminal proceedings, requires that a criminal defendant's trial commence within seventy-days after his indictment or initial appearance, whichever is later. *See* 18 U.S.C. § 3161(c)(1); *see also United States v. Toombs*, 574 F.3d 1262, 1268 (10th Cir. 2009); *United States v. Lugo*, 170 F.3d 996, 1000–01 (10th Cir. 1999). Certain periods of delay, outlined in detail in the STA, are excluded and do not count toward the seventy-day limit. *See* 18 U.S.C. § 3161(h)(1)–(8). Relevant here is the exclusion for "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant *or his counsel* . . . , if the judge granted such continuance on the basis of his findings that the ends of justice . . . outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (emphasis added).

When using the ends-of-justice provision, the court must set "forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial," considering the factors listed in 18 U.S.C. § 3161(h)(7)(B)(i) – (iv). *Id.*

In this case, the Indictment was filed on August 14, 2018. Petitioner first appeared in court on August 15, 2018, which starts the speedy trial clock on the next day. Petitioner's trial was

34

originally set for October 1, 2018. On September 21, 2018, Petitioner filed his first unopposed motion to continue trial. In the motion, and in Petitioner's six (6) additional continuances, the motions stated the need for a continuance which included, but was not limited to, reviewing and investigating the Government's rolling discovery production; conduct, evaluate, and discuss with Petitioner forensic psych evaluations; negotiate potential plea resolution; and prepare for trial. *See* (CR Doc. 20 at 1–3); (CR Doc. 23 at 1–3); (CR Doc. 26 at 1–3); (CR Doc. 29 at 1–3); (CR Doc. 33 at 1–3); (CR Doc. 39 at 1–3); (CR Doc. 47 at 1–3); *see also* (CR Doc. 36). Mr. Fernandez also recited that Petitioner "agrees with this request for continuance," did not object to the requested continuance, understood his "rights under the Speedy Trial Act, and [Petitioner] understands the need for a continuance," and that "ends of justice will be served by granting" the requested unopposed extensions. *Id.* (CR Doc. 20 at 2–3); (CR Doc. 23 at 2–3); (CR Doc. 26 at 2–3); (CR Doc. 29 at 2); (CR Doc. 33 at 2–3); (CR Doc. 39 at 2–3); (CR Doc. 47 at 2–3).

In granting each continuance, the Court looked at the specific issues of the case and set forth its findings that the ends of justice were served by granting each continuance to resolve certain issues—including determining Petitioner's mental competency and discovery disputes or, alternatively, allow time for plea negotiations—which outweighed the public's and Petitioner's interest in a speedy trial. *See* (CR Docs. 21, 25, 28, 30, 35, 40, 48). Twice, the Court *sua sponte* continued trial in response to the Coronavirus Outbreak. (CR Docs. 45, 46). On October 19, 2020, Petitioner's trial was vacated and a change of plea hearing was set for October 23, 2020. (CR Doc. 49). Thus, the time period from Petitioner's first appearance until his change of plea hearing was 800 days.

Upon review of the record, no STA violation occurred. The speedy trial clock was tolled with each motion for continuance filed by Petitioner's counsel until the new trial date. 18 U.S.C.

§ 3161(h)(7)(A); *see also United States v. McCuiston*, No. 06-40071-01-SAC, 2007 WL 527834 at *5 (D. Kan. Feb. 13, 2007) ("ends of justice continuance of the trial date excludes all delay attributable to the continuance-from the former trial date to the new trial date") (citing *United States v. Apperson*, 441 F.3d 1162 (10th Cir. 2006)). Hence, the excludable time periods based on Petitioner's seven continuances—and the Court's two *sua sponte* continuances—are as follows: (1) September 21, 2019, to February 4, 2019; (2) January 29, 2019, to May 6, 2019; (3) April 25, 2019, to August 5, 2019; (4) July 24, 2019, to November 4, 2019; (5) October 21, 2019, to February 10, 2020; (6) January 27, 2020, to May 4, 2020; (7) April 28, 2020, to July 6, 2020; (8) June 10, 2020, to August 3, 2020; and (9) July 27, 2020, to November 2, 2020. Thus, the speedy trial was tolled since September 21, 2019, until the trial was vacated on October 19, 2020, or in other words 759 days are excludable.[14] *See* 18 U.S.C. § 3161(h)(7)(A); *see also* 18 U.S.C. § 3161(h)(1)(A) (also excluded are delays resulting from examinations to determine the defendant's mental competency). Because only 41 days are not excludable under the STA, Petitioner's motion to vacate pursuant to Grounds 56 and 62 should be denied.

The Court also finds Petitioner's grounds lack merit for several other reasons. First, Petitioner asserts counsel told him the Court initiated the continuances. Petitioner proffers no evidence other than his self-serving statement, which is insufficient to establish a § 2255 claim. *See United States v. Morris*, 106 F. App'x 656, 659 (10th Cir. 2004) (movant's "subjective and self-serving statements are insufficient to show a reasonable probability that, but for alleged counsel's errors, he would have pled guilty"); *see also United States v. Apfel*, 97 F.3d 1074, 1077

---

[14] The Court notes Petitioner filed a motion for a hearing on his behalf on March 5, 2020. The Court denied the motion on March 9, 2020. Thus, four (4) days between the filing of the motion and the disposition by the Court were also tolled. *See* 18 U.S.C. § 3161(h)(1)(D) ("delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). These excludable days, however, are already accounted for as they overlap with the motions to continue.

(8th Cir. 1996) (self-serving statements unsupported by evidence do not establish a basis for relief under § 2255).

Second, Petitioner's various § 2255 grounds are nonsensical. On one hand, Petitioner condemns Mr. Fernandez's strategic decisions (*i.e.*, continue trial to assess and investigate the Government's ongoing discovery production that occurred over a handful of months, conduct multiple forensic evaluations to determine Petitioner's mental competency (to stand trial as well as potential defenses at the time of the crime), and negotiate a plea deal). While, on the other hand, he argues counsel should have done more to investigate pretrial motions, discovery, and his competency. Tactical decisions, such as trial continuances to develop the defenses theories, "whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance." *See Hatch*, 58 F.3d at 1459 (internal quotations and citation omitted); *see also United States v. Ortiz Oliveras*, 717 F.2d 1, 4 (1st Cir. 1983) (Strategic decisions only amount to ineffective assistance of counsel when they were "completely unreasonable . . . so that it bears no relationship to a possible defense strategy.").

Third, the STA places upon the defendant the burden of asserting a violation of the Act. If a defendant fails to move for dismissal prior to trial or the entry of a guilty plea, such inaction constitutes a waiver of the right to dismissal under the STA. *United States v. Spring*, 80 F.3d 1450, 1456 (10th Cir. 1996) (internal citations omitted). Here, Petitioner did not raise the STA claim during pretrial, change of plea hearing, or on direct appeal. *See* No. 18-CR-02635-WJ-KRS generally; *see also* (CR Doc. 75); (CR Doc. 80); Plea Hr'g Tr.; Sntc'g Tr. "Review under § 2255 is not an alternative to appellate review for claims that should have been presented on direct appeal but were not." *United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005). Consequently, if a defendant fails to raise an issue at trial or on direct appeal, he faces a procedural bar to raising

that issue on collateral review. *United States v. Barajas-Diaz*, 313 F.3d 1242, 1245 (10th Cir. 2002). To overcome the procedural bar, the movant must establish (1) good cause for not raising the issue earlier, and (2) actual prejudice to his defense from the court's failure to consider this claim, or, alternatively, (3) a fundamental miscarriage of justice from not considering the claim. *United States v. Cervini*, 379 F.3d 987, 990–91 (10th Cir. 2004). Petitioner has failed to overcome the procedural bar. Even if he could demonstrate good cause for not raising this claim earlier, there is no evidence presented to show there was actual prejudice to Petitioner as a result of the Court's failure to consider this issue or that there was a fundamental miscarriage of justice. For all of these reasons, the Court recommends that Petitioner's claims involving alleged violations of the STA be denied and dismissed with prejudice.

(ii)    Sixth Amendment

The Court construes Petitioner's Amended 2255 Petition liberally to include a Sixth Amendment speedy trial violation in light of his allegation that there was "a violation of the Const. right to a speedy trial (180 days)". (CV Doc. 17 at 34). I find Petitioner has also failed to establish ineffective assistance of counsel with respect to his constitutional right to a speedy trial.

In determining whether a defendant has been deprived of his constitutional right to a speedy trial under the Sixth Amendment, a court should consider and balance the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Lugo*, 170 F.3d at 1002 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The constitutional right to a speedy trial applies through sentencing. *Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir. 1986).

Of these factors, the length of the delay is the threshold consideration. Only if the delay is "presumptively prejudicial" will the court need to consider the remaining factors. *Lugo*, 170 F.2d

38

at 1002. While the length of the delay is to some extent a triggering mechanism, the length of delay that will provoke an inquiry into whether the Sixth Amendment has been violated is necessarily dependent upon the peculiar circumstances of the case. *Barker*, 407 U. S. at 530; *Harvey v. Shillinger*, 76 F.3d 1528, 1533 (10th Cir. 1996).

Here, the indictment is file-stamped August 14, 2018, the same day as Petitioner's arrest. Thus, Petitioner's speedy trial right attached as of August 14, 2018. Petitioner was sentenced on August 2, 2021. Thirty-five and a half months elapsed between Petitioner's arrest and sentencing.[15] This is not an inordinate delay in light of the circumstances surrounding Petitioner's criminal case. As discussed *supra*, Petitioner moved for several continuances of the trial to allow for further investigation into the Government's rolling discovery, Petitioner's mental competency, and conduct plea negotiations. Petitioner also filed two motions to continue his sentencing hearing. *See* (CR Docs. 63, 70). In each motion, Petitioner stated further time was necessary to prepare a sentencing memorandum in light of the Government's sentencing memorandum and its response to Petitioner's PSIR objections. *See generally* (CR Docs. 63, 70). Petitioner also requested the continuances in order to be physically present for his sentencing—when in person hearings were restricted due to the COVID-19 pandemic. *See generally id.* Not once did Petitioner assert his speedy trial rights. Indeed, Petitioner's speedy trial claims are contradicted by his exhibits. In his "Rough Draft Letter" to "Alejandro," Petitioner never raised any concerns at the length of delay of his change of plea hearing or sentencing hearing. *See* (CV Doc. 17 at 30–31). Considering all the circumstances, the delay in this case is not prejudicial. Mr. Fernandez was thus not ineffective

---

[15] To the extent Petitioner is alleging a delay between his guilty plea and sentencing this argument too fails. Time between the entry of Petitioner's guilty plea to his sentencing was nine (9) and half months (October 23, 2020, to August 2, 2021). The courts have rejected speedy trial claims in cases where the period from the entry of a plea, or from a conviction, to sentencing was considerably longer than it was here. *See, e.g., Pollard v. United States*, 352 U.S. at 354 (24 months); *United States v. Tortorello*, 391 F.2d 587 (2d Cir. 1968) (29 months).

in failing to raise this issue because there was no speedy trial violation.

                    (iii)      Ineffectiveness with Respect to Speedy Trial

Petitioner's speedy trial claims are cast in an ineffective assistance of counsel posture but here, too, his claim fails, and I recommend dismissal, because he cannot establish either *Strickland* prong. First, the continuances were plainly related to the defense need to become thoroughly prepared for trial. Therefore, under the first *Strickland* prong, Petitioner cannot overcome the presumption that counsel's requests for them were a matter of "sound trial strategy." *Strickland,* 466 U.S. at 689; *see also, c.f., id.* at 690 ("choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

Second, because there is no violation of the Sixth Amendment or the STA, counsel cannot be deemed deficient for failing to raise a speedy trial claim before the trial court. Attorneys are not ineffective for failing to raise meritless challenges. *Sperry v. McKune,* 445 F.3d 1268, 1275 (10th Cir. 2006) (failure to raise a meritless claim is not ineffective assistance of counsel).

Likewise, Petitioner cannot establish prejudice. I believe the underlying premise to both of his STA and Sixth Amendment speedy trial claims is that if counsel had raised the claim, or if he establishes a violation here, then this Court would have to dismiss the charges with prejudice. (CV Doc. 17 at 12). With respect to the STA, however, the trial judge has discretion to dismiss the indictment without prejudice, and the defendant can thus be retried even if the statute of limitations has expired for the crime. *See, e.g., Toombs,* 574 F.3d at 1276 ("we . . . reverse the denial of the motion to dismiss on Speedy Trial Act grounds, and remand for proceedings consistent with this opinion. On remand, the district must decide whether to dismiss the indictment with or without

prejudice."); And, even though dismissal would be required to remedy a Sixth Amendment violation,[16] Petitioner cannot establish *Strickland* prejudice where there is no merit to the claim.

*(2)*    *Fraudulent Inducement (Grounds 53, 70, 73, 78)*

Petitioner grounds his claim that Mr. Fernandez provided deficient representation by fraudulently inducing him to enter the Plea Agreement by not fully informing Petitioner of his rights, defenses, the law, and "all the U.S.S.G's pre-plea." (CV Doc. 17 at 18 (Ground 53), 20 (Ground 70), 21 (Ground 73), 22 (Ground 78)). According to Petitioner, he did not enter into the Plea Agreement voluntarily and knowingly and he is "actually innocent" because counsel failed to inform him of all potential defenses, laws, regulations, and sentencing guidelines. *Id.* Petitioner cites "all of the errors" claimed in his Amended 2255 Petition as support of his contentions, but does not pinpoint to any evidence. *Id.* at 20.[17]

To begin, "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda*, 368 U.S. at 493. But the plea-bargaining process and its advantages of efficiency and certainty remain "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Therefore, as a starting point, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made

---

[16] *See Reed v. Farley*, 512 U.S. 339, 368 (1994) ("The dismissal with prejudice of criminal charges is a remedy rarely seen in criminal law, even for constitutional violations.") (citing as examples *Barker* for Sixth Amendment speedy trial violation and *Oregon v. Kennedy*, 456 U.S. 667(1982) for Double Jeopardy Clause violation); *Barker,* 407 U.S. at 522 ("The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy."); *Toombs,* 574 F.3d at 1274 ("Because a district court has discretion to dismiss the case with or without prejudice upon a Speedy Trial Act violation, we also consider *Toombs's* Sixth Amendment speedy trial claim, which, if successful, would require the district court to dismiss the case with prejudice.").

[17] As discussed *supra*, the Amended 2255 Petition generally cites the plea hearing and sentencing hearing transcripts. Petitioner also generally supports his 84 allegations with several exhibits, but did not reference any of the exhibits in support of Grounds 53, 70, 73, and 78.

41

by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *United States v. Scott*, 630 F. App'x 745, 747 (10th Cir. 2015) (quoting *Blackledge*, 431 U.S. at 73–74). "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Lasiter v. Thomas*, 89 F.3d 699, 702 (10th Cir. 1996) (quoting *Blackledge*, 431 U.S. at 74).

With this guidance, the Court must analyze the whole record in conjunction with the plea hearing to determine the credibility of Petitioner's assertion that Mr. Fernandez induced him to enter into the Plea Agreement. Looking to the Plea Agreement, two separate sections address voluntariness. First, paragraph 32, entitled "Voluntary Plea," states that "[t]he [D]efendant agrees and represents that this plea of guilty is freely and voluntarily made and is *not the result of force, threats or promises* (other than the promises set forth in this agreement and any addenda)." (CR Doc. 54 at 10, ¶ 23) (emphasis added). Also, Petitioner's signature block states that he "carefully discussed every part of this agreement" with his attorney, Petitioner understood the terms of the Plea Agreement and "voluntarily agree[d]" to the terms therein. *Id.* at 12. Finally, Petitioner ratified that Mr. Fernandez "advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions . . . ." *Id.*

The plea colloquy further affirmed that the plea was not the product of inducement. For starters, Petitioner attested he "read the entire Plea Agreement," that Mr. Fernandez "explain[ed] every part of [the] Plea Agreement, and answer[ed] all of [Petitioner's] questions to [his] satisfaction" "several times" prior to signing the Plea Agreement; Petitioner understood "each and every term of [his] Plea Agreement." Plea Hr'g Tr. *Id.* at 21:8–19. Petitioner also affirmed that he discussed all facts, circumstances, and defenses with Mr. Fernandez:

THE COURT: Okay. So, let me -- I'm now going to ask you about Mr. Fernandez, and I want to make sure that you have talked with him about all the facts and circumstances of your case. Have you done that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. Have you gone over what the Government would have to prove for you to be found guilty beyond a reasonable doubt?

THE DEFENDANT: Yes, I did -- we did.

THE COURT: Okay. Have you gone over the Government's evidence and the discovery that the prosecutor provided?

THE DEFENDANT: Yes.

THE COURT: Have you talked about possible defenses with Mr. Fernandez?

THE DEFENDANT: Yes.

THE COURT: Okay. Have you had enough time with Mr. Fernandez to discuss your case?

THE DEFENDANT: Yeah, I believe I have.

THE COURT: Has he answered all of your questions to your satisfaction?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with his advice and representation?

THE DEFENDANT: Yes.

*Id.* at 23:2–24:1. Petition then attested that he was entering his plea knowingly and voluntarily:

THE COURT: Mr. Kristich, is anybody forcing you or has anybody threatened you to get you to plead guilty here today?

THE DEFENDANT: No.

THE COURT: Has anyone made any promises to you to get you to plead guilty that are not contained in your Plea Agreement or any addendum to the Plea Agreement?

THE DEFENDANT: No, ma'am.

*Id.* at 26:13–20. And the Court found that Petitioner was "competent and capable of entering an

informed plea, that [he was] aware of the nature of the charge against [him] and the consequences of [his] plea, and that [his] plea [was] knowing and voluntary, and supported by sufficient fact. . . ." *Id.* at 27:6–10.

Against this record, Petitioner's evidence supporting these allegations are wholly incredible and, in fact, detracts from his claim. First, nothing in the plea hearing or sentencing transcripts demonstrate that Mr. Fernandez made any promises on the record. *See generally* (CR Docs. 84, 91). Petitioner's affirmations in open court at the plea hearing also contradict Petitioner's conclusory allegations that he entered the plea unknowingly and involuntarily.

Similarly, construing Petitioner's claims liberally, Petitioner's exhibits fail to gain any meaningful traction in support his claims. For one, Exhibits A and A-2, says nothing about any alleged promises, force, or threats to enter a guilty plea. The Exhibits do not claim Petitioner was not apprised of rights, defenses, laws, or the sentencing guidelines. Rather, in the Exhibits, Petitioner believes the probation officer "changed what the law says" with respect to the PSIR, inquires about challenging the probation officer's competency at the sentencing hearing, and disputes the "facts" the probation officer obtained from the victim's inconsistent statements. (CV Doc. 17 at 65–66). The closest Petitioner comes to demonstrating involuntariness or of being uninformed in Exhibits A and A-2 stems from his comment that he is "thinking of fair and just reason's [*sic*] for requesting the withdrawal of my plea." *Id.* at 66. However, the record directly refutes any intent to withdraw his plea. At the sentencing hearing, Petitioner made lengthy objections to and statements about the alleged inconsistencies in the PSIR. Sntc'g Tr., 27:17–33:23. Petitioner never requested nor intimated that he wanted to change his plea or that he was improperly induced to enter his plea. Accordingly, Exhibits A and A-2 offers Petitioner no help in terms of proving that Mr. Fernandez induced him to plead guilty or that his plea of guilty was

44

involuntarily or unknowingly given.

In total, the record directly contradicts Petitioner's claims that Mr. Fernandez improperly induced him or failed to apprise Petitioner of his rights, defenses, the law, and sentencing guidelines prior to entering his guilty plea. Therefore, Mr. Fernandez's performance did not amount to incompetence under prevailing professional norms. I thereby recommend denying Grounds 53, 70, 73, 78.

### (3)    Failure to Investigate Mental Health (Ground 5)

Petitioner asserts that Mr. Fernandez provided ineffective assistance because he failed to investigate Petitioner's competency after he tested positive for Covid-19 before he agreed to plead guilty. (CV Doc. 17 at 13, 29–30). Petitioner fails to supply any evidence that suggests counsel should have suspected he was incompetent other than his own self-serving statements. *See Morris*, 106 F. App'x at 659; *see also Apfel*, 97 F.3d at 1076. Indeed, the record establishes that Mr. Fernandez requested repeated trial continuances in order to determine Petitioner's mental competency. *See* (CR Doc. 20 at 2); (CR Doc. 23 at 1–2); (CR Doc. 26 at 1–2); (CR Doc. 29 at 2). Those evaluations revealed Petitioner was competent to proceed. *See* (CR Doc. 26 at 1–2) (Petitioner deemed competent for trial); (CR Doc. 29 at 2) (no mental state defense applicable). The Tenth Circuit has stated that defense counsel has a duty to investigate competency when he has "good faith doubt as to the defendant's competence." *United States v. Boigegrain*, 155 F.3d 1181, 1188 (10th Cir. 1998) (citations omitted). Petitioner does not establish that Mr. Fernandez should have had any doubt concerning his competency and thus fails to demonstrate that Mr. Fernandez performed deficiently. Further, defendant must establish prejudice, or "a reasonable probability that he was incompetent." *Williamson v. Ward*, 110 F.3d 1508, 1519 (10th Cir. 1997) (citations omitted); *see also United States v. Grist*, 299 F. App'x 770, 779 (10th Cir. 2008).

Petitioner fails to make this showing. At his plea hearing, the Court questioned Petitioner to determine his competency. *See* Plea Hr'g Tr., 9:20–11:11. Petitioner disclosed that he was on medication for a mental illness, but confirmed that he was competent at the time of the plea. *See id.* at 9:20–24. More specifically, Petitioner stated as follows:

> THE COURT: Are you suffering from any illness or medical problem, either physical or mental?
>
> THE DEFENDANT: No, I'm not; I'm just under -- I'm on medications for mental illness, but I'm not suffering anything lately.
>
> THE COURT: Okay. Well, let me ask you about that. So, you -- you're taking some medications for a mental health issue; is that true?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. And is there anything about the medication that you're taking that makes it difficult for you to understand what's happening here today?
>
> THE DEFENDANT: I don't think so.
>
> THE COURT: Okay. What about the condition that you're suffering from, the mental health condition; is there anything about that condition that makes it difficult for you to understand what's happening here today?
>
> THE DEFENDANT: When appropriately medicated, I don't think so.

*Id.* at 9:20–10:13. The Court then addressed Petitioner's competency with Mr. Fernandez:

> THE COURT: All right. So, let me ask you, Mr. Fernandez, you've had an opportunity, I assume, to interact with Mr. Kristich, and perhaps you know about the situation.
>
> MR. FERNANDEZ: Yes.
>
> THE COURT: Give us your assessment with respect to his ability to understand what's happening.
>
> MR. FERNANDEZ: Yes, Your Honor, I was going to comment that I have spoken to Mr. Kristich on many occasions, and from his answers today and his appearance, he seems of sound mind. And that although I'm very aware of his fairly extensive history, and why he's on medication, he seems well and he is communicating in a

manner that makes me comfortable that he's aware of what's going on and he's doing everything voluntarily.

THE COURT: Okay. So, Mr. Kristich, I'm just going to tell you that if at any point you don't understand something, please let me know, because it's important that you understand everything that's happening here today. And if at any point during the hearing you need to speak with your attorney, we could arrange that. We will put you in a virtual room together so that you can speak privately with your attorney. Okay? Do you understand?

THE DEFENDANT: Yes, Your Honor.

*Id.* at 10:14–11:11. Because the Court found that Petitioner was competent at the time of his plea and Petitioner does not allege sufficient facts to refute this finding, he cannot prove prejudice. Thus, the Court recommends denying relief on this ground.

### c)      Failure to object to the PSIR and at the sentencing hearing (Grounds 3, 7, 26–28, 38–39, 42, 50, 65–67, 81, 83)

Petitioner raises several claims with respect to the PSIR and the sentencing hearing. The gravamen of Petitioner's contentions stems around evidence presented in the PSIR and at the sentencing hearing. In particular, he argues that the Government and the Court breached the Plea Agreement when unadmitted facts were considered in determining the applicable guideline range at sentencing. (CV Doc. 17 at 23 (Grounds 81, 83), 36–37, 43–44). He further claims the Court breached the Plea Agreement by considering the victim's hearsay statements as well as Petitioner's own purported statements. *Id.* at 32. Petitioner also alleges that Mr. Fernandez was ineffective for: (1) not objecting to the unadmitted facts and statements; (2) not objecting to the PSIR prior to and at the sentencing hearing; (3) not objecting to sentencing discrepancies; (4) not objecting to the Government's reference, and Court's reliance on, *State v. Romero*; and (5) failing to inform Petitioner that impeachable statements and hearsay could be referenced during sentencing. *Id.* at 13 (Ground 7), 15 (Grounds 26–28), 16 (Grounds 38–39), 18 (Ground 50), 20 (Grounds 65–67),

23 (Ground 83). Petitioner's contentions are addressed in turn.

### (1)    Failure to Object to 2020 Sentencing Guidelines in Violation of the Ex Post Facto Clause (Ground 3)

One of Petitioner's more curious claims is that his counsel was ineffective for failing to object to the application of the 2020 Sentencing Guidelines in violation of the ex post facto clause. (CV Doc. 17 at 7). Petitioner contends Mr. Fernandez should have requested the sentencing judge employ the 2017 Sentencing Guidelines on the basis that the 2017 Sentencing Guidelines were in effect at the time of the offense was committed. *Id.* at 39–40. The Government contends the Court applied the 2018 Sentencing Guidelines and the ex post facto clause is not triggered. The Court agrees.

The Ex Post Facto Clause is violated when a court applies a change in the law which is adverse to the interests of a defendant where that change occurred after the commission of the crime. U.S. CONST. ART. I, § 9, cl. 3. Accordingly, when the court in a criminal case is confronted with post-offense amendments which call for a more severe sentence than that prescribed by the sentencing guidelines in effect at the time of the offense, the court must apply the guidelines as they existed at the time of the crime. U.S. SENTENCING GUIDELINES MANUAL § 1B1.11(b)(1) (2000)

Here, the offense occurred from "on or about March 5, 2018, and continuing to on or about March 8, 2018." (CR Doc. 50); (CR Doc. 54 at 4, ¶ 9). Hence, the 2018 Sentencing Guidelines were applicable. And, the PSIR properly computed the offense level based on the 2018 Guidelines Manual. (CR Doc. 57 at 8, ¶ 27). Thus the sentencing court applied the correct sentencing guidelines in determining Petitioner's offense level and, ultimately, the advisory sentencing range. Further, Petitioner does not offer—and this Court cannot find—any post-offense amendments to

§ 2G1.3 or § 2A3.1 that called for a more severe sentence. As such, application of cross-reference under U.S.S.G. § 2G1.3 to U.S.S.G. § 2A3.1 to enhance Petitioner's sentence did not violate the Ex Post Facto Clause. Hence, I find there was no ex post facto violation and trial counsel cannot be deemed ineffective for not trying to create one. I thus recommend denying Ground 3.

### (2)    *Failure to Object to the PSIR (Ground 42)*

Petitioner's assertion that he received ineffective counsel and was prejudiced because counsel did not raise objections to the PSIR that Petitioner discussed with him is meritless. (CV Doc. 17 at 16–17 (Ground 42), 33). Petitioner cites Exhibit B, a phone log showing two calls on July 20, 2021, nine (9) and ten (10) minutes respectively, to the Office of the Federal Defender - District of New Mexico. *Id.* at 33, 69.

The record demonstrates Mr. Fernandez vigorously objected to the calculations based on unadmitted facts in the PSIR. In written objections filed prior to sentencing, Mr. Fernandez argued that Petitioner's base offense level, prior to any additions or reductions for responsibility, was 24 rather than 30. (CR Doc. 59 at 3–4). He asserted the PSIR erroneously applied a base level of § 2A3.1 on the misguided assumption that Petitioner's conduct fell under 18 U.S.C. §§ 2241 or 2242 thus triggering the cross-reference in § 2G1.3(c)(3). *Id.* Specifically, Mr. Fernandez argued that the totality of the evidence did not demonstrate any use of force or threats under 18 U.S.C. §§ 2241 (a) or (b). *Id.* at 4–5. Hence, Probations additional 6 offense level points based on specific offense characteristics was also incorrect. *Id.* He further objected to the pattern enhancement and factual disputes in light of the victim's inconsistent statements. *Id.* at 5–6.

Additionally, Mr. Fernandez filed a Sentencing Memorandum in which he urged the Court to impose a sentence of five (5) years given the totality of the circumstances, including the victim's mental state and varying statements, Petitioner's mental state, and lack of evidence to demonstrate

use of force or threats. *See generally* (CR Doc. 66).

At sentencing, Mr. Fernandez advanced oral arguments consistent with those contained in the Objections and Sentencing Memorandum, including the prosecutor's use and the Court's reliance on unadmitted facts. *See* Sntc'g Tr., 5:15–13:13, 16:25–19:13, 27:20–28:17, 30:2–33:23. The Court sustained Mr. Fernandez's objection to the pattern enhancement, resulting in a five-level reduction to Petitioner's offense level, but it overruled his objections to the cross-reference and specific conduct characteristics. *Id.* at 5:15–18, 19:22–21:22. And after hearing arguments of counsel, the Court ultimately sentenced Petitioner below the advisory sentencing guideline range and below the Government's requested 12 years. *Id.* at 43:5–15; *see also id.* at 21:23–24:6.

The Court must give "considerable deference" to Mr. Fernandez's strategic decisions in presenting sentencing arguments to the Court. *See Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002). Mr. Fernandez is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *See id*. The record does not provide support for Petitioner's assertion that Mr. Fernandez's representation at sentencing fell below an objective standard of reasonableness. Petitioner also fails to identify any objections or arguments that he and Mr. Fernandez discussed that counsel should have made nor does he articulate how the results of the proceeding might have been more favorable if his counsel had made such arguments to the Court. Notably, Mr. Fernandez's advocacy resulted in the removal of the pattern enhancement as well as a sentence below the guideline range and the Plea Agreement range. Therefore, Petitioner was benefited, rather than prejudiced, by Mr. Fernandez's objections and arguments at sentencing.

In sum the record does not show that counsel's representation at sentencing fell below an objective standard of reasonableness, and the Court can discern no basis for § 2255 relief based

upon Mr. Fernandez's performance at the sentencing stage. I, therefore, recommend denying Ground 42.

### (3)    Breach of the Plea Agreement (Grounds 67, 81, 83), Failure to Inform Petitioner of Use of Unadmitted Facts, Evidence, and Sentencing Guidelines (Grounds 7, 26–28, 38–39, 65–66)

In Ground 67, Petitioner claims the Court and the Government breached the Plea Agreement by going outside the admission of facts. (CV Doc. 17 at 20, 36–37, 46); (CV Doc. 50 at 6–7). Specifically, prior to and during the sentencing hearing, the Government referenced statements the victim and Petitioner made during a 911 call. (CV Doc. 17 at 32, 36–37); (CV Doc. 50 at 6–7). In turn, District Judge Johnson cited those statements when he overruled Mr. Fernandez's objection to the cross-reference at the sentencing hearing. Sntc'g Tr., 19:22–21:25. The Government also argued Petitioner was aware of the minor victim's true age prior to any sexual misconduct because "she told [Petitioner] she was going to her mom's house in Michigan." (CV Doc. 17 at 37). Petitioner contends counsel failed to object to the lack of evidence corroborating the unadmitted facts referenced by the Government and the Court. *Id.*

Petitioner further argues counsel was ineffective for not directing Petitioner, and the Court, to the evidentiary discrepancies. *Id.* (Ground 7). Petitioner claims the "evidentiary discrepancies," including the "scientific evidence that was presented at [his] sentencing . . . undermines the prosecution's entire case and points to [his] innocence." *Id.* at 30. Accordingly, Mr. Fernandez should have objected to any reference by the prosecutor and sentencing judge regarding the SANE exam and subsequent DNA sample. He relies upon Exhibit A to support the contention that the samples from the SANE exam contained a small amount of his DNA and a mixture of other

individuals. *Id.* at 30–31.

Similarly, in Grounds 81 and 83, Petitioner alleges ineffective assistance for failure to object to the Court's and Government's "use of sentencing guidelines and policy statements that were not in the plea agreement." *Id.* at 22–23. In particular, the Government and Court "breached the plea with the use of 2A.3 and 2241." *Id.* at 23 (Grounds 81, 83), 37; *see also* (CV Doc. 50 at 6–7). Petitioner cites the sentencing hearing transcript to support his contention that the Court imposed § 2G1.1, but applied the incorrect base offense level.[18] *Id.*

Tied to Petitioner's "Breach of Plea Agreement" claims are his contentions that counsel did not inform him that the Court may reference and rely upon unadmitted facts, the victim's "impeachable statements," "false" hearsay statements,[19] and the victim's impact statement as "relevant conduct" to support a higher guideline range at sentencing. (CV Doc. 17 at 15 (Grounds 26–28), 16 (Grounds 38–39), 20 (Grounds 65–66), 32). The arguments are without merit.

To begin, Petitioner's arguments fail to demonstrate Mr. Fernandez acted unreasonably to the extent Petitioner contends Mr. Fernandez was ineffective for failing to argue the mistake of age defense and/or for failing to object to references to the victim's true age. *See* Sections III.A.1.a, b.

Next, the Tenth Circuit already concluded that nothing in the Plea Agreement precluded the Government nor the Court from considering unadmitted facts. *See* (CR Doc. 102-1 at 4–5) (*United States v. Kristich*, No. 21-2126, 2022 WL 1100411 (10th Cir. Apr. 13, 2022) ("To the contrary, the [Plea Agreement] provides that '[r]egardless of any other provision in this agreement,

---

[18] Petitioner intimates a discrepancy in the Court's offense level calculation in light of the Court's oral finding on the record at the sentencing hearing. As addressed *supra*, this Court resolved that discrepancy after a thorough review of the record. *See* FN 8.

[19] Construing the Amended 2255 Petition liberally, the Court finds Petitioner asserts the "false" hearsay statements to be the victim's statements, the 911 dispatch transcript and dispatcher's statement, and first responder statements.

the [government] reserves the right to provide . . . the Court [with] any information [it] believes

may be helpful to the court, including . . . information about . . . any relevant conduct under [the

guidelines].'")). Generally, courts do not entertain § 2255 claims that have already been rejected

on direct review. *See Foster v. Chatman*, 578 U.S. 488, 519 (2016). "Absent an intervening change

in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a

collateral attack by a motion pursuant to [Section] 2255." *United States v. Prichard*, 875 F.2d 789,

791 (10th Cir. 1989). Petitioner does not assert a change in circuit precedent or any other grounds

for disturbing the Tenth Circuit ruling on direct appeal.

Even assuming Petitioner could challenge the Tenth Circuit's ruling, his contentions are

without merit. There is nothing in the Plea Agreement that limits either party from introducing or

using additional facts for the purpose of sentencing. *See generally* (CR Doc. 54). On the contrary,

paragraph 7 of the Plea Agreement states:

> Regardless of any other provision in this agreement, the United States reserves the
> right to provide to the United States Pretrial Services and Probation Office and to
> the Court *any information* the United States *believes may be helpful to the Court*,
> including but not limited to information about the recommendations contained in
> this agreement and *any relevant conduct* under U.S.S.G. § 1B1.3.

CR Doc. 54 at 3, ¶ 7 (emphasis added). Paragraph 10 further provides:

> By signing this agreement, the Defendant admits that there is a factual basis for
> each element of the crime(s) to which the Defendant is pleading guilty. *The
> Defendant agrees that the Court may rely on any of these facts, as well as facts in
> the presentence report, to determine the Defendant's sentence, including, but not
> limited to, the advisory guideline offense level*.

*Id.* at 4, ¶ 10 (emphasis added).

Here, Federal Rule of Criminal Procedure 32 required the probation office to conduct a

presentence investigation and submit a report to the Court that included "any factor relevant to the

appropriate kind of sentence . . . any basis for departing from the applicable sentencing range, any

information that assess any . . . social, psychological . . . impact on any victim" along with "*any other information* that the court requires, including information relevant to the factors *under 18 U.S.C. § 3553(a).* FED. R. CRIM. P. 32(d)(1)(D)(i), (E), 32 (d)(2)(B), (G) (emphasis added). And U.S.S.G. § 1B1.3 defines relevant conduct as "*all acts and omissions* committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A) (emphasis added).

Unfortunately for Petitioner, the unadmitted facts he takes issue with were in the PSIR, (CR Doc. 57), and the Government's Sentencing Memorandum, (CR Doc. 62), both of which fall within paragraphs 7 and 10 of the Plea Agreement. Petitioner also testified that he read the entire Plea Agreement before he signed it, and that he understood every section, which demonstrates his complete understanding that a fully fleshed out version of events and circumstances surrounding them would therefore be before the Court for sentencing purposes. Plea Hr'g Tr., 20:20–21:19. Notwithstanding, the record demonstrates Mr. Fernandez zealously opposed applying the specific offense characteristics—use of force and threats gleamed from the unadmitted facts, statements, and DNA evidence—that triggered the cross-reference and heightened offense level. *See* Section II.A.1.c.2. The Court ultimately sustained Mr. Fernandez's pattern enhancement objection, but overruled his other objections. In light of Mr. Fernandez's advocacy, the Court found an offense level of 33, rather than 40 as calculated in the PSIR. The Court's calculation was correctly based on an offense level of 30 under § 2A3.1(a)(2) and an increase of six (6) levels for specific offense characteristics (*i.e.*, use of force and threat, victim's age) under §§ 2A3.1(b)(1), (b)(2)(B), with a decrease of four (4) levels due to Petitioner's acceptance of responsibility pursuant to §§ 3E1.1(a), (b). *See* (CR Doc. 57 at 8–9); *see also* (CR Doc. 59 at 3–4); *see also* Sntc'g Tr., 4:11–21:22, 35:5–12. Even in the face of the unadmitted facts, Petitioner's sentencing was below the guidelines and

the Plea Agreement range thereby conferring a benefit to Petitioner. Accordingly, Mr. Fernandez's representation was not objectively unreasonable, nor did Petitioner suffer prejudice as a result of Mr. Fernandez's representation at sentencing.

The same follows with Petitioner's assertion that the Court erroneously relied upon, and Mr. Fernandez failed to object to, the victim's impact statement. Federal Rule of Criminal Procedure 32(i)(4)(B) mandates that the sentencing court permit the victim to be heard prior to imposing a sentence. At the sentencing hearing, the prosecutor summarized a statement from the victim's legal guardian. Sntc'g Tr., 28:25–29:25. Petitioner objected to the statement on the grounds that it violated Federal Rule of Criminal Procedure 32(i)(2). *Id.* at 28:12–17, 33:4–7. In turn, the sentencing judge explained that, like Petitioner, a victim is permitted—or in the case of a minor victim, the legal guardian—is allowed to make a statement that is not under oath. *Id.* at 28:18–21, 33:8–17. In response, Petitioner stated, "Okay." *Id.* at 33:13, 18. As the sentencing court noted, the Rules permit a party to make a statement prior to the court entering a sentence. Mr. Fernandez's omission of an objection to the prosecutor's summarization of the victim impact statement does not constitute ineffective assistance as such objection would have been meritless. *See Miller*, 354 F.3d at 1298; *see also Hawkins*, 185 F.3d at 1152.

The record also belies Petitioner's assertion that he entered the Plea Agreement unknowingly and involuntarily because he was unaware of the sentencing guidelines. (CV Doc. 17 at 36). Petitioner testified at the change of plea hearing that Mr. Fernandez discussed the sentencing guidelines and how they applied to Petitioner's case. Plea Hr'g Tr., 18:16–19:9. And, when Petitioner inquired about a downward departure, Judge Fashing meticulously walked Petitioner through the guideline calculation and the Plea Agreement range. *Id.* at 19:10–20:13. In turn, Petitioner acknowledged that the Plea Agreement contained a downward departure from the

sentencing guidelines. *Id.* He further testified that he understood the interplay between the guideline range, his plea range, and hypothetical scenarios should the sentencing judge reject the Plea Agreement. *Id.* Petitioner also attested counsel reviewed every part of the Plea Agreement and, as a result, Petitioner understood the Plea Agreement in its entirety. *Id.* at 21:8–19. Notably, inclusive in the Plea Agreement is a basic explanation of the sentencing guidelines. *See* (CR Doc. 54 at 3, ¶ 5). Petitioner's plea colloquy contradicts his claims that he was unaware of the sentencing guidelines and, on this basis, I recommend denial of his ineffective assistance claim. *See Hammons*, 368 Fed.Appx. at 907 (denying § 2255 relief when plea colloquy irrefutably contradicts movant's allegations).

In sum, the PSIR properly included a detailed narrative that described how the crime was perpetrated, the victim's and Petitioner's statements, statements from other witnesses, as well as the physical evidence. And this report was in turn appropriately used by the prosecution during sentencing. Therefore, not only did the prosecution comply with the terms of the Plea Agreement, Petitioner's testimony demonstrated that he understood paragraphs 7 and 10 of the Plea Agreement at the time of his guilty plea. Further, despite paragraphs 7 and 10 of Plea Agreement, Mr. Fernandez objected to the PSIR and at the sentencing hearing on the grounds that the unadmitted facts were disputed and inapplicable for the cross-reference application. It must follow then that Mr. Fernandez was not required to further object to the prosecutor's statements, nor Judge Johnson's reliance upon and incorporation of those statements in determining Petitioner's sentencing. Mr. Fernandez therefore acted reasonably by not raising every objection to the PSIR as well as not objecting to conduct or statements that were not objectionable. Because the Government and Court did not breach the Plea Agreement, and Mr. Fernandez did not act unreasonably at the sentencing hearing, it also follows that Petitioner cannot establish that he

suffered any prejudice. In such an instance, namely when "the basis for the ineffective assistance claim is the failure to raise an issue, [this Court] must look to the merits of the omitted issue." *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) (citation omitted). And "[i]f the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance." *Id.* Consequently, I recommend that Petitioner's Grounds 7, 26–28, 38–39, 65–67, 81, and 83 be denied.

(4)      *Failure to Object to the use of State v. Romero, 2000*

*NMCA-029, 31, 128 N.M. 806, 999 P.2d 1038 (Ground 50)*

Petitioner contends he received ineffective assistance of counsel on the grounds that Mr. Fernandez did not object to the use of "*State v. Romero*, 2000 NMCA-029, 31, 128 N.M. 806, 999 P.2d 1038." (CV Doc. 17 at 18, 35–36); (CV Doc. 50 at 5–6). The Government's response, (CV Doc. 33), does not address Ground 50.

In the Amended 2255 Petition and reply, Petitioner provides no information as to when or why *Romero* was addressed with the Court—for example whether Mr. Fernandez should have filed a pretrial motion, objected at the change of plea hearing, at sentencing, or thereafter. *See generally* (CV Doc. 17); *see also generally* (CV Doc. 50). Petitioner also does not assert what objections Mr. Fernandez should have raised. *See* (CV Doc. 17 at 18, 35–36); (CV Doc. 50 at 5–6). Nor does Petitioner proffer any information suggesting the probability of success of an objection or how he was prejudiced. *See* (CV Doc. 17 at 18, 35–36); (CV Doc. 50 at 5–6). Although Petitioner is *pro se*, the Court is not obligated to comb the record in order to craft Petitioner's arguments. *See Mulford v. Altria Grp., Inc.*, No. CV 05-659 MV/RHS, 2009 WL 10701953, at *1 (D.N.M. March 30, 2009) (Vazquez, J.). For those reasons, Petitioner has not satisfied the *Strickland* prongs.

Nevertheless, construing Petitioner's Amended 2255 Petition liberally, the Court assumes

57

Petitioner is referencing *United States v. Romero-Hernandez*, 505 F.3d 1082, which the Government cited in the PSIR to apply the cross-reference of § 2G1.1. *See* Sntc'g Tr., 18. A thorough review of the record contradicts Petitioner's claim. During the sentencing hearing, Mr. Fernandez zealously objected to the Government's contention that Probation correctly applied the cross-reference in the PSIR. Sntc'g Tr., at 6:18–21:22. The Court is thus satisfied that Mr. Fernandez's objections to the cross-reference were objectively reasonable and do not constitute ineffective assistance of counsel. Hence, I recommend the Court deny Ground 50.

### d)    Supervised release conditions (Grounds 71–72, 79–80(C))

Petitioner next contends his trial counsel was ineffective for failing to explain and object to supervised release conditions, including requirements under SORNA. In particular, Petitioner claims Mr. Fernandez should have objected (1) conditions under SORNA § 20911 articulated under 18 U.S.C. 3583, (CV Doc. 17 at 20, 40–41 (Ground 71)); (2) unarticulated portions of his conditions of supervised release under SORNA § 20911, *id.* at 22 (Ground 79); and (3) all discriminatory conditions of supervised, including (i) no access to adult porn; (ii) polygraph testing; (iii) all other conditions delegated to the probation officer and treatment provider, *id.* (Grounds 80–80C). The bases for the purported assertion is that the supervised release conditions were not "reasonably related" to the offense and were "stricter conditions" than should have been imposed. *Id.* at 40–41. Petitioner also claims the sentencing judge erroneously delegated his sentencing authority to the probation office when he ordered the above-referenced specific conditions. *Id.* at 20–21, 41–44 (Ground 72). The Government argues Petitioner waived his right to challenge his sentence, including conditions of supervised release, in any collateral review motion. (CR Doc. 33 at 24).

The Tenth Circuit has held that a defendant's waiver of the right to collaterally attack his

sentence pursuant to § 2255 is generally enforceable, as long as the defendant "agreed to its terms knowingly and willingly." *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001). Petitioner has not responded to the Government's waiver argument. Nor has he argued that the waiver was not made knowingly and willingly.[20] Moreover, Petitioner filed a direct appeal challenging his sentence and supervised release conditions. *See* (CR Docs. 79, 80). The Tenth Circuit denied the appeal holding the supervised release conditions fell "within the scope of the appeal waiver." (CR Doc. 102-1 at 5) (*Kristich*, No. 21-2126, 2022 WL 1100411) (citing *United States v. Sandoval*, 477 F.3d 1204, 1207 (10th Cir. 2007) (holding that "[s]upervised-release conditions are part of the sentence," and the reference in the plea agreement to 18 U.S.C. § 3742— the statutory basis for sentence appeals—"makes clear that the waiver encompasses all appellate challenges to the sentence other than those falling within [an] explicit exception"). Petitioner has not proffered any grounds for disturbing the Tenth Circuit's ruling. Accordingly, I find Petitioner waived his right to challenge the legality of his sentence to supervised release through a collateral attack and recommend denying Grounds 71–72, 79–80(C).

### e)    Hostile attorney-client relationship (Grounds 6, 40, 57)

Petitioner claims counsel was constitutionally ineffective due to a hostile attorney-client relationship that impeded counsel's ability to place Petitioner "in the most favorable position for his defense." (CV Doc. 17 at 19). Petitioner asserts the attorney-client relationship deteriorated and became "uncommunicative." *Id.* at 30. He cites counsel's failure to: (1) investigate his mental state prior to signing the Plea Agreement; (2) make "all objections" they discussed; and (3) file pretrial motions—to support his contentions. *Id.* at 30, 33, 44.

---

[20] Assuming, *arguendo*, Petitioner claimed waiver was involuntary his plea colloquy disputes this contention. *See* Plea Hr'g Tr., at 24:2–25:4. Thus, Petitioner's ineffective assistance claims as to his supervised release conditions are meritless. *Hammons*, 368 Fed.Appx. at 907 (denying § 2255 relief when plea colloquy irrefutably contradicts movant's allegations).

The Sixth Amendment right to the assistance of counsel includes the "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). Where a defendant makes no Sixth Amendment objection to a conflict at trial, this right is violated only where "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). Demonstrating an actual conflict of interest requires a defendant to "point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party." *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998). However, if a defendant "cannot point to specific facts to substantiate his conflict of interest claim, he may attack his counsel's assistance through the 'general rule' of *Strickland*" rather than through the *Sullivan* actual conflict analysis. *Green v. Snedeker*, 355 F. App'x 146, 149 (10th Cir. 2009) (citing *Mickens v. Taylor*, 535 U.S. 162, 166 (2002)). Here, Petitioner fails to make any argument that Mr. Fernandez's actions benefitted another party, making *Strickland* the appropriate analysis for this claim.

As a preliminary matter, Petitioner's claims rely on his own conclusory allegations, rather than any substantiating evidence. This is insufficient to support a § 2255 motion and thus, I recommend denial. *See United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012).

What is more, Petitioner's arguments pertaining to his mental competency and his trial counsel's objections and pretrial motions, or lack thereof, have been addressed and rejected by this Court. Counsel cannot be found ineffective for failure to raise meritless claims and objections. *See generally Sperry,* 445 F.3d 1268; *see also Miller*, 354 F.3d 1288; *Hawkins*, 185 F.3d 1146.

Further, Petitioner's own statements to the Court contradict his assertions. In the Plea Agreement, he stated he "thoroughly reviewed all aspects of this case with [Mr. Fernandez] and is fully satisfied with that attorney's legal representation." (CR Doc. 54 at 1, ¶ 1). Then, at his change

of plea hearing he stated, under oath, that Mr. Fernandez talked to him about: (1) all the facts and circumstances of his case; (2) the Government's case, including evidence and discovery, and what the Government had to prove for him to be found guilty beyond a reasonable doubt at trial; and (3) possible defenses. Plea Hr'g Tr., 23:2–17. He also testified that he had sufficient time with Mr. Fernandez to discuss his case and he was satisfied with Mr. Fernandez's advice, representation and answers to Petitioner's questions. *Id.* at 23:18–24:1. Petitioners in-court statements weigh strongly against any assertion that there was a hostile and/or uncommunicative attorney-client relationship at any point during his case. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Accordingly, Petitioner has not overcome the strong presumption that his declarations to the Court regarding the attorney-client relationship were truthful, and so these claims fail. I thus recommend denying Grounds 60, 40, and 57.

### f)    <u>Judicial misconduct (Ground 41)</u>

Petitioner claims Mr. Fernandez was ineffective for failure to address the "extreme prejudice" by the sentencing judge and this Court. (CV Doc. 17 at 16, 32, 36–37). Petitioner's contention is two part. Although the argument is piecemeal, Petitioner appears to first take issue with the Court permitting the summarization of the victim impact statement. For reasons already addressed, this contention is meritless. *See* Section II.A.I.c.3. Next, Petitioner asserts that the sentencing judge's reference to the 911 call where the dispatch operator heard Petitioner yelling at the minor—when the Court overruled Mr. Fernandez's objection to the cross-reference—shows that the Court was prejudiced against him. (CV Doc. 17 at 16, 32, 36–37); *see also* Sntc'g Tr., 21:3–10 (district judge referencing 911 call), 16:1–8 (prosecutor quoting 911 call); (CR Doc. 57

at 7, ¶ 19) (PSIR summary of 911 call). This claim is wholly without merit.

"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). To demonstrate a due process violation based on judicial bias, Petitioner must show either actual bias or an appearance of bias. *See Phelps v. Hamilton*, 122 F.3d 1309, 1323 (10th Cir. 1997). A judge must recuse himself "if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000). The judge's actual state of mind or prejudice is not at issue. *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). "The standard is purely objective," and "[t]he inquiry is limited to outward manifestations and reasonable inferences drawn therefrom." *Id*. Ordinarily, when a judge's words or rulings are motivated by events originating within the context of judicial proceedings, they are insulated from charges of bias. *Liteky v. United States*, 510 U.S. 540, 554–56 (1994). Although a judge's remarks may be "critical," "disapproving," or "hostile" to a party, usually those remarks will not support a charge of bias. *Id*. at 555.

Here, the district judge was required to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" in determining what sentence to impose. 18 U.S.C. § 3553(a)(1). In doing so, and before announcing Petitioner's sentence, the Court commented:

> I'll note that the victim did make conflicting statements, but there is some corroboration of, for example, what the victim reported about the Defendant wearing a ski mask and wielding a knife. The subsequent execution of the search warrant corroborated some of the victim's statements in that regard. ***And then you've got the open 911 call and what the dispatch heard the Defendant yelling.*** These corroborate some of the victim's statements.
>
> So I agree with the United States that this offense was accomplished through the disparity and influence and coercive power that the Defendant had over the victim, and, therefore, that's consistent with the Tenth Circuit's rulings in Romero-

Hernandez and Holly. So for those reasons, the objection to the cross-reference is overruled.

With that ruling, I will find that the correctly calculated guideline sentence for this Defendant is Offense Level 33, Criminal History Category II, which is an advisory sentencing guideline range of 151 to 188 months. I've accepted the 11(c)(1)(C) plea agreement. So the specific range of sentencing is five to twelve years.

Sntc'g Tr., 21:3–22 (emphasis added). These comments would not cause a reasonable person to question the district judge's impartiality. Especially, whereas here, the Plea Agreement expressly permitted the Court to rely on *any information*, including the PSIR—which contained a summary of the 911 call—in determining Petitioner's sentencing. *Se* (CR Doc. 54 at 3, ¶ 7, *id.* at 4, ¶ 10); (CR Doc. 57 at 7, ¶ 19). Accordingly, the district judge's remarks do not support Petitioner's claim that he was biased. I therefore recommend denying Ground 41.

### g)    Prejudice

Assuming, *arguendo*, Mr. Fernandez's representation did fall below an objective standard of reasonableness, for Petitioner to be entitled to relief on his Amended 2255 Petition, the Court would have to conclude that he suffered prejudice from counsel's ineffective assistance. Because Petitioner pleaded guilty, he must show that counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 58–59. That is, before relief can be granted, the Court needs to find that "there is a reasonable probability that, but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial." *Id.*

Here, Petitioner's claim that he suffered prejudice, *i.e.*, he pleaded guilty based on his trial attorney's advice and failure to make objections and file motions. In conclusory fashion, Petitioner affirms that he is prejudiced because he "would have not taken a guilty plea and/or would not have received such a severe sentence . . . . [Petitioner] would have gone to trial." (CV Doc. 17 at 40). But Petitioner's argument is thin gruel. Petitioner presents no evidence or arguments to show that

there is a reasonable probability that the results of the case would have been different absent a guilty plea. *See Hill*, 474 U.S. at 59 (the prejudice prong for a guilty plea depends on showing the discovery of evidence would alter counsel's plea recommendation, defendant would have been successful at trial on an affirmative defense, or change the trial outcome). To the contrary, the record demonstrates that had Petitioner rejected the Plea Agreement, his exposure would have increased exponentially—potentially subjecting him to life in prison.

Petitioner was indicted under 18 U.S.C. § 2423(a) and (e), Transportation with Intent to Engage in Criminal Sexual Activity. Sections 2423(a) and (e) are Class-C felonies. Section 2423(a) includes a term of imprisonment of "not less than 10 years or for life." 18 U.S.C. § 2423(a). Likewise, § 2423(e) includes a term of incarceration of up to 30 years. 18 U.S.C. § 2423(e). The Plea Agreement conferred a significant benefit to Petitioner wherein he pled guilty to a lesser charge, 18 U.S.C. § 2422(a), which imposed a sentence of up to 20 years. Mr. Fernandez, however, obtained a plea deal of a five (5) to 12 year sentencing range. And, had he gone to trial, the facts alleged in the Complaint, admitted to by Petitioner in the Plea Agreement, and chronicled in the PSIR make an acquittal at trial a virtual impossibility. *See generally* (CR Doc. 1); (CR Doc. 54 at 4, ¶ 9); Plea Hr'g Tr., 25:5–26 (testifying Admission of Facts are true and correct and Government could prove facts at trial beyond a reasonable doubt); Sntc'g Tr., 32:8–33:3 (admitting responsibility, but disputing use of force); (CR Doc. 57); (CR Doc. 59); *see also Miller v. Champion*, 262 F.3d 1066, 1075 (10th Cir. 2001) (affirming the consideration of the strength of the evidence against the defendant in connection with the prejudice prong). Under these circumstances, the Court concludes that there was no reasonable probability that Petitioner would not have pleaded guilty and insisted on going to trial. Petitioner's baseless argument that he "would have not taken a guilty plea and/or would not have received such a severe sentence . . . . [Petitioner]

would have gone to trial", (CV Doc. 17 at 40), is insufficient to meet *Hill's* prejudice requirement. Hence, I recommend that the claims of ineffective assistance relating to Mr. Fernandez, Grounds 1–3 and 5–84, be dismissed.

### h)    Appellate counsel Mr. Acton (Ground 4)

Petitioner contends his appellate counsel, Mr. Acton, "totally abandoned me and lied to the appeals court. The 10th Cir. Court never ruled on this claim. However, they reversed their decision because of this claim." (CV Doc. 17 at 8). In support of his contention, Petitioner argues that Mr. Acton erroneously informed the Tenth Circuit that Petitioner "acknowledged that his appeal wavier is enforceable under the standards set out in *Hahn*." *Id.* at 26. Rather, Petitioner claims Mr. Acton never discussed the Government's motion to enforce or the appeal waiver. *Id.* He further contends that he is prejudiced because absent Mr. Acton's "deficient performance" he would have pursued contesting the validity of the appeal waiver. *Id.* at 27. He also claims he was prejudiced because the district court incorrectly relied upon false hearsay statements to "support higher-sentencing guidelines." *Id.* An argument Mr. Acton failed to address with the appellate court. *Id.* Finally, he states that there was a *Brady* violation because no one informed him that the witness could have been impeached. *Id.* at 28.

"Although criminal defendants are entitled to effective assistance of counsel on direct appeal . . . it is difficult to establish a claim of ineffective assistance of appellate counsel based on a failure to raise a particular issue on appeal." *United States v. Parada*, 555 F. App'x 763, 766 (10th Cir. 2014) (internal citations omitted). Similar to trial counsel, claims asserting the ineffectiveness of appellate counsel are governed by *Strickland. See Upchurch v. Bruce*, 333 F.3d 1158, 1163 (10th Cir. 2003).

In the context of a claim that appellate counsel should have raised additional or different

issues on appeal, defendant has a heavy burden to overcome the presumption that counsel rendered effective assistance. *Strickland*, 466 U.S. at 690 ("court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (internal citation omitted).

With respect to the appeal waiver, Petitioner is correct that Mr. Acton informed the Tenth Circuit that Petitioner acknowledged the appeal waiver was enforceable. *United States v. Kristich*, No. 21-2126, 2022 U.S. App. LEXIS 152, *2 (10th Cir. Jan. 4, 2022). As a result, Petitioner's appeal was denied. *Id.* However, on April 13, 2022, the Tenth Circuit withdrew and replaced its prior Order and Judgment following Petitioner's *pro se* appeal. Therein, Petitioner raised the same ineffective assistance of counsel claims that he asserts in the instant Amended 2255 Petition. The Tenth Circuit held that waiver was knowing and voluntary based on its "review of the written plea agreement and transcript of the change-of-plea hearing". (CR Doc. 102-1 at 4). Given the Tenth Circuit's holding, Petitioner has not overcome the strong presumption that Mr. Acton rendered adequate assistance.

With respect to the appeal waiver, the Tenth Circuit ultimately applied it to preclude the arguments raised on appeal. Although Petitioner argues that Mr. Acton was ineffective for failing to address the appeal waiver, Petitioner's Amended 2255 Petition fails to show the appeal waiver was void. Rather, Petitioner merely argues he would have contested the validity of the appeal waiver. (CV Doc. 17 at 27). To establish prejudice, Petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 694. Other than his conclusory arguments, Petitioner has not demonstrated a reasonable probability that the Tenth Circuit would have found the appeal waiver void. Thus, Petitioner has not established the prejudice prong.

Petitioner is also critical of his appellate counsel for failing to raise numerous issues on appeal. To succeed on this claim, Petitioner must show prejudice. Petitioner failed to do so. Rather, Petitioner merely regurgitates the same arguments he raised against his trial counsel, Mr. Fernandez. "When, as here, the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue." *United States v. Frost*, 355 F. App'x 230, 232–33 (10th Cir. 2009). In this case, the Court previously considered merits of the omitted issues and rejected Petitioner's arguments. *See* Section III.A.1.b.1 (failure to file pretrial motions), IIIA.1.c.2–3 (failure to object to the PSIR and unadmitted facts). Therefore, the Court finds that appellate counsel's performance with respect to these issues was not deficient. Further, Petitioner cannot show prejudice for Mr. Acton's decision not to raise these issues on appeal. Petitioner's Amended 2255 Petition, construing it liberally, fails to show that any of these omitted arguments would have been successful on appeal.

In sum, the Court finds that the allegations in Ground 4 fail to show that Mr. Acton's representation fell below an objective standard of reasonableness and fail to show that Petitioner suffered any prejudice as a result. I therefore recommend denying Ground 4.

### 2.    Constitutional Challenge to 18 U.S.C. § 2422 (Grounds 69, 74)

In Ground 69, Petitioner claims he received ineffective counsel because "[v]iolation of basic statutory goal Congress had in mind when it wrote Statute 2422(a) with intent." (CV Doc. 17 at 20). He further claims in Ground 74 that 18 U.S.C. § 2422(a) is "unconstitutionally vague" because of the word "any" does not include "intent," but the underlying state charge for which he

could have been found guilty allows for a mistake of age defense because the state charge requires intent.[21] *Id.* at 21. The Government requests this Court summarily deny Petitioner's grounds as the claims are barred by the collateral attack waiver in his Plea Agreement. (CV Doc. 33 at 23–24). In the "Waiver of Appeal" rights section of Plea Agreement it states, in pertinent part:

> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence, including any fine, imposed in conformity with this Fed. R. Crim. P. 11(c)(1)(C) plea agreement, as well as any order of restitution entered by the Court. The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this cause number. In addition, the *Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.*

(CR Doc. 54 at 9, ¶ 20) (emphasis added).

A petitioner's waiver of the right to collaterally attack his convictions and sentence in a plea agreement is generally enforceable. *Cockerham*, 237 F.3d at 1181–83. When a petitioner waives the right to collaterally attack his sentence in a plea agreement but later files a motion pursuant to § 2255, the Court must determine (1) whether the collateral attack falls within the scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his or her right to collateral review; and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004)); *see also Cockerham*, 237 F.3d at 1183 ("the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights"). The Court must "strictly construe[ ]" the waiver's scope, and "any ambiguities . . . will be read against the Government and in favor of" the petitioner's right to collateral review. *Id.* (citation

---

[21] The Court notes its prior findings that mistake of age is an affirmative defense, not a defense to Section 2422(a) and N.M.S.A. § 30-9-11(G)(1). *See* Section III.A.1.a.

omitted).

### a)    Scope of the waiver

In this case, Petitioner's claims fall squarely within the scope of the collateral attack waiver. The Plea Agreement states, "the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance." (CR Doc. 54 at 9, ¶ 20). Petitioner's two claims, brought pursuant to § 2255, are a collateral attack on his conviction and sentence. While Petitioner mentions ineffective assistance of counsel in the Amended 2255 Petition, he does not bring a claim for ineffective assistance in Grounds 69 and 74.

### b)    Knowing and voluntary

Throughout the Amended 2255 Petition, Petitioner suggests his plea was involuntarily and unknowing due to his purported ineffective counsel. However, this does not show Petitioner's collateral attack waiver was unknowing or involuntary. To determine whether a waiver of collateral review is knowing and voluntary, the Court looks primarily at two factors: (1) whether the plea agreement itself states that the defendant entered the agreement knowingly and voluntarily, and (2) whether there was an adequate colloquy under Federal Rule of Criminal Procedure 11. *Hahn*, 359 F.3d at 1325.

Here, as the Court discussed *supra*, the Plea Agreement and plea colloquy demonstrate Petitioner knowingly and voluntarily waived his right to collateral review. *See* Sections III.A.1.b.1.a, III.A.1.c.3; *see also* Plea Hr'g Tr., 18:16–20:13, 21:8–19, 23:2–24:1, 26:13–20. The Plea Agreement itself expressly stated the nature of the waiver and contained a clear section in which Petitioner agreed that the plea was made freely and voluntarily. (CR Doc. 54 at 9, ¶ 20). At

the change of plea hearing, Petitioner confirmed under oath that that no one forced, threatened, or made any promises to get him to sign the Plea Agreement and he read the "Waiver of Appeal Rights" section, understood it, and had an opportunity to discuss it with his attorney. Plea Hr'g Tr., 24:2–25:4, 26:13–27:1. Based upon the Court's extensive review and recitation of the record, the Court finds Petitioner knowingly and voluntarily waived his right to collaterally attack his conviction and sentence. Petitioner's assertion otherwise is unfounded. *See e.g.*, *United States v. Blonner*, 2025 WL 817413, at *1 (10th Cir. Mar. 14, 2025) ("[B]oth the written plea agreement and the transcript of the plea hearing indicate that [Petitioner] knowingly and voluntarily waived his right to appeal, and nothing in the record indicates that he did not act knowingly and voluntarily. It would be frivolous to contend he did not knowingly and voluntarily accept the waiver.").

### c)     Miscarriage of justice

"[A] miscarriage of justice through enforcement of a waiver occurs only in one of four situations: '[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.'" *Viera*, 674 F.3d at 1219 (quoting *Hahn*, 359 F.3d at 1327); *see also Sandoval*, 477 F.3d at 1208 ("Miscarriage of justice . . . has a narrow meaning" in the context of an appellate waiver.). Thus, Petitioner bears the burden of establishing that one of these four situations exists. *Sandoval*, 477 F.3d at 1208. Here, construing the Amended 2255 Petition liberally, Petitioner does not argue any of the four circumstances. Any waiver referenced in the Amended 2255 Petition only pertains to his appeal waiver, which the Tenth Circuit and this Court found to be enforceable. Petitioner thus has not established that his sentence would cause a

miscarriage of justice.

The Court therefore finds that Petitioner's Grounds 69 and 74 are without merit and, as such, I recommend denying Grounds 69 and 74.

### 3.    Miscellaneous Claims (Grounds 54, 64, 84)

Finally, Petitioner asserts three grounds in the Amended 2255 Petition that are conclusory and/or difficult to follow such that it is not clear exactly what he believes his trial counsel or appellate counsel did incorrectly. In Ground 54, he claims he "used Rule 51(b) to preserve a claim of error by informing this court within 14 days as the record will show." (CV Doc. 17 at 18). For Ground 64, he states, "Fed.R.Crim.P. Rule 52(b)-more than one plain error that affected [his] substantial rights." *Id.* at 20. The Amended 2255 Petition concludes with Ground 84, which provides, "[i]n amending my claims, I request to adopt all my original claims and supplements to these claims." *Id.* at 23. While the Court must liberally construe the *pro se* party's pleadings, the Court will not fashion Petitioner's "arguments for him where his allegations are merely conclusory in nature without supporting factual averments." *Fisher*, 38 F.3d at 1147. For this reason, I recommend finding Petitioner has not met his burden to show that Mr. Fernandez's and/or Mr. Acton's conduct fell below an objective standard of reasonableness, as required under the first *Strickland* prong, as to Grounds 54, 64, and 84. *See Hall*, 746 F. App'x at 776 ("[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under 2255.").

## IV.    <u>RECOMMENDATION</u>

For the foregoing reasons, I recommend that the Court **DENY** Petitioner's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (CV Doc. 17), and **DISMISS** this case with prejudice. I further recommend the Court

**DENY AS MOOT** Petitioner's Motion for an Evidentiary Hearing, (CV Doc. 40), Petitioner's Motion for Clarification, (CV Doc. 58), Motion to Extend Review of New Evidence, (CV Doc. 61), Motion to Appoint Counsel, (CV Doc. 62), and Motion to Compel Counsel, (CV Doc. 66). I further recommend that the Court find that reasonable jurists would not debate whether the petition states a valid claim of the denial of a constitutional right or whether the procedural ruling was correct, and accordingly I recommend denying a certificate of appealability.

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE